**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**APR 28 1997**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

*E.B. Hilborn*

PATRICIA HAWKINS                          )
                                          )
            Plaintiff                     )
                                          )
vs.                                       )     CV NO.   95-HM-0511-NW
                                          )
MUSCLE SHOALS BOARD OF EDUCATION          )
and SYLVIA COLEMAN                        )
                                          )     **ENTERED**
            Defendants                    )

                    MEMORANDUM OPINION                    APR 29 1997

        This Memorandum Opinion addresses and decides the duly
submitted Rule 56, Fed.R.Civ.P. Motion for Summary Judgment ["SJ"]
filed by the Movant/Defendants identified in the case caption
hereof and more fully identified hereinafter and wholly decides
such motion in favor of the Defendants MUSCLE SHOALS BOARD OF
EDUCATION, a municipal city board of education organized and
existing under the public school laws of the State of Alabama and
at all times herein relevant operating the city public school
system of the City of Muscle Shoals, Colbert County, Alabama and
its Vocational Director for its Muscle Shoals Center for
Technology, SYLVIA COLEMAN, a Caucasian-American female citizen and
resident of Colbert County, Alabama and **against** the Plaintiff
PATRICIA HAWKINS, an African-American citizen and **tenured veteran-
teacher-employee in the Muscle Shoals, Alabama city public school
system** who resides in the City of Tuscumbia, in Colbert County,
Alabama.   For the reasons hereinafter stated this Motion for
Summary Judgment is due to be granted **with respect to each and
every claim and/or purported claim for relief asserted by Plaintiff**

in the above entitled civil action against these Movant-Defendants alleging or purporting to allege racial discrimination and racially discriminatory public school practices by Defendants against her person and citizenship via Plaintiff's FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES filed in the Office of the Clerk of this Court on May 15, 1995, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed and stipulated by her in this civil action on July 12, 1996.

### PLAINTIFF'S FIRST AMENDED COMPLAINT

The INTRODUCTION section of Plaintiff's FIRST AMENDED COMPLAINT alleges as follows:

### INTRODUCTION

1.　The present action seeks declaratory relief and compensatory damages against the Muscle Shoals Board of Education and compensatory damages and punitive damages against Sylvia Coleman, in her individual capacity, for wrongful racial discrimination against Plaintiff. This is a Title VII proceeding as well as an action under 42 U.S.C. §§ 1981 and 1983.

The JURISDICTION section of Plaintiff's FIRST AMENDED COMPLAINT alleges as follows:

2. The Court has jurisdiction pursuant to 28 U.S.C.§ 1331, based upon the action arising under the Constitution, laws or treaties of the United States.

3. The Court's jurisdiction is also predicated upon the provisions of 42 U.S.C. § 2000, et seq.

4. The Court's jurisdiction is also predicated upon 42 U.S.C. § 1981 and 1983.

2

The PARTIES Section of Plaintiff's FIRST AMENDED COMPLAINT alleges as follows:

5.   **Plaintiff is an Afro-American currently employed by the Muscle Shoals Board of Education.  Plaintiff is a resident of Colbert County, Alabama.**

6.   **Defendant Muscle Shoals Board of Education is an entity organized under the laws of the State of Alabama.  Said entity was Plaintiff's employer for purposes of this litigation.**

7.   **Defendant Sylvia Coleman is an employee of the Muscle Shoals Board of Education and Plaintiff's immediate supervisor with respect to the material allegations of this lawsuit.  She is sued in her individual capacity.**

### COUNT I

### [Action for Racially Motivated Adverse Terms and Conditions of Employment]

14.   **That the wrongful actions of Defendants constitute an unlawful employment practice in that Defendants did discriminate against Plaintiff because of her race with respect to the terms, conditions and/or privileges with respect to her employment.**

15.   **That said actions constitute proscribed conduct under 42 U.S.C. § 2000e-2(a) and are further actionable under 42 U.S.C. § 1981.[1]** Court footnote

---

[1] Court Footnote: 42 U.S.C. § 2000e-2(a) provides: It shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color,

3

16.   That as a proximate result and consequence of said wrongful actions, Plaintiff has suffered emotional distress and has otherwise been damaged.

17.   Plaintiff prays for the relief set forth at the conclusion of this Complaint.

## COUNT II

[Action for Retaliatory Conduct for Prior EEOC Activity]

18.   That the wrongful actions of Defendants constitute discrimination against Plaintiff because she has previously opposed practices by Defendants made an unlawful employment practice or otherwise because Plaintiff has previously made a charge of racial discrimination.

19.   That said actions constitute proscribed conduct under 42 U.S.C. § 2000e-3(a).[2] Court footnote

20.   That as a proximate result and consequence of said wrongful actions, Plaintiff has suffered emotional distress and has otherwise been damaged.

21.   Plaintiff prays for the relief set forth at the

religion, sex, or national origin.

42 U.S.C. § 1981 appears verbatim in this Court's footnote to Count III.

[2] Court footnote: 42 U.S.C. § 2000e-3(a) provides in pertinent part:  (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.  It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

4

conclusion of this Complaint.

### COUNT III

[Action Predicated on 42 U.S.C. § 1981]

22. That the wrongful actions of Defendants constitute an abridgement of Plaintiff's rights and constitute discrimination on account of race.

23. That said actions constitute a violation of 42 U.S.C. § 1981.[3] Court footnote

24. That as a proximate result and consequence of said wrongful actions, Plaintiff has suffered emotional distress and has otherwise been damaged.

25. Plaintiff prays for the relief set forth at the conclusion of this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A. Will assume jurisdiction of the action;

B. Enter a Declaratory Judgment that the Muscle Shoals Board of Education's actions violated relevant provisions

---

[3]   Court footnote: 42 U.S.C. § 1981 provides: (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

5

of federal law.

C.    Enter a judgment assessing compensatory damages against both Defendants as determined by the jury and related remedies authorized by law;

D.    Enter a judgment assessing punitive damages against Defendant Sylvia Coleman under 42 U.S.C. §§ 1981 and 1983 as determined by the jury;

E.    Award attorney fees and costs of the action as authorized by federal statute;

F.    Award Plaintiff such other equitable and legal relief to which she shows herself entitled to receive.

> **STIPULATION OF PLEADING FACTS FILED AS AMENDMENT OF PLAINTIFF'S FIRST AMENDED COMPLAINT ON JULY 12, 1996**

The **STIPULATION OF PLEADING FACTS**[4] section of Plaintiff's First Amended Complaint is here reproduced in the form and format of photocopy of each page thereof and appears verbatim on succeeding pp. 7 - 12.

---

[4] The original FACTUAL ALLEGATIONS of Plaintiff's First Amended Complaint appearing on pages 2-4, inclusive, of that pleading document have been superseded by Plaintiff's STIPULATION OF PLEADING FACTS here presented. See PROCEDURAL BACKGROUND section of this MEMORANDUM OPINION, which appears on succeeding pp. 13 -16 for full discussion of this Court's July 8, 1996 Order herein under which Plaintiff and her counsel of record elected to file Plaintiff's STIPULATION OF PLEADING FACTS as an amendment to Plaintiff's FIRST AMENDED COMPLAINT rather than file a SECOND AMENDED COMPLAINT as was Plaintiff's right under the July 8, 1996 Order.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

PATRICIA HAWKINS,                          *

               Plaintiff,              *

vs.                                        *    CASE NUMBER: 95-HM-0511-NW

SYLVIA COLEMAN, et al.,        *

             Defendants.              *

## PLAINTIFF'S STIPULATION OF PLEADING FACTS

Comes Now the Plaintiff, Patricia Hawkins, by and through her attorney of record in this case and files this "Plaintiff's Stipulation of Pleading Facts" pursuant to the requirements of the Court's Order entered July 8, 1996.

Plaintiff offers the following in support of this Pleading:

1. Plaintiff has been employed by the Muscle Shoals Board of Education since August 1976.

2. Plaintiff is an Afro-American by race.

3. Defendant Sylvia Coleman is an employee of the Muscle Shoals Board of Education.

4. Defendant Sylvia Coleman is a Caucasian by race.

5. Defendant Sylvia Coleman has been Plaintiff's immediate supervisor since approximately 1988.

6. Plaintiff Patricia Hawkins has previously filed charges on race and sex discrimination against the Muscle Shoals School Board through EEOC Charge #130921610, filed on May 19, 1992, and EEOC Charge # 130931845, filed on May 4, 1993.

7. Plaintiff Patricia Hawkins has fulfilled all of the administrative requirements as a prerequisite to filing this complaint.

8. In November 1985, Superintendent of the Muscle Shoals Board of Education, Don Heirdorn stated in a meeting with the Muscle Shoals Board of Education that if Plaintiff Patricia Hawkins was eligible, ever appointed, or ever recommended for an administrative position within the Muscle Shoals School System that it would be a blow to the school system.

9. In the same meeting, Superintendent Don Heirdorn further stated with respect to Plaintiff Patricia Hawkins and her eligibility for positions within the Muscle Shoals School System that he did not want to see the situation "nigger-rigged."

10. Leon Madden, an Afro-American by race, was a member of the Muscle Shoals Board of Education at the time of the meeting in November 1985. He was present and heard the statements made by Superintendent Don Heirdorn.

11. Leon Madden has previously testified in proceedings in the case of *Samuel Brewer v. Muscle Shoals Board of Education.* CV-85-AR-5068-NW as to the statements he recalls Superintendent Don Heirdorn making about Plaintiff Patricia Hawkins.

12. DeKoslyn Anderson is an Afro-American who was employed by the Muscle Shoals Board of Education and supervised by Defendant Sylvia Coleman at the same time Plaintiff Patricia Hawkins was also being supervised by Sylvia Coleman.

13. During the period in which DeKoslyn Anderson was employed and being supervised by Sylvia Coleman, Ms. Anderson overheard a telephone conversation between Sylvia Coleman and an individual who was asking Ms. Coleman about her experiences working in a predominantly all-black school district.

14. In this conversation Ms. Anderson heard Ms. Coleman, her supervisor, state that "all blacks are like rattlesnakes."

15. Ms. Anderson told Plaintiff Patricia Hawkins about the statement she had heard Ms. Coleman make over the telephone.

16. Beginning in 1989, and continuing through the date Plaintiff Patricia Hawkins filed her EEOC Charge in this case, Plaintiff Patricia Hawkins was required by her supervisor Ms. Coleman to sign in and out when leaving the premises of the Muscle Shoals Board of Education.

17. During this same period, non-black employees, including Ms. Noah, Ms. Austin, Mr. Horton, Ms. Hardwick and Ms. Festa, were not required to sign in or out or were otherwise not disciplined or reprimanded when they failed to do so.

18. Plaintiff Patricia Hawkins, after being placed in a position under the supervision of Defendant Sylvia Coleman was moved to an office location that was distant from the administrative offices and further away than the offices of non-black employees under the supervision of Defendant Sylvia Coleman.

2

19.   The office where Plaintiff Patricia Hawkins was moved to did not have a rest room or water fountain.

20.   Non-black employees under the supervision of Ms. Coleman are not without direct access to both a rest room and a water fountain.

21.   On August 28, 1992, Plaintiff Patricia Hawkins was not advised by Ms. Coleman that a staff meeting which involved Plaintiff's work group was going to be held. All non-black employees were notified about the meeting by Ms. Coleman.

22.   Beginning in September 1992, Ms. Coleman gave Plaintiff Patricia Hawkins various work assignments that had unrealistic completion dates. Non-black employees under the supervision of Ms. Coleman were not given similar assignments by Ms. Coleman.

23.   During the 1994 school year, Plaintiff Patricia Hawkins complained to Superintendent Dr. Douglas about the assignments being given to her by Ms. Coleman.

24.   During the 1992-1993 school year, Plaintiff Patricia Hawkins was not provided by Ms. Coleman with time for a lunch break and a planning period. Non-black employees under the supervision of Ms. Coleman were provided lunch breaks and planning periods.

25.   Beginning on September 21, 1992, Ms. Coleman advised other school employees not to visit Plaintiff Patricia Hawkins' office. No similar directive was made by Ms. Coleman with respect to visiting the offices of staff members who were non-blacks.

26.   On September 30, 1993, Ms. Coleman falsely accused Plaintiff Patricia Hawkins of not completing a work assignment. During this episode Ms. Coleman "got in Plaintiff's face" and used rude and insulting language toward Plaintiff. Ms. Coleman has not engaged in similar acts with non-black employees.

27.   On October 1, 1992, Ms. Coleman made false criticisms of Plaintiff Patricia Hawkin's work in a general staff meeting. Ms. Coleman has not engaged in similar public criticisms of non-black employees.

28.   On November 3, 1992, Ms. Coleman sent a letter to the State of Alabama Department of Education which falsely indicated that Plaintiff Patricia Hawkins was not doing her job. No similar criticisms were made of non-black employees.

29.   In December 1992, Ms. Coleman recommended that Plaintiff Patricia Hawkins' contract with the Muscle Shoals School Board be terminated. Ms. Coleman has made no such

3

recommendations for non-black employees.

30. On or about December 14, 1992, Plaintiff Patricia Hawkins applied for an administrative position which became open in the Muscle Shoals School System. Plaintiff Patricia Hawkins was not granted an interview for the position. A non-black person was selected for the position. Plaintiff Patricia Hawkins possessed all of the qualifications for the position and was equally qualified as the non-black person who was selected.

31. On or about November 1992, Ms. Coleman initiated action which caused Plaintiff Patricia Hawkins to be singled out for site inspection of school counselors. No non-black counselors or other employees under Ms. Coleman's supervision were singled out for this inspection.

32. During the 1992-93 school year Plaintiff Patricia Hawkins was given a program budget for her position by Ms. Coleman which was significantly less than what had previously been allowed for the non-black employees who held the same position.

33. During the 1993-94 school year Ms. Coleman prohibited Plaintiff Patricia Hawkins for participating in discussions about program budget. No non-black employees were prohibited from participating.

34. During the 1993-94 school year Ms. Coleman did not authorize any "instructional" funding for Plaintiff Patricia Hawkins' position. All non-black employees under Ms. Coleman's supervision were allowed "instructional" funding.

35. During 1994 Ms. Coleman advised teachers with the school system who had information necessary to allow Plaintiff Patricia Hawkins to perform her job, not to supply the needed information to Plaintiff.

36. On or about March 20, 1995, Ms. Coleman convened a meeting of the Scholarship Committee. At that time Plaintiff was the designated Chairperson for this Committee. Ms. Coleman did not inform Plaintiff Patricia Hawkins about the meeting. The Committee considered candidates for local scholarships. Ms. Coleman, in Plaintiff's absence, attempted to keep a minority candidate from being considered for the available scholarships.

37. On or about April 7, 1995, Ms. Coleman attempted to conduct an "observation" of Plaintiff Patricia Hawkins' work. Ms. Coleman failed to follow School Board Policy in conducting this observation.

4

10

38. On or about April 12, 1995, Ms. Coleman conducted an "observation" of Plaintiff Patricia Hawkins at a time in which Plaintiff Patricia Hawkins had no students or class. Ms. Coleman had been given opportunities to observe Plaintiff Patricia Hawkins in classroom settings.

39. The "observations" conducted by Ms. Coleman singled out Plaintiff Patricia Hawkins for different treatment. All non-black employees had previously been scheduled for observations from administrators other than Ms. Coleman while Plaintiff Patricia Hawkins was the only employee subjected that year to Ms. Coleman's observation.

40. On or about April 18, 1995, Ms. Coleman physically struck Plaintiff Patricia Hawkins.

41. In the summer of 1994 Ms. Coleman engaged in pointing a finger directly at Plaintiff Patricia Hawkins and acted rudely toward Plaintiff when Plaintiff questioned why her required office hours were being changed.

42. On or about August 1994 Ms. Coleman failed to make requested adjustments in my assignments. Ms. Coleman did make adjustments to the assignments of non-black employees.

43. On or about September 2, 1994, Ms. Coleman gave me an assignment to prepare and arrange for the mailing of invitation letters to parents. Although Ms. Coleman had a secretary who could handle such items, this assignment was given to Plaintiff Patricia Hawkins. The entire project had to be completed by Plaintiff Patricia Hawkins in an unreasonable time frame.

44. During the summer of 1994 Plaintiff Patricia Hawkins was denied the opportunity to attend a meeting involving her job position. This meeting involved the position for which Plaintiff Patricia Hawkins is supposed to spend 22% of her time.

45. In August 1994, Ms. Coleman did not allow Plaintiff Patricia Hawkins to attend a special workshop for JTPA school officials. JTPA school officials other than Plaintiff Patricia Hawkins were allowed to attend such workshops.

46. On or about March 5, 1994, Plaintiff Patricia Hawkins learned that Ms. Coleman had instructed members of the Recruitment Committee of the Muscle Shoals School System not to work with Plaintiff Patricia Hawkins on her projects.

47. During the 1994 school year Ms. Coleman failed to discuss with Plaintiff Patricia Hawkins changes in procedures for reporting of grades. The procedures for this activity were within the job authority of Plaintiff Patricia Hawkins. Ms. Coleman implemented a change in procedures without any input or consent of Plaintiff Patricia Hawkins.

5

48. On or about May 18, 1994, Ms. Coleman distributed minutes of a meeting of the Recruitment Committee. Ms. Coleman did not provide any copy to Plaintiff Patricia Hawkins.

49. On or about August 9, 1994. Ms. Coleman deprived Plaintiff of an opportunity to attend a workshop for counselors. All non-black counselors had been allowed to attend.

50. On or about July 11, 1994, a workshop was held at Shoals Community College for school staff members. Ms. Coleman advised non-black employees of the workshop, but failed to notify Plaintiff Patricia Hawkins.

51. Defendants have subjected Plaintiff to discriminatory terms and conditions of employment based upon her race. Defendant has created a racially hostile work place for Plaintiff.

52. Defendants have subjected Plaintiff to unfair treatment in retaliation for Plaintiff's previous EEOC activity.

53. The wrongful conduct of Sylvia Coleman was engaged in with malice or reckless indifference to Plaintiff's federally protected rights.


7/12/96
_____
Date

_____
Date  7-12-9

Patricia Hawkins
_____
Patricia Hawkins

John R. Benn                    BEN009
Attorney for Plaintiff
104 West Third Street
Sheffield, AL  35660
205-386-7685

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that, prior to or immediately after filing the foregoing with the Court, I mailed U.S. Mail, postage prepaid, or delivered by hand a copy to:

Mr. Ken Hewlett
Attorney at Law
Post Office Box 1035
Tuscumbia, AL  35674

Date: 7-12-96
_____

John R. Benn
_____

6

### [PROCEDURAL BACKGROUND]

This Court deems it advisable and proper to here set out a succinct statement of the PROCEDURAL BACKGROUND of the above-entitled civil action.

On March 24, 1995 Defendants filed herein a Motion for a More Definite Statement directed to Plaintiff's ORIGINAL COMPLAINT which was granted by this Court on April 24, 1995 for the reason that such original Complaint was so vague and ambiguous that Defendants could not reasonably be required to frame a responsive pleading. On May 14, 1995 Plaintiff filed her First Amended Complaint. On June 2, 1995 Defendants filed their Answer thereto. On December 6, 1995 Defendants filed a Motion to Amend their Answer which was granted by this Court. On January 12, 1996 Defendants filed their Amended Answer to Plaintiff's First Amended Complaint which contained what was captioned a "FACTS SECTION."

On June 26, 1996 Defendants filed a Rule 12(b)(6), Fed.R.Civ.P., Motion to Dismiss directed to Plaintiff's First Amended Complaint which was denied by this Court on July 3, 1996 without opinion and without prejudice.[5]

Under date of June 26, 1996 Defendants Muscle Shoals Board of Education and Sylvia Coleman filed herein their joint Rule 56, Fed.R.Civ.P., MOTION FOR SUMMARY JUDGMENT seeking full summary judgment in this civil action and against Plaintiff. This Summary

---

[5] Defendants in filing this 12(b)(6) Motion to Dismiss directed to Plaintiff's FIRST AMENDED COMPLAINT allege: "This motion is based upon the ORDER of the Court entered on April 25, 1995 granting the Defendants' Motion for More Definite Statement and the Plaintiff's failure to comply with said Order." No question was raised either by the Court or by counsel of record for Plaintiff with respect to the right of Defendants to file their June 26, 1996 12(b)(6) Motion to Dismiss.

13

Judgment Motion alleges in part as follows:

> For purposes of this motion, the Defendants would adopt its narrative of relative material facts contained in Defendants' Trial Brief filed with the Court on June 14, 1996.
>
> This motion is based upon the pleadings, answers to interrogatories, the material contained in Defendants' Trial Brief, including Exhibits 1 through 76, the depositions of Sylvia Coleman, Patricia Hawkins, and Judy Noah and affidavits and/or other material required by the Court in support of this motion.

Under date of July 11, 1996 this Court entered Order in this civil case setting submission dates with respect to Defendants' Motion for Summary Judgment and containing other summary judgment orders and directives. The summary judgment submission date originally set by court order was June 26, 1996 which was later extended to July 29, 1996.

On July 8, 1996 this Court, following an extensive and careful review of the entire court file in this case, particularly including a re-review of Plaintiff's FIRST AMENDED COMPLAINT, issued an ORDER herein finding and holding that the factual allegations of Plaintiff's FIRST AMENDED COMPLAINT constituted a blatant violation of Rule 8(a) of the Federal Rules of Civil Procedure and that the result of the plethora of federal pleading violations and deficiencies in Plaintiff's FIRST AMENDED COMPLAINT, particularly Plaintiff's ALLEGATIONS OF FACT, was that the Defendants were not meaningfully appraised or given fair notice by Plaintiff of the purported discriminatory acts allegedly committed by them against Plaintiff in the above entitled civil action.

14

. Accordingly, the Court by its July 8, 1996 Order vacated and set aside its July 3, 1996 Order overruling Defendants' Rule 12(b)(6) Motion to Dismiss and thereupon granted Defendants' Rule 12(b)(6) Motion.[6]   The Court also dismissed Plaintiff's First Amended Complaint in its entirety **without prejudice** with leave granting the Plaintiff the option to further amend her First Amended Complaint alleging each and every material fact upon which she relied to support Count I, Count II and Count III the civil relief sought by her in this civil litigation of Plaintiff's case or to file within time certain a **Stipulation of Pleading Facts** alleging each and every material pleading fact. **On July 12, 1996 Plaintiff through her counsel of record filed herein her Stipulation of Pleading Facts.   This document was signed by Plaintiff's counsel of record and by Plaintiff Patricia Hawkins as required by the Court's July 8, 1996 order entered in this case.**

As counsel of record for Plaintiff was drafting Plaintiff's STIPULATION OF PLEADING FACTS shortly prior to its July 12, 1996 filing date, he was fully aware of this Court's July 8, 1996 Order finding and holding that the factual allegations of Plaintiff's FIRST AMENDED COMPLAINT [Factual Allegations section] constituted a blatant violation of Rule 8(a) of the Federal Rules of Civil Procedure and that the result of the plethora of federal pleading violations and deficiencies in Plaintiff's FIRST AMENDED COMPLAINT, particularly Plaintiff's **ALLEGATIONS OF FACT, was the Defendants**

---

[6]  A photocopy of the Court's July 8, 1996 Order hereinabove referenced is included in the APPENDIX hereto and is expressly made a part hereof.

15

**were not meaningfully appraised or given fair notice by Plaintiff of the purported discriminatory acts allegedly committed by them against Plaintiff in the above-entitled civil action.** With this awareness and full knowledge of this Court's strong criticism of Plaintiff's First Amended Complaint and particularly of Plaintiff's "FACTUAL ALLEGATIONS" therein, Plaintiff's counsel of record drafted and signed [with his client] and filed in this Court and in this case Plaintiff's STIPULATION OF PLEADING FACTS which was and is just as poorly crafted and drafted as Plaintiff's original "FACTUAL ALLEGATIONS" in her First Amended Complaint. And to add "pleading insult to pleading injury" Plaintiff completely failed to apprise or inform Defendants and this Court in such "Stipulation of Pleading Facts" which alleged facts were intended to apply to Count I, to Count II or to Count III or if such facts, or some of them, were intended to apply to more than one of the identified counts of Plaintiff's First Amended Complaint, as last amended.

## *STANDARD OF REVIEW FOR SUMMARY JUDGMENT*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Clark v.*

16

*Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).¹ A moving party
discharges its burden on a motion for summary judgment by "showing"
or "pointing out" to the Court that there is an absence of evidence
to support the non-moving party's case. *Celotex*, 477 U.S. at 325.
Rule 56 permits the moving party to discharge its burden with or
without supporting affidavits and to move for summary judgment on
the case as a whole or on any claim. *Id*. When a moving party has
discharged its burden, the non-moving party must then "go beyond
the pleadings," and by its own affidavits, or by "depositions,
answers to interrogatories, and admissions on file," designate
specific facts showing that there is a genuine issue for trial.
*Id*. at 324.

In determining whether the moving party has met its burden of
establishing that there is no genuine issue as to any material fact
and that it is entitled to judgment as a matter of law, the Court
must draw inferences from the evidence in the light most favorable
to the non-movant and resolve all reasonable doubts in that party's
favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989); *Samples
on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th
Cir. 1988). The Eleventh Circuit has explained the reasonableness
standard:

> In deciding whether an inference is reasonable, the Court
> must "cull the universe of possible inferences from the
> facts established by weighing each against the abstract
> standard of reasonableness." [citation omitted] The
> opposing party's inferences need not be more probable
> than those inferences in favor of the movant to create a
> factual dispute, so long as they reasonably may be drawn
> from the facts. When more than one inference reasonably
> can be drawn, it is for the trier of fact to determine

17

the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**COURT REVIEW OF CERTAIN PARAGRAPHS OF PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED JULY 12, 1996 WHICH PLAINTIFF'S COUNSEL OF RECORD QUESTIONABLY SEEKS TO UTILIZE IN THE PRESENT CIVIL ACTION TO SUPPORT PLAINTIFF'S FIRST AMENDED COMPLAINT AS LAST AMENDED**

Paragraphs 8 and 9 of Plaintiff's STIPULATION OF PLEADING FACTS respectively allege:

8. In November 1985, Superintendent of the Muscle Shoals Board of Education, Don Heidorn stated in a meeting with the Muscle Shoals Board of Education that if Plaintiff Patricia Hawkins was eligible, ever appointed, or ever recommended for an administrative position within the Muscle Shoals System that it would be a blow to the school system.

18

9.    In the same meeting, Superintendent Don Heidorn further stated with respect to Plaintiff Patricia Hawkins and her eligibility for positions within the Muscle Shoals School System that he did not want to see the situation "nigger-rigged."

## [COURT COMMENT ON PARAGRAPHS 8 AND 9]

Here Plaintiff's counsel of record [playing "hardball"] is questionably seeking to utilize ¶ 8 and ¶ 9 of Plaintiff Patricia Hawkins' STIPULATION OF PLEADING FACTS in her First Amended Complaint, as amended, **in the present case** against the **present** Muscle Shoals Board of Education which allege a regrettable incident which occurred over 11 years ago **in November 1985**, where DONALD R. HEIDORN, the <u>then</u> City Superintendent of School of the Muscle Shoals City School System **[whose last term of office ended on June 30, 1986 (Affidavit dated July 17, 1996 of Carla Horton, Secretary of Muscle Shoals of Education, Defendants' Exhibit No. 32)]**, made two apparently related statements to the then members of the Muscle Shoals Board of Education[7] **in an official school board**

_____

[7]  During 1985 the members of the Muscle Shoals Board of Education and their ending terms of office were as follows: James Hampton, April 1987; J.A. McCarty, February 1989; Dwight Spearman, April 1989; Leon Madden, April 1990; and Charlene Little, April 1991. [July 17, 1997 Affidavit of Carla Horton Secretary of Muscle Shoals Board of Education. Defendants' SJ Exhibit No. 32].

   The Court has hereinabove noted the uncontroverted fact that the Muscle Shoals Board of Education Superintendent of Schools Donald R. Heidorn's last term of office ended June 30, 1986, almost 11 years ago. It is also a material, relevant and important fact in this Rule 56 summary judgment controversy wholly undisputed that since School Superintendent Heidorn's term of office ended on June 30, 1986 that he was succeeded by Muscle Shoals Superintendent [Dr.] Martha Livingston whose term of office ended on May 2, 1994 and that the present Muscle Shoals Superintendent of Education is Dr. Jim Douglas who succeeded Dr. Livingston.  His term of office commenced on May 2, 1994.

   Paragraphs 8 and 9 of Plaintiff's STIPULATION OF PLEADING FACTS filed July 12, 1996 have no relevancy whatsoever to Plaintiff's claims against Defendant Sylvia Coleman for the reason that the undisputed facts in this case show that Sylvia Coleman was not employed in the Muscle Shoals City School System in 1985 or at any time prior thereto.  She was first employed in the Muscle Shoals City School System on August 14, 1989, as Director

19

**meeting** [wherein all members except one were present] **in which the possibility of creating new assistant administrative positions was being discussed.** These HEIDORN statements appear in that certain published opinion of the Eleventh Circuit Court of Appeals in the civil case of *Samuel Brewer, Plaintiff-Appellee v. Muscle Shoals City Board of Education, Donald R. Heidorn, individually and as Superintendent of the Muscle Shoals Board of Education, et al., Defendants-Appellants*, No. 86-7192, 790 F.2d 1515 (11th Cir. 1986) at p. 1518:

> In November, 1985, the Board held a meeting at which all members but J.A. McCarty were present. Board member Madden, who is black, testified at trial that during the course of discussing the possibility of creating new assistant administrative positions, Heidorn stated that "if Ms. Hawkins [a black woman] or Mr. Brewer was ever put in one of the positions it would be a downward blow to the school system," and that "[h]e didn't want to see the situation nigger-rigged." Transcript, Vol. I at 58; see also Vol. I at 46. Heidorn admitted using the term "nigger-rigged," explaining that he meant no racial slur but used the term to connote that the school system's administrative organization "was not shaped properly or balanced properly and was out of kilter." Transcript, Vol. I at 82-84.

The district court trying the above-entitled civil action in which the Afro-American applicant Samuel Brewer brought suit against the school board, its individual members and against Donald R. Heidorn, individually and in his official capacity as Superintendent of the Muscle Shoals Board of Education alleging a violation of a predetermination settlement agreement and **racial discrimination held that the defendants breached such predetermination settlement**

---

of the Muscle Shoals Area Vocational School [now called the Muscle Shoals Center for Technology].
•

agreement and violated Title VII by rejecting the applicant's application for the position of principal **because of his race** and the defendants appealed. The Eleventh Circuit Court of Appeals affirmed the decision of the district court [Acker,J.] partly at least on the basis of the racial discriminatory November 1985 statements of School Superintendent Donald R. Heidorn to the Muscle Shoals Board of Education in official meeting assembled hereinabove related and found in 790 F.2d 1515 at p. 1518. At p. 1521-1522 of 790 F.2d 1515 the Eleventh Circuit had this to say about Donald R. Heidorn in his capacity as the then Superintendent of the Muscle Shoals Board of Education and about the then Muscle Shoals Board of Education:

## 790 F.2d at pp. 1521-1522

[7] We cannot say that the district court's finding of intentional discrimination is clearly erroneous. Brewer presented direct evidence of Heidorn's discriminatory intent through testimony that Heidorn believed appointing Brewer to an administrative position would be a "downward blow" and did not want to see the school system "niggerrigged." The Board and Heidorn therefore had the burden of proving that they would not have selected Brewer even without the discriminatory animus. *Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir.1982). That the direct evidence was based on an incident occurring after the alleged violations makes no difference. It would be entirely reasonable to assume that Heidorn's attitude was not newly developed at the time he made the derogatory comments and that the discriminatory animus causing his reluctance to appoint Brewer to an administrative position at that time had similarly affected his decisions on previous occasions. In fact, the Board and Heidorn had once before been held liable for racial discrimination for failing to reinstate a black principal who had lost his position as a result of court-ordered desegregation. See *Lee v. Macon County Board of Education*, 453 F.2d 1104, 1112 (5th Cir. 1971).

21

The last sentence of the above-quoted language in the May 30, 1986 opinion of the Eleventh Circuit Court of Appeals concerning *Lee v. Macon County Board of Education*, 453 F.2d 1004 (5th Cir. 1971), actually refers to civil litigation commenced over 26 years ago in the Northwestern Division of the United States District Court for the Northern District of Alabama by Charles Carter, an Afro-American citizen of Colbert County, Alabama, against the Muscle Shoals City School System and others for injunctive relief and damages because of the school system's alleged refusal to appoint him to principal vacancies within the Muscle Shoals City School System or to tantamount positions. As put by the former Fifth Circuit Court of Appeals in its 453 F.2d 1104 opinion rendered on December 28, 1971: **"This is a case of faculty fallout in the wake of desegregating the school system of Muscle Shoals."** This Charles Carter case opinion contains a succinct overview in its second paragraph:

## 453 F.2d at p. 1106

Charles Carter was removed in 1967 as principal of an all-black school pursuant to a court desegregation order that required the closing of his school. *Lee v. Macon County Board of Education*, M.D.Ala.1967. The white principals were retained or replaced with other white principals. From 1967 to 1971 principalships in three of Muscle Shoals' four schools became vacant. Charles Carter was not contacted regarding any of the vacancies, and each was filled with a white man or woman. In May, 1971, another principalship vacancy arose in the Avalon Middle School. Again, Carter was not appointed, the school board choosing instead a white assistant principal from the high school. Alleging that he was denied appointment because of his race in violation of the Constitution and of this court's directives, Carter appeals from the district court's denial of his motion for an order directing the Muscle Shoals school board to

22

appoint him to a position tantamount to the one he had occupied prior to his demotion, specifically to the principalship of Avalon, and to restore to him any back pay and retirement benefits of which he had been unlawfully deprived because of the discriminatory practices of the board. We find that the school board has failed to comply with this court's procedures for the reappointment of principals who are affected by desegregation orders, and we reverse.

At pp. 113 and 114 of 453 F.2d [December 28, 1971] [Charles Carter case] the former Fifth Circuit Court of Appeals made the following finding and issued its order hereinafter set out:

[10] The Muscle Shoals school system remained dual until 1967, and there is testimony in the record by the present superintendent that gives clear and affirmative support to the proposition that the school board's decisions from 1967 to 1971 were racially motivated. Since Carter was passed over not only for three principalships but also for other positions for which he was qualified between 1967 and 1971, and without any written objective criteria as required after 1970, it is clear that the Muscle Shoals school board has the burden of establishing that its refusal to reinstate Charles Carter was not racially motivated during those years. Of course, we leave to the district judge on remand the question of the precise amount of back pay and back retirement benefits due, and any attendant findings of fact that might be required.

It is the order of this court that Charles Carter be immediately reinstated as principal of the Avalon Middle School or of another school in the Muscle Shoals system. In addition, Carter is entitled to any back pay and to the reinstatement of any retirement benefits that were lost as a result of the board's discriminatory refusal to reinstate him to a position tantamount to that from which he was demoted in 1967. [Case citations omitted.]

In an effort to present the full picture of the Muscle Shoals Board of Education involvement before the United States District Court for the Northern District of Alabama, before the former Fifth Circuit Court of Appeals and before the Eleventh Circuit court of Appeals in federal court civil actions brought against this

23

Defendant Board of Education by Afro-American citizen members of its Muscle Shoals City School System faculty, this Court now places in this MEMORANDUM OPINION a succinct account of the federal court civil action brought in this federal district court by Charles Carter[8] against the Muscle Shoals Board of Education [about which Plaintiff's counsel of record in the present case makes no reference in his STIPULATION OF PLEADING FACTS] charging that the defendant board of education was racially motivated in dismissing him from his Avalon Middle School principalship on August 9, 1977. **After hearing the district court determined and held that the Muscle Shoals Board of Education was not racially motivated in dismissing Mr. Carter and that his due process rights were not violated.** Mr. Carter thereupon timely appealed the adverse judgment of the district court to the Eleventh Circuit Court of Appeals. The unpublished opinion of the Eleventh Circuit Court of Appeals rendered in Case No. 81-7247 [D.C. Docket No. CA 77-M-1104] on February 5, 1982 affirmed the district court finding and holding that the trial court was not clearly erroneous in its determination that Mr. Carter was dismissed for cause and that his due process rights were not violated. This UNPUBLISHED OPINION is reproduced in form and format of photocopies of pages 1-7, inclusive, and is included in the APPENDIX to this MEMORANDUM OPINION and expressly

---

[8] The same Charles Carter, an Afro-American citizen, who secured the principalship of the Avalon Middle School in the Muscle Shoals City School System on February 1, 1971 by appointment made by the Muscle Shoals Board of Education in conformity with the mandate of the former Fifth Circuit Court of Appeals duly issued by that circuit court of appeals following its December 28, 1971 published opinion in *Lee v. Macon County Board of Education [Muscle Shoals School System]*, 453 F.2d 1104 (5th Cir. 1971).

24

made a part hereof.

Paragraphs 10 and 11 of Plaintiff's STIPULATION OF PLEADING
FACTS which obviously are intended to apply only to the Defendant
board of education respectively allege:

10.   Leon Madden, an Afro-American by race, was a member of the Muscle Shoals Board of Education at
the time of the meeting in November 1985. He was present and heard the statements made by Superintendent Don
Heidorn.

11.   Leon Madden has previously testified in proceedings in the case of *Samuel Brewer v. Muscle Shoals
Board of Education*, CV 85-AR-5068-NW as to the statements he recalls Superintendent Don Heidorn making about
Plaintiff Patricia Hawkins.

Court Comment: Here again Plaintiff's counsel of record utilizes
a highly questionable pleading practice in knowingly including in
Plaintiff's STIPULATION OF PLEADING FACTS ¶ 10 a purported relevant
"fact allegation" concerning the presence of LEON MADDEN, an Afro-
American and a then member of the Muscle Shoals Board of Education
in November 1985 who was "present and heard" the November 1985
statements made by DON HEIDORN, the then Superintendent of the
Muscle Shoals Board of Education whose term of office ended June
30, 1986, to the Muscle Shoals Board of Education in official
meeting assembled concerning PATRICIA HAWKINS and SAMUEL BREWER,
then both Afro-American faculty employees of the Muscle Shoals
Board of Education which have been previously fully presented in
this MEMORANDUM OPINION, *ante,* pp. 19-22 , and    included in
Plaintiff's STIPULATION OF PLEADING FACTS ¶¶ 10-11 which recount
that Mr. MADDEN has previously testified in the case of *Samuel
Brewer v. Muscle Shoals Board of Education*, CV 85-AR-5068-NW as to

25

the statements he recalls Superintendent Heidorn making to the Muscle Shoals Board of Education about Patricia Hawkins over 11 years ago. This summary judgment record clearly establishes that former Superintendent Donald R. Heidorn has had no affiliation or connection with the Muscle Shoals City School System or with the Defendant Muscle Shoals Board of Education since mid-1986. Moreover, this is not a civil action remotely connected with the *Anthony T. Lee, et al. v. Macon County Board of Education* desegregation effort involving all the city and county boards of education in the State of Alabama and this federal district court is not bound or obligated to try this civil litigation or conduct this summary judgment proceeding in that penumbral context.

### [ANOTHER HIGHLY QUESTIONABLE PLEADING PRACTICE]

Paragraphs 12-15, inclusive, of Plaintiff's STIPULATION OF PLEADING FACTS which was and is expressly intended to be Plaintiff's stipulated factual allegations offered by her and allowed and accepted by this United States District Court as constituting the "facts" pled by Plaintiff against the Defendant Board of Education and the individual Defendant in this case in support of Counts I, II and III her FIRST AMENDED COMPLAINT, as last amended, each has as its principal subject a purported *"school day during school hours"* telephone conversation allegedly had at a completely unknown and unalleged date and time[9] between Defendant

---

[9] Except during a time frame when Plaintiff Patricia Hawkins and DeKoslyn Anderson, an Afro-American employee of the Muscle Shoals Board of Education, were both being supervised by Sylvia Coleman.

26

Sylvia Coleman and a completely unidentified individual **allegedly overheard by Ms. DeKoslyn Anderson by some unidentified means** who thereafter verbally told Patricia Hawkins **that the individual talking over the telephone with Sylvia Coleman asked about her experiences working in a predominantly all-black school district**[10] and that she [Coleman] allegedly replied that **"all blacks are like rattlesnakes."** Plaintiff Hawkins makes no, claim in this civil litigation that she reported this alleged remark on the telephone by Ms. Coleman verbally or in writing to the then Superintendent of the Muscle Shoals Board of Education or to the Defendant Board of Education. Moreover, Patricia Hawkins admittedly filed no complaint or charge with the EEOC which had this purported telephone conversation remark by Sylvia Coleman as its predicate or partial predicate.

There is no possible way under the Federal Rules of Evidence and applicable law for Plaintiff Patricia Hawkins to use and utilize ¶¶ 12-15, inclusive, of her STIPULATION OF PLEADING FACTS, or any one of these identified "fact paragraphs," as "pleading facts" supportive of her Count I or of her Count II or of her Count III alleged in her FIRST AMENDED COMPLAINT, as last amended. Without question the highly illegal action of Ms. DeKoslyn Anderson in **intercepting** the private telephone conversation between Sylvia Coleman and the individual [whom Ms. DeKoslyn could not or did not identify] on the other end of the line and Ms. Anderson's alleged

---

[10] Obviously Ms. DeKoslyn Anderson is alleged by Patricia Hawkins to have also overheard the telephone voice of the unidentified individual in this purported telephone conversation with Sylvia Coleman asking Ms. Coleman about her experiences working in a predominantly all-black school district.

27

report to Plaintiff Patricia Hawkins of the purported substance of Sylvia Coleman's telephonic statement to the unidentified individual as alleged in ¶ 14 of Plaintiff's STIPULATION OF PLEADING FACTS is not admissible because of Rule 801 [Hearsay Rule] of the Federal Rules of Evidence since none of the exceptions of Rule 803 or Rule 804 or Rule 805 are here applicable.  For this reason, among others, this federal district court will not permit Plaintiff Patricia Hawkins to use and utilize ¶¶ 12-15, inclusive, of Plaintiff's STIPULATION OF PLEADING FACTS filed July 12, 1996 in support of  Plaintiff's Count I or Count II or Count III of Plaintiff's FIRST AMENDED COMPLAINT, as last amended on July 12, 1996.   Moreover, if Ms. DeKoslyn Anderson, an employee of the Muscle Shoals City School System, did in fact **intercept** a public school telephone conversation during school hours between Defendant Sylvia Coleman and an unidentified individual, as Ms. Anderson and Plaintiff Patricia Hawkins apparently claim in this civil litigation, **it is highly likely that such action constituted the commission by Ms. Anderson of a federal criminal offense, as well as constituting a flagrant violation by her of public school policies.**

Court Note:  The sequel to the efforts of counsel of record for Plaintiff Patricia Hawkins to use and utilize a purported telephone conversation between Defendant Sylvia Coleman and an unidentified individual during school hours and on school property **illegally intercepted**, if in fact overheard at all, by Ms. DeKoslyn Anderson, an employee of the Muscle Shoals Board of Education, and thereafter

28

purportedly reported by Ms. Anderson to Plaintiff Patricia Hawkins appears in the duly submitted SJ Affidavit of Sylvia Coleman dated July 17, 1996 (Ex. No. 33) which in pertinent part states:

12, 13, 14, 15. DeKoslyn Anderson is an Afro-American by race and was employed by the Muscle Shoals Board of Education and under my supervision at the same time Patricia Hawkins was under my supervision. I have no personal knowledge that DeKoslyn Anderson overheard a telephone conversation regarding my work experience in a predominantly all-black school district and that she heard me make the alleged statement "all blacks are like rattlesnakes." I emphatically deny this allegation. I never made this statement. I have no personal knowledge that DeKoslyn Anderson told Patricia Hawkins of the alleged statement.

Moreover, the other party on the other end of the telephone line having a long distance telephone conversation with Sylvia Coleman, whom Ms. DeKoslyn Anderson was unable to identify, was WILLIAM CHARLES GRAVES, Administrator for the National Health Service Corps Placement with the Bureau of Planning & Resource Development of the Alabama Department of Public Health in Montgomery, Alabama, whose SJ AFFIDAVIT dated July 16, 1996 was introduced in evidence by Defendants in support of their Motion For Summary Judgment as Exhibit No. 34. Paragraphs 3 and 4 of Mr. Grave's July 16, 1996 AFFIDAVIT respectively state as follows:

3. I have personal knowledge of the facts recited in this Affidavit.

4. Some time in the fall of 1989, I telephoned Sylvia Gilley Coleman to discuss with her the vocational directors position at the Bullock County Area Vocational Center. Mrs. Coleman had left the Bullock County Area Vocational Center to become director of the Muscle Shoals Center for Technology. It is my best recollection that the telephone conversation lasted approximately five

29

minutes.    It has been explained to me that someone
overheard this telephone conversation and that Mrs.
Coleman is accused of making the statement that "all
blacks are like rattlesnakes."   I do not recall any
statements made by Mrs. Coleman that were racially
derogatory.   Mrs. Coleman never made any statement that
"all blacks are like rattlesnakes."    I would have
remembered the word rattle snake" because that is a
pretty strong statement.

This Court expressly declines to treat and consider the
subject matter of ¶¶ 12-15, inclusive, of Plaintiff's STIPULATION
OF PLEADING FACTS as valid and admissible pleading facts pled by
Plaintiff Patricia Hawkins in support of her FIRST AMENDED
COMPLAINT, as last amended on July 12, 1996, for the reasons
hereinabove set out.

### COURT ANALYSIS OF ¶¶ 16-53, INCLUSIVE, OF PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED ON JULY 12, 1996 AS AN AMENDMENT TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Thirty-five [35] of the thirty-eight [38] FACT PARAGRAPHS in
the above-identified group of PLAINTIFF'S STIPULATION OF PLEADING
FACTS are each primarily directed against the individual Defendant
Sylvia Coleman and allege or seek to allege purported racially
discriminatory conduct and/or purported racially discriminatory
practices against Plaintiff Patricia Hawkins by the individual
Defendant Sylvia Coleman in her Muscle Shoals City School System
capacity as VOCATIONAL DIRECTOR for the MUSCLE SHOALS CENTER FOR
TECHNOLOGY [an integral part of the public school system of the
City of Muscle Shoals] in which Defendant Sylvia Coleman then
served and still serves as the Supervisor of Plaintiff Patricia

Hawkins who at all times here relevant then served and still serves therein as COUNSELOR and as a fully tenured teacher in and for the Muscle Shoals City School System.

Paragraphs 16-53, inclusive, of Plaintiff's STIPULATION OF PLEADING FACTS in her First Amended Complaint, as amended, appear verbatim, *ante* pp. 8-12, of this Memorandum Opinion.

Paragraphs 16 and 17 of Plaintiff's STIPULATION OF PLEADING FACTS collectively assert that beginning in 1989 and continuing through the date Plaintiff filed her EEOC charge in this case Plaintiff was required by her supervisor, Ms. Coleman, to sign in and out "when leaving the premises of the Muscle Shoals Board of Education" whereas during this same period non-black employees, Ms. Noah, Ms. Austin, Mr. Horton, Ms. Hardwick and Ms. Festa, were not required to sign in or out or were otherwise not disciplined or reprimanded when they failed to do so. In using the terminology "the premises of the Muscle Shoals Board of Education" in ¶ 16 Plaintiff obviously refers to the Muscle Shoals City School System campus on which the Muscle Shoals Center for Technology was then and is now located on Wilson Dam Road in the City of Muscle Shoals.

Defendants' Summary Judgment Exhibit No. 33, AFFIDAVIT OF SYLVIA J. COLEMAN, consisting of five pages and dated July 17, 1996, states in the paragraph designated as "16 & 17" [referring to ¶¶ 16 and 17 of Plaintiff's Stipulation of Facts] on p. 2 as follows:

>      16 & 17. As Supervisor at the Muscle Shoals Center
> for Technology, I enforce school policies as stated in
> the Muscle Shoals Center for Technology Faculty Handbook

31

> requiring vocational personnel to sign in and out when leaving campus during the school day. This school policy has been in effect beginning as early as the 1986-87 school year. Other vocational personnel as well as Patricia Hawkins are required to use the Off Campus Check In/Out Log when leaving campus.

It is the considered opinion of this Court that counsel of record for Plaintiff Patricia Hawkins not only was *"fly specking"* when he included ¶¶ 16 and 17 in Plaintiff's Stipulation of Pleading Facts, he also obviously followed this same fly specking practice in drafting and filing Plaintiff's CHARGES OF DISCRIMINATION with the EEOC.

In any event, the substance of ¶¶ 16 and 17 of Plaintiff's Stipulation of Pleading Facts filed July 12, 1996 were included in Plaintiff's Charge of Discrimination No. 130 93 1845 filed with the EEOC. After due investigation and deliberation the EEOC through Warren A. Bullock, District Director, on December 6, 1994, issued its DETERMINATION of Charge No. 130 93 1845 [consisting of four pages] determining that evidence obtained during the investigation did not establish a violation of the statute. The substance of ¶¶ 16 and 17 of Plaintiff's Stipulation of Pleading Facts is discussed on pp. 1, 2 and 3 thereof. The verbatim photocopy of this December 6, 1994 DETERMINATION of EEOC appears as succeeding pages 33 - 36 of this MEMORANDUM OPINION.



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Birmingham District Office          1900 3rd Avenue, North, Suite 101
Birmingham, AL 35203-2397
PH: (205) 731-0082
TDD: (205) 731-0095
FAX: (205) 731-2101

IN

DEC 07 '94

MUSCLE SHOALS
BD. OF ED.

CV 95-HM-511-NW
DATE

DEFT EXHIBIT NO. 3

Charge No: 130 93 1845

Patricia Hawkins
1020 Hemlock Street
Tuscumbia, AL 35674                                      Charging Party

Muscle Shoals City Schools
P. O. Box 2730
Muscle Shoals, AL 35662                                     Respondent

### DETERMINATION

Under the authority vested in me by the Commission, I issue the following
determination as to the merits of the subject charge filed under Title VII
of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met. Charging Party alleged that
she was discriminated against in violation of Title VII in that she was
issued a written warning, harassed, disciplined and intimated in retaliation
for filing previous charges of employment discrimination on October 4,
1989, and in May 1992.

Charging Party contends the following. She was required to sign in and
out when leaving campus or for lunch; she was moved to a building
without a water fountain, or rest room. The grading procedure was
changed without her knowledge, and teachers did not help her with
orientation. In addition, the Charging Party contends that she was
threatened with termination, given unrealistic time frames and issued a
written warning.

33

Respondent denies the Charging Party's allegation. Respondent contends that there is a standard procedure for off campus check in and out that has been followed for several years.  Respondent contends that the Charging Party requested the change in buildings.  Respondent contends with regards to the water fountain and rest room, that some employees have closer access to rest rooms and water fountains than others. Respondent contends that a request has been made for a water fountain for the Charging Party's office.   Respondent contends the grading procedure was changed so that it coincided with the schools report card dates.  Respondent contends that the Charging Party was off work due to illness when the change was implemented. Respondent contends with regard to orientation, that other faculty members previously helped the Charging Party but were unavailable at the instant orientation. Respondent contends that the Charging Party received a reprimand for failing to meet established time frames.  Respondent denies that the time frame were unrealistic.  Respondent contends that there is no evidence that the Charging Party was threatened.

The evidence reveals the following.  The Charging Party was hired with the Respondent in 1976.  Since her date of hire she held the positions of Counselor from 08/76 to 07/79, Teacher from 08/79 to 07/88 and JTPA Counselor from 08/88 to the present.  The Charging Party filed two previous charges with the EEOC against the Respondent.

In April 1979, the Charging Party was informed that her contract would not be renewed because of budgetary reasons, however, the Respondent reconsidered its decision.

The evidence also reveals that the Charging Party complained about unfair evaluations in 1980 and 1982.  Charging Party became JTPA counselor in the 1988-89 school year under her present supervisor.

On May 9, 1989, the Charging Party requested in writing that she be moved from the Board of Education building into new portable buildings where the Vocational business offices were moving.  Since November 3, 1989, the Charging Party has complained in writing about problems between her and her supervisor.

2

On April 24, 1992, the Charging Party was informed by the Superintendent that she was insubordinate. This memo also recommends that the Charging Party be terminated, but because of her longevity with the Respondent, she was retained. Another memo dated December 7, 1992, recommends the Charging Party for termination because of insubordination. The Respondent reconsidered its decision, because of the Charging Party's longevity with the Respondent.

The evidence also reveals that the due dates for the grading procedures were changed to meet with the schools grading periods. In addition, the evidence reveals that teachers have previously assisted the Charging Party with recruitment programs but were unavailable recently.

The testimony of witnesses reveals that all employees are required to sign in and out when leaving the campus for lunch. One white female witness stated that she has to go outside of the building where her class room is located to use the ladies rest room and the water fountain. In addition, with regards to the teachers not helping the Charging Party with the orientation or recruitment, the witnesses stated during the March 1994, orientation, they had classes and had no substitute so they could not assist the Charging Party. The witnesses also stated that they have assisted the Charging Party on other occasions in recruitment programs.

The work force for the Vocational Department reveals that during the 1993-94 school year, there were 22 employees. Of these, five or 24% are black and 16 or 76% are white. In the 1994-95 school year, there were a total 23 employees. Of these, five or 22% are black and 18 or 78% are white.

Based upon this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

This determination and dismissal concludes the processing of this charge. This letter will be the only notice of dismissal and the only notice of the Charging Party's right to sue sent by the Commission. THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER FURTHER BY FILING SUIT AGAINST THE RESPONDENT NAMED IN THE CHARGE IN FEDERAL DISTRICT COURT WITHIN 90 DAYS OF THE CHARGING PARTY'S

3

RECEIPT OF THIS LETTER.  Therefore, if a suit is not filed within this 90 day period, the Charging Party's right to sue will be lost.

On Behalf the Commission:

_12-6-94_
Date

Warren A. Bullock
District Director

Enciosures:
  Information Sheet on Filing Suit in Federal Court

4

It is the considered opinion and holding of this Court that ¶¶ 16 and 17 of Plaintiff's Stipulation of Pleading Facts filed July 12, 1996 as an amendment to Plaintiff's FIRST AMENDED COMPLAINT cannot and will not be considered and treated by this federal district court in this Rule 56 summary judgment proceeding as viable pleading facts supportive of either Count I or Count II or Count III of Plaintiff's First Amended Complaint, as amended by Plaintiff's Stipulation of Pleading Facts filed July 12, 1996 and that such facts have not in this Rule 56 summary judgment proceeding been proven by Plaintiff in whole or in part by the summary judgment evidentiary materials submitted by Plaintiff in opposition to summary judgment in the above-entitled civil action. **Moreover, if it is argued by Plaintiff's counsel of record that his summary judgment submissions in this summary judgment proceeding offered by Plaintiff in support of ¶¶ 16 and 17 of his STIPULATION OF PLEADING FACTS filed July 12, 1996 as an amendment to her First Amended Complaint show that there is a genuine issue for trial with regard to the purported facts alleged in ¶¶ 16 and 17 of Plaintiff's Stipulation of Pleading Facts, this Court rejoins, first, that the purported facts alleged in ¶¶ 16 and 17 by Plaintiff are not and do not constitute material, relevant facts in this civil litigation against either Defendant [most assuredly not against the Muscle Shoals Board of Education] and, secondly, ¶¶ 16 and 17 allege purported very minor facts which are not supportive, even if proven, of either Count I or Count II or Count III of Plaintiff's First Amended Complaint, as last amended on July 12,**

**1996, against either Defendant.**

> **FULL SUMMARY JUDGMENT IS DUE TO BE GRANTED DEFENDANTS WITH RESPECT TO COUNTS I, II AND III OF PLAINTIFF'S FIRST AMENDED COMPLAINT, AS AMENDED BY PLAINTIFF'S "STIPULATION OF PLEADING FACTS"**

Since the only FACTS pled by Plaintiff in purported support of Count I, Count II and Count III of her FIRST AMENDED COMPLAINT, as last amended, are those now set out in Plaintiff's "STATEMENT OF PLEADING FACTS" filed by her on July 12, 1996 in response to the Order-Directive of this Court granting Defendants' Rule 12(b)(6), Fed.R.Civ.P., Motion To Dismiss and thereupon dismissing Plaintiff's original First Amended Complaint without prejudice with leave granting Plaintiff the option to file within time certain a SECOND AMENDED COMPLAINT or to file within time certain her STIPULATION OF PLEADING FACTS which would be considered and treated by the Court as an authorized amendment to Plaintiff's FIRST AMENDED COMPLAINT, the only possible way for this federal district court in this summary judgment proceeding to ascertain and determine which of Plaintiff's pled facts in her First Amended Complaint, as last amended, are intended by Plaintiff to support her Counts I, II and III is to seek to make this determination by a review and analysis of the three counts in question which are each pled by Plaintiff without the inclusion therein of any facts at all and to then review Plaintiff's July 12, 1996 STIPULATION OF PLEADING FACTS consisting of fifty-three [53] "fact paragraphs" in an effort to ascertain and assign each such pled fact to its proper

and **intended** count or counts. In view of the fact that this Order-Directive was issued and predicated on the fact that Plaintiff's original FACTUAL ALLEGATIONS in her original First Amended Complaint **did not** fairly inform or apprise Defendants of what they were called upon to defend in Plaintiff's Counts I, II and III of her original First Amended Complaint, the only possible source of Count I facts, Count II facts and Count III facts must be found and determined by this United States District Court, if at all, in Plaintiff's STIPULATION OF PLEADING FACTS` now appearing in Plaintiff's FIRST AMENDED COMPLAINT, as last amended, comprised of fifty-three [53] separate paragraphs, **none of which are designated by Plaintiff as "Count I facts" or as "Count II facts" or as "Count III facts" or as facts applicable to more than one count in Plaintiff's First Amended Complaint, as last amended by Plaintiff's July 12, 1996 amendatory pleading document.** Unfortunately, there is nothing plain or obvious in any numbered paragraph in Plaintiff's Stipulation of Pleading Facts which provides a hint or glimmer as to which count or counts of the First Amended Complaint [as amended] it supports. *Under these circumstances this Court flatly, formally and firmly EXPRESSLY DECLINES to examine each and every paragraph of Plaintiff's July 12, 1996 STIPULATION OF PLEADING FACTS for the purpose of then BLINDLY GUESSING which of these 53 paragraphs were intended by Plaintiff and her counsel of record to be Count I pleaded facts or to be Count II pleaded facts or to be Count III pleaded facts or whether Plaintiff and her counsel of record intended certain fact paragraphs out of the 53*

39

*paragraphs to apply to more than one count or to all three counts.* Neither these Defendants nor this federal district court have any such legal duty or legal obligation under the Federal Rules of Civil Procedure [see Rule 8(a)(2) and Rule 10(b)].[11]   And see *Anderson v. District Board of Trustees of Central Fla. Community College*, 77 F.3d 364, 365 (1996).

This Court is of the opinion and holds that it is indeed virtually impossible for these Defendants or for this Court to know with any reasonable degree of certainty which allegations of facts in Plaintiff's STIPULATION OF PLEADING FACTS [consisting of 53 paragraphs] are intended by Plaintiff and her counsel of record to apply to and thus support Plaintiff's Count I or Plaintiff's Count II or Plaintiff's Count III or to apply to and support more than one of these identified counts.

Moreover, by the provisions of this Court's Order-Directive entered on July 8, 1996 counsel for Plaintiff well knew that his client had the obvious choice of filing a SECOND AMENDED COMPLAINT in this civil action (which would have brought about a cancellation of the pending Motion for Summary Judgment of the Defendants and a continuance of the August 5, 1996 trial date setting) or of promptly filing a STIPULATION OF PLEADING FACTS as an amendment to Plaintiff's FIRST AMENDED COMPLAINT to correct the plethora of

---

[11]   **Rule 8(a)(2) provides:** "A pleading which sets forth a claim for relief . . . shall contain: . . .(2) A short and plain statement of the claim showing that the pleading is entitled to relief." **Rule 10(b) provides: Paragraphs;** Separate Statements. All averments of claim . . . shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth.

pleading violations and deficiencies which existed in and permeated Plaintiff's ORIGINAL FACTUAL ALLEGATIONS which appear on pages 2 - 4, inclusive of Plaintiff's FIRST AMENDED COMPLAINT. <u>Plaintiff and her counsel of record obviously chose their second option and accordingly filed Plaintiff's STIPULATION OF PLEADING FACTS on July 12, 1996 with foreknowledge that the summary judgment proceeding in this case and then in progress moving toward submission and court rulings would continue.</u> Accordingly, by filing a STIPULATION OF PLEADING FACTS in this case [to take the place and stead of Plaintiff's original FACTUAL ALLEGATIONS] which was and is as bad or worse than the FACTUAL ALLEGATIONS insofar as pleading deficiencies are concerned and similar failure to apprise or notify Defendants of which allegations of fact are intended to support which claim(s) for relief and of what Defendants are called upon to defend under each purported claim for relief, this Plaintiff and her counsel should not be surprised or offended by this federal district court granting the Defendants' Rule 56, Fed.R.Civ.P. Motion for Summary Judgment directed to Counts I, II and III of Plaintiff's First Amended Complaint, as further amended by Plaintiff's Stipulation of Pleading Fact.

While this federal district court has cited the *Anderson* case, *supra*, as well as Rule 8(a)2 and Rule 10(b), Fed.R.Civ.P., as supporting its refusal to blindly guess which of Plaintiff's 53 fact paragraphs contained in Plaintiff's STIPULATION OF PLEADING FACTS are intended to be considered and treated as a Count I fact or as a Count II fact or as a Count III fact or as a fact

applicable to more than one count, this Court hastens to acknowledge its awareness of the Eleventh Circuit's observation in the *Anderson* case that when a defendant in the pleading stage is faced with a complaint such as *Anderson's*, that defendant is not expected to frame a responsive pleading but rather is expected to move the Court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement. *Anderson*, 77 F.3d 365. But under the particular fact circumstances of the present case at the time Plaintiff filed herein his STIPULATION OF PLEADING FACTS as an amendment to his First Amended Complaint the party litigants and this Court were well past the normal pleading stage of the case and were in the midst of an ongoing Rule 56 summary judgment proceeding and in addition were faced with a jury trial setting of the case only a short time away. **Counsel of record for Plaintiff deliberately opted for a STIPULATION OF PLEADING FACTS with full knowledge that such pleading document would be treated and considered by this Court as an amendment to Plaintiff's FIRST AMENDED COMPLAINT and that the ongoing summary judgment proceeding in this case would continue unabated,** thus making it inevitable that this Court in deciding whether to grant or deny Defendants' Rule 56 Motion For Summary Judgment would of necessity have to carefully examine and analyze Plaintiff's First Amended Complaint, as amended by Plaintiff's STIPULATION OF PLEADING FACTS, in its determination of the summary judgment issues. Such examination and analysis by the Court would also clearly necessitate a careful consideration of the **pleading facts** alleged in Plaintiff's FIRST

AMENDED COMPLAINT, as amended, by Plaintiff's STIPULATION OF PLEADING FACTS. It is difficult enough when faced with a properly pled complaint in a summary judgment proceeding for the Court to correctly decide summary judgment issues. **It is next to impossible to correctly decide summary judgment issues in a summary judgment proceeding when the complaint or amended complaint in the summary judgment proceeding is as poorly and as improperly pled as is Plaintiff's First Amended Complaint, as amended by Plaintiff's Stipulation of Pleading Facts.**

Plaintiff's counsel of record has himself to blame for this dilemma. His client's Complaint, as last amended, with no ascertainable facts alleged in support of the three claims for relief purportedly asserted by Plaintiff, does not allege a single viable claim for relief against these Defendants and the time is long past for Plaintiff to be permitted to draft and file a Second Amended Complaint. **Moreover, it is clear and certain in this summary judgment proceeding which is ripe for summary judgment final ruling that these Defendants in this Rule 56 summary judgment proceeding have fully met their initial burden in this summary judgment proceeding to show this federal district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial, thus shifting the burden to the nonmoving party to demonstrate that there is indeed a material issue of fact which precludes summary judgment.** Plaintiff has abjectly failed to make any such demonstration or showing. As a consequence, Defendants' Motion For Rule 56 Summary

43

Judgment is due to be granted with respect to Counts I, II and III of Plaintiff's First Amended Complaint, as last amended by Plaintiff's Stipulation of Pleading Facts and the above-entitled civil action is thereon due to be dismissed with prejudice. And this Court so holds.

The Court's authority for this full summary judgment ruling in favor of Defendants and against Plaintiff, other than hereinabove set out, is the Eleventh Circuit Court of Appeals case of *Coats & Clark*, 929 F.2d 604 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Matsushita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

**NEITHER THE MUSCLE SHOALS BOARD OF EDUCATION'S CITY SUPERINTENDENT OF SCHOOLS DR. JIM DOUGLAS OR THE FORMER MUSCLE SHOALS CITY SUPERINTENDENT OF SCHOOLS WHOM DR. DOUGLAS SUCCEEDED, NAMELY, DR. MARTHA LIVINGSTON, IS SUED AS A DEFENDANT IN THE ABOVE-ENTITLED CIVIL ACTION BROUGHT BY PLAINTIFF PATRICIA HAWKINS AGAINST DEFENDANTS MUSCLE SHOALS BOARD OF EDUCATION AND SYLVIA COLEMAN, INDIVIDUALLY.**

Given the fact and law that at all times relevant to the above-entitled civil action and for the entire period of time Plaintiff Patricia Hawkins has been employed in the Muscle Shoals City School System [August 20, 1976 to the date hereof, almost 21 years] the **Muscle Shoals City Superintendent of Schools** has been the **chief executive officer** of the Muscle Shoals Board of Education and by appointment of the Muscle Shoals School Board has been and

44

has served as its **executive officer**; given the fact and law that there is no legal or feasible way for the Muscle Shoals Board of Education to fulfill its legal duties and responsibilities to furnish and provide the general administrative and supervision of the public schools of the City of Muscle Shoals, Alabama without the professional aid and professional guidance and professional advice of the Muscle Shoals City Superintendent of Schools provided to the Muscle Shoals Board of Education on a day by day, week by week and year by year basis; given the fact and law that during each school working day in which Plaintiff Patricia Hawkins has served and acted as a teacher employee of the Muscle Shoals Board of Education, which is a calendar time frame covering almost 21 years, the actual day by day, month by month and year by year operation and management of the Muscle Shoals City School System [including the supervision of all teachers employed in the Muscle Shoals City School System] has been essentially provided by the duly appointed Muscle Shoals City Superintendent of Schools under the appointment and authorization of the Muscle Shoals Board of Education; given the fact and law that during Plaintiff Patricia Hawkins' entire period of employment in the Muscle Shoals City School System [almost 21 years] the Muscle Shoals City Superintendent of Schools has been vested by the provisions of § 16-12-16 of the Code of Alabama 1975, as amended, with the legal mandate and legal power . . . "to nominate in writing for appointment by the Muscle Shoals Board of Education all principals, teachers, supervisors, attendance officers, janitors and all other

45

employees of the board and to assign to them their positions, transfer them as the needs of the schools require, recommend them for promotion, suspend them for cause and recommend them for dismissal," subject to the provisions of Chapter 24 of this title; given the fact and law that Plaintiff Patricia Hawkins could not have obtained her first contract of employment in the Muscle Shoals City School System without the prior recommendation of the Muscle Shoals City Superintendent of Schools to the Muscle Shoals Board of Education; given the fact and law that the Plaintiff Patricia Hawkins could not have remained as an employee in the Muscle Shoals City School System after her first year of employment for the 20 year period thereafter she has continually remained as such employee without the Muscle Shoals City Superintendent of Schools annual recommendation to the Muscle Shoals Board of Education for 20 consecutive years that Plaintiff Patricia Hawkins be re-employed for another school year;[12] given the fact and law that Plaintiff Patricia Hawkins could not have received a single promotion which she has received as an employee of the Muscle Shoals City School System during her [almost] 21 years of service without the prior recommendation of the Muscle Shoals City Superintendent of Schools to the Muscle Shoals Board of Education; given the fact and law that following her initial employment as a teacher in the Muscle

---

[12] While the Muscle Shoals City Superintendent of Schools has the right, power or authority to recommend to the Muscle Shoals Board of Education that a certain teacher or certain teachers be re-employed for another school year, he has no right, power or authority to actually re-employ a certain teacher or certain teachers for another school year. That power is vested in the Muscle Shoals Board of Education. Conversely, the Muscle Shoals Board of Education has no right, power or authority to re-employ a certain teacher or certain teachers for another school year without first having received a recommendation for such employment by the City Superintendent of Schools.

46

Shoals City School System she could not have attained status as a fully tenured teacher in the Muscle Shoals City School System without a series of prior favorable recommendations for successive year teaching employment in the Muscle Shoals City School System made by the Muscle Shoals City Superintendent of Education to the Muscle Shoals Board of Education prior to the commencement of each such school year; and, finally, given the fact and law that during Plaintiff's entire work tenure in the Muscle Shoals City School System [a period of almost 21 years] **the Muscle Shoals City Superintendent of Schools has been continually empowered by public school law to nominate in writing for appointment by the Muscle Shoals Board of Education all principals, teachers, supervisors, attendance officers, janitors and all other employees of the board and to assign them to their positions, transfer them as the needs of the school require, recommend them for promotion, suspend them for cause and recommend them for dismissal, subject to the provisions of Chapter 24 of Title 16, Code of Alabama 1975, as amended.**

*Given these above enumerated facts and laws with respect to the rights, powers and authority of the Muscle Shoals City Superintendent of Schools throughout the 20 year [plus] work-tenure of Plaintiff Patricia Hawkins as an employee in the Muscle Shoals City School System, specifically including the respective calendar year date and/or dates on which the respective purported racially discriminatory incidents and/or practices occurred which are depicted in Plaintiff's Stipulation of Pleading Facts filed on July*

47

*12, 1996 as an amendment to Plaintiff's FIRST AMENDED COMPLAINT* <u>*over each of which the then Muscle Shoals City Superintendent of*</u> <u>*Education possessed vast right, power and authority under the*</u> <u>*public school laws of the State of Alabama,*</u> *almost co-extensive with the Defendant Muscle Shoals Board of Education, together with the summary judgment evidence submitted by Defendants in support of summary judgment and presented in this MEMORANDUM OPINION, this United States District Court on the basis of all the summary judgment evidence in this case [both in support thereof and in opposition thereto] and applicable law finds, determines and declares that extremely grave doubt and strong suspicion arises which literally permeates this entire civil case concerning the bona fides[13] of all of Plaintiff's multitudinous employment discrimination [racial] accusations in this case brought against the Defendants Muscle Shoals Board of Education and Sylvia Copeland, individually, but not brought against the present Muscle Shoals City Superintendent of Schools and/or his immediate predecessor in office.*

---

[13] **The word or phrase "bona fide" is defined in BLACK'S LAW DICTIONARY, 5th Edition, at p. 160 as follows: In or with good faith; honestly, openly, and sincerely; without deceit or fraud. *Merrill v. Dept. of Motor Vehicles*, 71 cal.2d 907, 80 Cal.Rptr. 89, 458 P.2d 33. Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud, etc. Real, actual, genuine, and not feigned. *Bridgeport Mortgage & Realty Corporation v. Whitlock*, 128 Conn. 57, 20 A.2d 414, 416.**

48

**DEFENDANTS' SUMMARY JUDGMENT EXHIBIT NO. 30 [AFFIDAVIT OF WILLIAM ALLEN HOOKER, TREASURER OF THE MUSCLE SHOALS BOARD OF EDUCATION DATED JULY 16, 1996, WITH PATRICIA HAWKINS' MUSCLE SHOALS CITY SCHOOL SYSTEM ANNUAL SALARY SCHEDULE ATTACHED FOR THE CALENDAR YEARS 1976-1995, INCLUSIVE] IS STRONGLY PERSUASIVE AND POWERFUL SUMMARY JUDGMENT EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR FULL SUMMARY JUDGMENT IN THIS CIVIL CASE**

Affiant's SJ AFFIDAVIT [Defendants' Ex. 30] reads as follows:

1.    My name is William Allen Hooker. I am over the age of 21 years and am in all ways competent to make this Affidavit.

2.    I am the treasurer for the Muscle Shoals Board of Education and have held this position since July 1, 1995.

3.    I have personal knowledge of the facts recited in this Affidavit.

4.    I am the Custodian of Funds and Payroll records for the Muscle Shoals Board of Education.

5.    A true and correct summary of salary for Patricia Hawkins derived from the 4th Quarterly Report/W-2 from 1976 through 1995 is attached as Exhibit A to this Affidavit. The summary is produced from the records made and kept in the ordinary course of business by the Muscle Shoals Board of Education and it is the regular practice of the Board to make and keep said records.

6.    The data provided in Exhibit A was collected from the records maintained by the Muscle Shoals Board of Education and indicate that Patricia Hawkins has not suffered a decrease in income since 1980. From this summary Patricia Hawkins' salary increased from $33,035.40 in 1989 to $46,096.74 in 1995.

The above-described Muscle Shoals City School System annual salary schedule for Plaintiff Patricia Hawkins for the calendar years 1075 - 1995, inclusive, prepared under the supervision of the Treasurer of the Muscle Shoals Board of Education is reproduced in the form and format of a photocopy thereof which appears verbatim as succeeding p. 50 of this MEMORANDUM OPINION.

49

CV 95—HM—511—NW
DATE

DEFT EXHIBIT NO.    62

**Patricia Hawkins**
**Employment Date:    August 20, 1976**

## *4th Quarterly Report/W-2*

| | |
|---|---|
| 1976 | $4,002.12 |
| 1977 | 12,941.89 |
| 1978 | 13,426.13 |
| 1979 | 14,905.88 |
| 1980 | 14,713.37 |
| 1981 | 16,023.40 |
| 1982 | 17,172.82 |
| 1983 | 18,833.40 |
| 1984 | 19,636.77 |
| 1985 | 23,074.19 |
| 1986 | 24,980.64 |
| 1987 | 25,817.56 |
| 1988 | 28,631.36 |
| 1989 | 33,035.40 |
| 1990 | 37,612.80 |
| 1991 | 39,060.00 |
| 1992 | 39,060.00 |
| 1993 | 40,762.92 |
| 1994 | 42,500.88 |
| 1995 | 46,096.74 |

SINCE THIRTY-FIVE [35] OF THE THIRTY-EIGHT [38] "PLEADING
FACTS" ALLEGED IN ¶¶ 16-53, INCLUSIVE, OF PLAINTIFF'S
STIPULATION OF PLEADING FACTS FILED ON JULY 12, 1996 AS
AN AMENDMENT TO PLAINTIFF'S FIRST AMENDED COMPLAINT ARE
FACIALLY ALLEGED BY PLAINTIFF PATRICIA HAWKINS ONLY
AGAINST THE INDIVIDUAL DEFENDANT SYLVIA COLEMAN, THIS
COURT NOW PRESENTS AFFIDAVIT OF SYLVIA J. COLEMAN DATED
JULY 17, 1996 OFFERED IN SUPPORT OF SUMMARY JUDGMENT BY
THE MOVANT/DEFENDANTS AS DEFENDANTS' EXHIBIT NO. 33.

THE Affidavit of Sylvia J. Coleman dated July 17, 1996
comprised of five [5] pages and offered by Defendants in support of
their joint MOTION FOR SUMMARY JUDGMENT as Defendants' Exhibit No.
33 is reproduced in the form and format of photocopies of each page
which appear on succeeding pages 52, 53, 54, 55 and 56 of this
MEMORANDUM OPINION.

EXHIBIT 33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

Patricia Hawkins,

      Plaintiff,

                              CASE NUMBER:  CV-95-HM-0511-NW

vs.

Muscle Shoals Board of
Education, et. al.

      Defendant,

STATE OF ALABAMA     )
COUNTY OF COLBERT    )

### AFFIDAVIT OF SYLVIA J. COLEMAN

Before me, the undersigned authority, personally appeared Sylvia J. Coleman who, after being duly sworn, swears and affirms and declares the following under penalty of perjury under the laws of the United States:

      1.    My name is Sylvia J. Coleman. I am over the age of 21 years and am in all ways competent to make this Affidavit.

      2.    I am the Vocational Director for the Muscle Shoals Center for Technology and have held this position since August, 1989.

      3.    I have personal knowledge of the facts recited in this Affidavit and emphatically deny all allegations contained in Plaintiff's Stipulation of Pleading Facts as follows:

           1.    It is my understanding that Patricia Hawkins has been employed by the Muscle Shoals Board of Education since August, 1976.

2.  Patricia Hawkins is an Afro-American by race.

3.  I am an employee of the Muscle Shoals Board of Education.

4.  I am a Caucasian by race.

5.  I have been Patricia Hawkins' immediate supervisor since August, 1989.

6.  I have no personal knowledge of the EEOC Charges filed based on race and sex discrimination against the Muscle Shoals Board of Education by Patricia Hawkins on May 19, 1992 or May 4, 1993.

7.  I have no personal knowledge regarding the administrative requirements fulfilled by Patricia Hawkins prerequisite to filing this complaint.

8, 9, 10, 11.  I have no personal knowledge of the November 1985 meeting nor the statement alleged made by Don Heidorn, Superintendent regarding the employment of Patricia Hawkins. I have no personal knowledge of the alleged statement "nigger-rigged" made by Don Heidorn or that Leon Madden, a member of the Muscle Shoals Board of Education was present at such meeting and heard the alleged statements made by Don Heidorn. I was not employed by the Muscle Shoals Board of Education in 1985.

12, 13, 14, 15. DeKosyln Anderson is an Afro-American by race and was employed by the Muscle Shoals Board of Education and under my supervision at the same time Patricia Hawkins was under my supervision. I have no personal knowledge that DeKosyln Anderson overheard a telephone conversation regarding my work experience in a predominantly all-black school district and that she heard me make the alleged statement "all blacks are like rattlesnakes". I emphatically deny this allegation. I never made this statement. I have no personal knowledge that DeKosyln Anderson told Patricia Hawkins of the alleged statement.

16 & 17.  As Supervisor at the Muscle Shoals Center for Technology, I enforce school policies as stated in the Muscle Shoals Center for Technology Faculty Handbook requiring vocational personnel to sign in and out when leaving campus during the school day. This school policy has been in effect beginning as early as the 1986-87 school year. Other vocational personnel as well as Patricia Hawkins are required to use the Off Campus Check In/Out Log when leaving campus.

18, 19, 20.  Patricia Hawkins was under my supervision during February, 1992 when I was requested by Dr. Martha Livingston, Superintendent of the Muscle Shoals Board of Education to move Mrs. Hawkins to a different location. I complied with the Superintendent's request and moved Mrs. Hawkins to her present location located on the Muscle Shoals Center for Technology campus. Prior to 1992, on May 9, 1989, Patricia Hawkins requested Dr. Martha Livingston to move her to another area, that her present location is not further away from the administrative offices to that of non-black employees, and that she also

has access to bathroom facilities and a water fountain.

21. I have no personal knowledge of a staff meeting which involved Patricia Hawkins work group being held on August 28, 1992.

22. On September 18, 1992, I instructed Patricia Hawkins to provide previously requested information (July 28, 1992). This assignment was not completed until November, 1992. The time frame for completion of this assignment is realistic. Non-black employees (teachers) under my supervision cannot provide counseling information (similar assignments).

23. I have personal knowledge that Patricia Hawkins complained to Dr. Jim Douglas, Superintendent, about her assignments during the 1994 school year.

24. During the 1992-93 school year Patricia Hawkins was provided time for a lunch break. The State Department of Education does not require a specific planning time be allotted for counselors during the school day.

25. Beginning on September 21, 1992, I did not advise school employees not to visit Patricia Hawkins' office

26. I have no personal knowledge of the alleged incident on September 30, 1993. On September 30, 1992, I held an informal meeting with Patricia Hawkins regarding a work assignment. I did not "get in her face" or use rude and insulting language.

27. I did not make false criticisms of Patricia Hawkins' work in a faculty meeting on October 1, 1992.

28. My letter dated November 3, 1992, to Dr. Ann Wilson, State Department of Education apologizes for not meeting the State Department of Education's deadline for State Initial Enrollment information.

29. In my letter dated December 4, 1992, to Dr. Martha Livingston, Superintendent, I recommended the dismissal of Patricia Hawkins based on insubordination, neglect of duty, unprofessional conduct, and an assessment of Mrs. Hawkins' performance as Counselor for the Muscle Shoals Center for Technology, not on the basis of her race.

30. I have no personal knowledge that on or about December 14, 1992, Patricia Hawkins applied for an administrative position in the Muscle Shoals School System, that she was not granted an interview, the selection process used by the Muscle Shoals Board of Education for the available position, or of Patricia Hawkins' qualifications with regard to the available position.

31. I have no personal knowledge of the alleged action on or about November 1992 to single Patricia Hawkins out for a counseling site inspection. I do not supervise any other non-black counselors or other non-black employees who would be subject to a school counselor site inspection.

32, 33, 34. The 1992-93 counseling program budget funding provided

to Patricia Hawkins was equal to/greater than the counseling program budget funding previously provided to the non-black employee in that position. I did not prohibit Patricia Hawkins from participating in discussions about her program budget during the 1993-94 school year and instructional funding was provided to Patricia Hawkins during the 1993-94 school year.

35. I did not advise teachers in the Muscle Shoals City School System not to supply necessary information to Patricia Hawkins to "allow her to perform her job".

36. I did inform Patricia Hawkins if the Scholarship Committee meeting convened on March 20, 1995. She arrived at the meeting at 3:03 p.m. I did not attempt to keep a minority candidate from being considered for the available scholarships.

37, 38, 39. I did not attempt to conduct an observation of Patricia Hawkins' work on April 7, 1995. I attempted to conduct a classroom observation on Patricia Hawkins on April 12, 1995.

40. I have never physically struck Patricia Hawkins.

41. I did not point my finger directly at Patricia Hawkins or act rudely toward her in the summer of 1994 while discussing work hours.

42. I assigned In-Field Work Assignments during August 1994 to all certified vocational personnel. I did not make "adjustments to the assignments of non-black employees" as alleged.

43. I assigned a committee to draft an "Invitational Letter to Parents" in a faculty meeting on June 1, 1994. Patricia Hawkins was on the committee. The entire project was not completed by Patricia Hawkins in an unreasonable time frame as she alleges.

44. I did not deny Patricia Hawkins the opportunity to attend a meeting involving her 22% JTPA duties.

45. I did not deny Patricia Hawkins the opportunity to attend a special workshop for JTPA school officials.

46 & 48. On or about March 5, 1994, I did not instruct members of the Recruitment Committee of the Muscle Shoals School System not to work with Patricia Hawkins on her projects. On or about May 18, 1994, I provided Patricia Hawkins with minutes of the Recruitment Committee.

47. During 1994 I provided to the counseling department the changes in procedure for reporting of grades. Procedural changes are **not** within the job authority of Patricia Hawkins, but, are implemented at the discretion of the vocational director and do not require input or consent from the counselor.

49. Vocational faculty members were not provided an opportunity to attend the Vocational Summer Conference from August 10-12, 1994. Patricia Hawkins is a member of the vocational faculty. I do not supervise any other non-

black counselors, so their attendance at workshops is not under my authority.

50. I have no personal knowledge of a workshop to be held at Shoals Community College on or about July 11, 1994. I provided information dated July 27, 1994, to Patricia Hawkins regarding the workshop to be held at Shoals Community College on August 8, 1994.

51. I have never subjected Patricia Hawkins to any discriminatory terms or condition of employment based upon her race. Any hostile work place is the fault of Patricia Hawkins because of her constant insubordination to me and neglect of her duties. She will not accept authority from anyone.

52. I have never subjected Patricia Hawkins to unfair treatment in retaliation for her previous EEOC activity. I have never been named in any of her previous EEOC activity and would have no reason to retaliate against her.

53. I have not engaged in any wrongful conduct concerning Patricia Hawkins, nor have any of my actions as her supervisor been malicious or with reckless indifference to her federally protected rights.


_____
AFFIANT


SWORN AND SUBSCRIBED TO, before me, this _17th_ day of July, 1996.


_____
Notary Public

My Commission expires: _11-2-98_

Court Note:  The thirty-five [35] "PLEADING FACTS" facially alleged
by Plaintiff against the individual Defendant Sylvia Coleman are
numerically designated by Plaintiff in her STIPULATION OF PLEADING
FACTS as follows:

```
16; 17; 18; 19; 20; 21; 22; 23; 24; 25; 26;
27; 28; 29; 30; 31; 32; 33; 34; 35; 36; 37;
38; 39; 40; 41; 42; 43; 44; 45; 46; 47; 48;
49; 50; and 53
```

See *ante* pp. 7-12 for Plaintiff's STIPULATION OF PLEADING FACTS.

**UNDER ALABAMA PUBLIC SCHOOL LAW ENACTED BY THE ALABAMA
LEGISLATURE THE CITY SUPERINTENDENT OF SCHOOLS OF THE
MUSCLE SHOALS CITY SCHOOL SYSTEM IS AND WAS AT ALL TIMES
RELEVANT TO THE ABOVE-ENTITLED CIVIL ACTION APPOINTED BY
THE DEFENDANT MUSCLE SHOALS BOARD OF EDUCATION TO HOLD
OFFICE AT THE PLEASURE OF THE BOARD AND TO SERVE AND ACT
AS ITS CHIEF EXECUTIVE OFFICER AND AS ITS EXECUTIVE
OFFICER.  THE APPOINTEE-OCCUPANT OF THIS PUBLIC SCHOOL
OFFICE IS THE TITULAR HEAD OF THE MUSCLE SHOALS CITY
SCHOOL SYSTEM AND IS BOTH LEGISLATIVELY VESTED AND BOARD
VESTED WITH MANY RIGHTS, POWERS AND AUTHORITY OVER THE
MUSCLE SHOALS CITY SCHOOL SYSTEM AND ITS SCHOOL
PRINCIPALS, TEACHERS, SUPERVISORS, COUNSELORS AND ALL
OTHER EMPLOYEES OF THE MUSCLE SHOALS BOARD OF EDUCATION.**

### [CITY SUPERINTENDENT OF SCHOOLS]

Chapter 12 of Title 16 of the Code of Alabama 1975, as
amended, comprised of § 16-12-1 through § 16-12-21, inclusive, has
as its principal subject "CITY SUPERINTENDENT OF SCHOOLS" and
prescribes the rights, powers, authority, duties, responsibilities
and obligations of the Superintendent of Schools of the Muscle
Shoals City School System now and at all times relevant to
Plaintiff's FIRST AMENDED COMPLAINT, as amended, by Plaintiff's
STIPULATION OF PLEADING FACTS filed on July 12, 1996 in this civil
action.[14]

---

[14] The time frame relevant to Plaintiff's First Amended Complaint, as last amended, according to Plaintiff's
Stipulation of Pleading Facts appear to cover the time frame of November, 1985 through April 18, 1995 [see ¶ 40 of
Plaintiff's STIPULATION OF PLEADING FACTS].

Chapter 12 of Title 16 of the Code of Alabama 1975, as amended, [CITY SUPERINTENDENT OF SCHOOLS] is reproduced in its entirety in the form and format of photocopies of § 16-12-1 through § 16-12-21, inclusive, which appear verbatim on succeeding pages 59, 60, 61, 62 and 63 of this MEMORANDUM OPINION.

58

## § 16-12-1. Appointment, compensation and removal.

The city board of education shall appoint a city superintendent of schools to hold office at the pleasure of the board. The city superintendent of schools shall receive such compensation as the city board of education shall direct. The city board of education may remove the city superintendent of schools for incompetency, immorality, misconduct in office, willful neglect of duty or when, in the opinion of the board, the best interests of the schools require it. (School Code 1927, § 219; Code 1940, T. 52, § 177.)

## § 16-12-2. Qualifications.

The superintendent of city schools shall be chosen for his general fitness and character, but shall not be eligible for appointment unless he shall offer proof to the board that he holds a degree from a recognized four-year college or university and is knowledgeable in school administration. Such person need not be a resident or qualified elector of the city or county in which he offers to serve. (Acts 1969, Ex. Sess., No. 39, p. 96, § 1.)

Cited in Armstrong v. Board of Educ., 430 F. Supp. 595 (N.D. Ala. 1977).

## § 16-12-3. Duties generally.

(a) The city superintendent of schools shall be the chief executive officer of the city board of education and shall see that the laws relating to the schools and the rules and regulations of the city board of education are carried into effect.

(b) The city superintendent of schools shall explain the true intent and meaning of the school laws, and of the rules and regulations of the city board of education and of the State Board of Education, subject to the provisions of this title.

(c) The superintendent shall decide, without expense to the parties concerned, all controversies and disputes involving the rules and regulations of the city board of education and the proper administration of the public schools.

(d) The superintendent shall have authority to administer oaths and to examine under oath witnesses in any matter pertaining to the public schools of the city and to cause the examinations to be reduced to writing.

(e) The city board of education shall appoint as its executive officer a superintendent of schools, who may also be secretary of the board of education.

(f) The superintendent of schools shall conduct all correspondence of the board, keep and preserve all of its records, receive all reports required by the board and see that such reports are in proper form, complete and accurate. He shall attend all meetings of the board and of its committee and shall have the right to advise on any motion under consideration, but shall have no vote. In case the secretary is absent, the board shall appoint some member of the board or a teacher in the schools under the jurisdiction of said board to act for the time being. (School Code 1927, §§ 195, 221; Code 1940, T. 52, §§ 155, 179.)

**Legislative intent.** — This section, which declares that "[t]he city school superintendent of schools shall be the chief executive officer of the city board of education," along with § 16-12-1, indicate that the legislature intended for city school boards to have greater flexibility in choosing their respective superintendents than the law would allow if a city school superintendent could attain continuing service status under the teacher tenure law. Mitchell v. Skinner, 603 So. 2d 1023 (Ala. 1992).

**Cited** in Pullen v. Cincinnati Ins. Co., 400 So. 2d 393 (Ala. 1981).

## § 16-12-4. Establishment and maintenance of schools.

The city superintendent of schools shall recommend for approval and adoption by the city board of education the kind, grade and location of schools to be established and maintained. (School Code 1927, § 222; Code 1940, T. 52, § 180.)

### § 16-12-5. Recommendations of educational policy and rules and regulations.

The city superintendent of schools, subject to the provisions of this title, shall recommend for approval and adoption by the city board of education policies adapted to promote the educational interests of the city, and rules and regulations for the conduct of the schools. (School Code 1927, § 223; Code 1940, T. 52, § 181.)

**Collateral references.** — Validity and construction of statutes, ordinances, or regulations requiring competency tests of schoolteachers. 64 ALR4th 642.

Validity, construction, and effect of municipal residency requirements for teachers, principals, and other school employees. 75 ALR4th 272.

### § 16-12-6. Building program for city schools.

The city superintendent of schools, subject to the regulations from time to time of the city board of education and in accordance with the provisions of this title, shall outline a building program adequate to meet the needs of the schools in the city and shall submit the same for approval and adoption by the city board of education. (School Code 1927, § 225; Code 1940, T. 52, § 183.)

### § 16-12-7. School buildings and grounds; approval of contracts generally.

(a) The city superintendent of schools shall recommend to the city board of education for condemnation school buildings which are insanitary and unfit for use. He shall recommend all repairs, purchase of playgrounds, school grounds, school sites and buildings, or the sale of the same, and shall prepare, or cause to be prepared, all plans and specifications for the remodeling of old buildings and the construction of new buildings. He shall recommend, in his discretion, to the board of education an architect or architects to assist in the preparation of plans and specifications for remodeling old buildings, for the construction of new buildings and shall supervise such remodeling and construction.

(b) The city superintendent shall approve in writing all contracts of whatever kind entered into by the city board of education. (School Code 1927, § 226; Code 1940, T. 52, § 184.)

**Cited** in Armstrong v. Board of Educ., 430 F. Supp. 595 (N.D. Ala. 1977).

### § 16-12-8. Grading and standardizing city schools.

The city superintendent of schools, subject to the provisions of this title, shall prepare rules and regulations for grading and standardizing the public schools and shall recommend the same for approval by the city board of education. (School Code 1927, § 227; Code 1940, T. 52, § 185.)

### § 16-12-9. Courses of study for city schools.

The city superintendent of schools, subject to the provisions of this title, shall prepare courses of study for the schools of the city and shall submit the same for approval and adoption by the city board of education. Printed copies of the courses of study shall be supplied every teacher and every interested citizen of the city or town. (School Code 1927, § 228; Code 1940, T. 52, § 186.)

Collateral references. — Tort liability of public schools and institutions of higher learning for educational malpractice. 1 ALR4th 1139.

### § 16-12-10. Institutes organized by city superintendent.

The city superintendent of schools, subject to the provisions of this title, shall organize institutes for teachers and for citizens. He shall advise teachers as to further study and professional reading and assist parents and teachers in acquiring knowledge of the aims and work of the schools. (School Code 1927, § 230; Code 1940, T. 52, § 188.)

### § 16-12-11. Visitation of city schools by superintendent.

The city superintendent of schools shall visit the schools, observe the management and instruction and give suggestions for the improvement of the same. He shall advise with principals and teachers and shall endeavor in every way to promote public interest and improve educational conditions. (School Code 1927, § 231; Code 1940, T. 52, § 189.)

### § 16-12-12. Forms for reports of employees of city board.

The city superintendent of schools, with the approval of the State Superintendent of Education, shall prepare forms and blanks upon which principals, teachers, supervisors, attendance officers, janitors and other regular employees shall make such reports as shall be required and shall submit the same for approval to the city board of education. (School Code 1927, § 232; Code 1940, T. 52, § 190.)

### § 16-12-13. Quadrennial census for city schools.

The city superintendent of schools shall direct the taking of the quadrennial census provided for in this title. He shall cause the census to be retaken in whole or in part when directed to do so by the State Superintendent of Education. The city superintendent of schools shall require the enumerators to make their report to him not later than August 5, following the date of taking the census; and, on or before August 15 following, the city superintendent of schools shall make his report of such census to the county superintendent of education. Where the census of a city is retaken in whole or in part by direction of the State Superintendent of Education, the enumerators shall make their report to the city superintendent of schools within such time as directed by the State Superintendent of Education, and the city superintendent of schools shall make a report to the county superintendent of education within 24 hours from the time of the report to him by the enumerators. He shall retain a duplicate of the same for the files in his own office. (School Code 1927, § 235; Code 1940, T. 52, § 192; Acts 1949, No. 249, p. 372, § 2.)

### § 16-12-14. Report required by state board.

The city superintendent of schools shall prepare, or cause to be prepared, and submit to the city board of education for adoption, all reports required by the State Board of Education, and he shall prepare, or cause to be prepared, and submit to the city board of education a school report as provided in this title. (School Code 1927, § 237; Code 1940, T. 52, § 194.)

### § 16-12-15. Administration of office; supervision of employees.

The city superintendent of schools, acting under the rules and regulations of the city board of education, shall be responsible for the administration of the office of superintendent of schools, and he shall see that all regular appointees of the city board of education devote their entire time to their duties. (School Code 1927, § 238; Code 1940, T. 52, § 195.)

### § 16-12-16. Nomination, removal, etc., of teachers, employees, etc.

The city superintendent of schools shall nominate in writing for appointment by the city board of education all principals, teachers, supervisors, attendance officers, janitors and all other employees of the board and shall assign to them their positions, transfer them as the needs of the schools require, recommend them for promotion, suspend them for cause and recommend them for dismissal, subject to the provisions of Chapter 24 of this title.

All persons so nominated for teaching or supervising positions shall hold certificates issued by the State Board of Education. (School Code 1927, §§ 224, 229; Code 1940, T. 52, §§ 182, 187.)

### § 16-12-17. Payroll of city superintendent.

The city superintendent of schools shall, at such times and in such manner as directed by the city board of education, under the rules and regulations promulgated by the State Superintendent of Education, prepare his payroll or payrolls for the payment of teachers, employees, bills and other items authorized by the city board of education. No public funds must be paid out by the city treasurer except on an order signed by the chairman of the city board of education, accompanied by a certificate of the city superintendent of schools that the payroll or order is correct, due and unpaid. (School Code 1927, § 233; Code 1940, T. 52, § 191.)

### § 16-12-18. Employment of attendance officers; enforcement of attendance laws.

The city superintendent of schools shall recommend the employment of one or more attendance officers, subject to the rules of the city board of education, and shall see to it that the provisions of law for school attendance are enforced. (School Code 1927, § 236; Code 1940, T. 52, § 193.)

### § 16-12-19. Employment of professional, clerical, etc., assistants.

The city board of education shall, upon the recommendation of the city superintendent of schools, employ such professional, clerical, accounting and statistical assistants as, in the judgment of the board, are necessary. (School Code 1927, § 204; Code 1940, T. 52, § 164.)

## § 16-12-20. Full-time employment of teachers authorized.

Nothing shall be construed as preventing a city board of education from contracting with teachers and other employees for a longer period of time than that actually devoted to teaching or the conduct of the schools while actually in session. But no teacher or employee shall be entitled to receive any payment from public funds unless his time has been employed as required by the contract of employment and unless all current records for which such teacher or employee is responsible shall have been kept with care and accuracy, and no teacher or employee of the board shall be entitled to receive any payment from public funds unless all records and reports required by the State Superintendent of Education or city board of education shall have been properly made and submitted. (School Code 1927, § 239; Code 1940, T. 52, § 196.)

## § 16-12-21. Vacations and leaves of absence.

The city board of education may, under the rules and regulations promulgated from time to time by the State Board of Education, provide for leaves of absence and vacations by the employees of the boards and for the payment from public funds to the employees of the boards for leaves of absence or vacations, or both. The board may provide leaves of absence during the times the schools are not in session for the teachers and employees on full pay when the teacher or employee devotes the leave of absence to instructing in or attending schools for teacher training or in the manner approved by the State Board of Education as beneficial to the educational work of the city and may provide for the payment of any full-time teachers for absences during the time schools are in session where the absence results from sickness or some other unavoidable cause which prevents the teacher from discharging his or her duties. Notwithstanding the foregoing, any teacher not utilizing or being paid for the sick leave accrued in any one year pursuant to regulations of the State Department of Education may accumulate days at the rate of one day per month for the months employed and carry over the unutilized days to the next consecutive year or years of employment for the same school system, or in any other school system in which the educator may later be employed, until he or she accumulates the maximum number of days as provided in subsection (b) of Section 16-1-18.1. Pay for the absences resulting from unavoidable causes other than sickness shall not be allowed for a longer time than one week during any one year. The allowance of such pay shall at all times be in the discretion of the city board of education. (School Code 1927, § 240; Code 1940, T. 52, § 17; Acts 1943, No. 313, p. 300; Acts 1963, 2nd Ex. Sess., No. 89, p. 253, § 1; Acts 1969, No. 1101, p. 2036; Acts 1977, No. 802, p. 1383, § 2; Acts 1982, No. 82-616, p. 1158, § 1; Acts 1988, No. 88-261, p. 402, § 3; Acts 1993, No. 93-714, p. 1399, § 2; Acts 1994, 1st Ex. Sess., No. 94-825, p. 154, § 5.)

**The 1993 amendment,** effective May 20, 1993, substituted the language beginning "leaves of absence" for "the payment from public funds of employees other than teachers of the city board of education who are employed by the year for not over two weeks which said employee may be allowed by said board as a vacation, and to" in the first sentence, and in

[MUSCLE SHOALS BOARD OF EDUCATION]

**Chapter 11 of Title 16 of the Code of Alabama 1975, as amended, comprised of § 16-11-1 through § 16-11-27, inclusive, has as its principal subject CITY BOARDS OF EDUCATION and prescribes the rights, power, authority, duties, responsibilities and obligations of the MUSCLE SHOALS BOARD OF EDUCATION now and at all times relevant to Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed on July 12, 1996 in this civil action.**

Chapter 11 of Title 16 of the Code of Alabama 1975, as amended, comprised of § 16-11-1 through § 16-11-27, inclusive, [CITY BOARDS OF EDUCATION] is reproduced in its entirety in this MEMORANDUM OPINION in the form and format of photocopies of § 16-11-1 through § 16-11-27, inclusive, which appear verbatim on succeeding pages 65, 66, 67, 68, 69, 70, and 71 of this MEMORANDUM OPINION.

## § 16-11-1. "City" defined.

A "city" within the meaning of this title shall include all incorporated municipalities of 5,000 or more inhabitants, according to the last or any succeeding federal census, or according to the last or any succeeding census

## § 16-11-2. Composition; qualifications and compensation of members.

(a) The general administration and supervision of the public schools and educational interest of each city shall be vested in a city board of education, to be composed of five members who shall be residents of the city, and who shall not be members of the city council or commission. In any Class 4 municipality which has adopted a mayor-council form of government pursuant to Chapter 43B (commencing with Section 11-43B-1) of Title 11, the city board of education may be composed of seven members.

(b) The members of the city board of education, who shall, except as hereinafter provided, serve without compensation, shall be chosen solely because of their character and fitness, but no person shall be appointed or elected to this board pursuant to this section who is subject to the authority of the board. In cities having populations of not less than 50,000 nor more than 60,000 according to the most recent federal decennial census, not more than one classroom teacher employed by the board may serve as a board member and also as a classroom teacher.

(c) Each member of the city board in cities having a population of 300,000 or more according to the last or any subsequent federal census shall receive fifty dollars ($50) for each meeting of the board, whether special, regular or executive session, attended by him or her. No member shall receive more than one hundred and fifty dollars ($150) during any one month. This compensation shall be paid from the city school funds in the manner provided for paying out of the city school funds.

(d) Any city or town which has had the general administration and supervision of the public schools and educational interests of the city or town vested in a city board of education for a period of 20 years or more prior to August 15, 1951, may, except as may be provided by law, continue to have general administration and supervision of the public schools and educational interest under a local board of education regardless of any past or future federal census. (School Code 1927, § 191; Code 1940, T. 52, § 151; Acts 1943, No. 206, p. 184; Acts 1951, No. 418, p. 742; Acts 1957, No. 160, p. 209; Acts 1961, No. 1022, p. 1601; Acts 1964, 1st Ex. Sess., No. 250, p. 347; Acts 1977, No. 771, p. 1328; Acts 1994, No. 94-133, p. 172, § 2.)

## § 16-11-3. Election; terms of office; vacancies.

Annually at the regular meetings of the city council or commission in April the council or commission shall elect a member or members of the board of education to succeed those whose term or terms of office expire that year. Members of the city board of education shall assume office at the next meeting of the city board of education following their appointment. The terms of office of members of the city board of education shall be five years, and the term of one member shall expire annually. In the event of a vacancy in the membership of the city board of education by resignation or otherwise, the fact shall be reported to the city council or commission by the board, and the council or commission shall elect a person to fill the vacancy for the unexpired term. (School Code 1927, § 192; Code 1940, T. 52, § 152; Acts 1993, 1st Ex. Sess., No. 93-912, p. 211, § 1.)

### § 16-11-3.1. Board selection procedure in Class 5 municipalities.

The governing body of any Class 5 municipality may, by resolution, provide for the appointment of the city board of education from districts corresponding to the city governing body districts and the manner of appointment, the appointment of one member from the city at-large by the mayor, and the length of terms of the board members. (Acts 1993, No. 93-570, p. 949, § 1.)

**Effective date.** — The act which added this section became effective May 13, 1993.

### § 16-11-4. Office of board.

The office of the city board of education shall be in the principal school building of the respective city, unless otherwise adequately provided for. The city board of education shall provide the city superintendent of schools, his professional and clerical assistants with ample, convenient and comfortable office quarters and with adequate clerical supplies and equipment. (School Code 1927, § 193; Code 1940, T. 52, § 153.)

**Section 16-11-13 provides board with necessary power.** — The board is given the authority necessary to carry out the obligation imposed by this section in § 16-11-13. Smith v. City Bd. of Educ., 272 Ala. 227, 130 So. 2d 29 (1961).

### § 16-11-5. Meetings; officers; rules of procedure; majority vote.

The city board of education shall hold its annual meeting each year at its first regular meeting in May following the election of said board or any member thereof. At this meeting the board shall elect each year one of its members to serve as president and one to serve as vice-president. The rules generally adopted by deliberative bodies for their government shall be observed by city boards of education. No motion or resolution shall be declared adopted without the concurrence of the majority of the whole board. The board shall hold such other meetings as may be provided for in its bylaws. (School Code 1927, § 194; Code 1940, T. 52, § 154.)

**Cited** in Pullen v. Cincinnati Ins. Co., 400 So. 2d 393 (Ala. 1981). **Collateral references.** — 78 C.J.S., Schools & School Districts, § 123.

### § 16-11-6. Designation and duties of treasurer.

The city treasurer shall be custodian of the school funds of the city; but, in its discretion, the city board of education may elect any individual other than the city treasurer to be the custodian of all moneys to which the city board of education is entitled by law, or which may come into its possession, said person so selected to be known and designated as the treasurer of the city board of education. The city treasurer or designated treasurer of the city board of education shall receive and hold all moneys and shall pay out such city school funds only on the written order of the city superintendent of schools, approved by the chairman of the city board of education, and shall keep such records and

### § 16-11-7. Bonds of city superintendent and treasurer.

Before assuming any of the duties of the office, the city superintendent of schools and the city treasurer or designated treasurer of the city board of education must give bond in an amount to be fixed by the State Superintendent of Education in a reputable surety company authorized to do business in Alabama conditioned upon the faithful performance of the duties of his office and upon the accounting and paying over to the proper authority of all moneys coming into his hands. Such bond shall be approved by the State Superintendent of Education. A certified copy of the bonds of the city superintendent of schools and of the city treasurer or designated treasurer of the city board of education shall be placed on file in the office of the Department of Education. No public funds shall be paid to the city treasurer or designated treasurer of the city board of education, prior to the making and approval of the bonds of the city superintendent of schools and city treasurer or designated treasurer of the city board of education and prior to the filing of such bonds in the office of the Department of Education. (School Code 1927, § 197; Acts 1933, Ex. Sess., No. 19, p. 14; Acts 1935, No. 150, p. 192; Code 1940, T. 52, § 157.)

**Cross references.** — As to city superintendents of schools generally, see § 16-12-1 et seq.

### § 16-11-8. Indebtedness where county unit system adopted.

Whenever the control and administration of education matters affecting a municipality having a city board of education is transferred to or for any reason becomes vested in the county board of education, the existing indebtedness created prior to such transfer and the rights to collect the same shall in nowise be impaired. (School Code 1927, § 190; Code 1940, T. 52, § 150.)

### § 16-11-9. Powers generally.

The city board of education is hereby vested with all the powers necessary or proper for the administration and management of the free public schools within such city and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education. (School Code 1927, § 198; Code 1940, T. 52, § 158.)

### § 16-11-9.1. Authority to enter into cooperative agreements, programs, etc.

In addition to all authority previously granted by statute, city boards of education may enter into cooperative agreements, projects and programs with the city council or commission, and may take such other actions as they deem necessary and appropriate for the proper management of the public schools; provided, however, that such agreements, projects, and programs shall not be in conflict with nor inconsistent with any law or policy of the State Board of Education and shall not conflict with the purposes for which the school system

is established. Provided, further, that such authority shall not be used to deny any employee any legal or constitutional rights to which he or she is entitled, nor shall such authority be used in such a way that employees are denied any benefits established and required by law, nor shall such authority be construed as authorizing city boards of education to levy any taxes not otherwise authorized by law. (Acts 1987, No. 87-602, § 1.)

### § 16-11-10. Quadrennial census for city.

The city board of education, subject to the provisions of this title, shall cause to be taken under the direction of the city superintendent of schools a quadrennial school census of the school children in the city between the ages of six and 19 years. The school census shall be taken in July of 1946, and every four years thereafter, and the superintendent of schools, upon the direction at any time of the State Superintendent of Education, shall cause the whole or any part of the school census in the city to be retaken. The city superintendent of schools shall employ, with the approval of the city board of education, a sufficient number of enumerators to take the census during the month of July, or at such other time as the State Superintendent of Education shall cause the whole or any part of the school census in said city to be retaken. The city board of education, upon the recommendation of the city superintendent of schools, shall fix the compensation of the enumerators employed in taking any school census and shall order the same paid out of the city treasury. The report of the enumerators shall be made under oath to the city superintendent of schools not later than the fifth day of August next succeeding the time of the taking of such census, and the data gathered shall be in turn transmitted by the city superintendent of schools to the county superintendent of education not later than the fifteenth day of August thereafter. (School Code 1927, § 199; Code 1940, T. 52, § 159; Acts 1943, No. 313, p. 300.)

### § 16-11-11. School property vested in board.

All property real, personal and mixed now held or hereafter acquired for school purposes shall be held in trust by the city board of education for the use of the public schools of the city. (School Code 1927, § 200; Code 1940, T. 52, § 160.)

### § 16-11-12. Acquisition, maintenance, etc., of property — Generally.

The city board of education shall have the full and exclusive rights within the revenue appropriated for such purposes, or accruing to the use of the public schools, to purchase real estate, furniture, appropriated libraries, fuel and supplies for the use of the schools, and to sell the same, and to make expenditures for the maintenance and repairs of the school grounds, buildings and other property, to establish and build new schools, to superintend the erection thereof, to purchase sites therefor, to make additions, alterations and repairs to the building and other property erected for school uses, and to make necessary and proper notes, contracts and agreements in relation to such matters. All such contracts shall inure to the benefit of the public schools, and any action brought upon them and for the recovery and protection of money and property belonging to and used by the public schools, or for damages, shall be brought by and in the name of the city. (School Code 1927, § 201; Code 1940, T. 52, § 161.)

### § 16-11-13. Acquisition, maintenance, etc., of property — Condemnation.

When lands or any interest therein shall be deemed necessary by the board of education for the site of a schoolhouse, for enlarging a schoolhouse lot or for playgrounds or other public school purposes, and the board of education for any reason shall be unable to contract with the owner or owners for the title thereof, the said board of education may institute condemnation proceedings to acquire such lands or the interest therein. Said condemnation proceedings shall be in all respects conducted and regulated as provided by Chapter 1 of Title 18.

### § 16-11-14. School buses — Purchase.

Whenever, in the opinion of a city board of education, it is necessary in the proper conduct of educational activities to operate a school bus or buses, such board is hereby authorized to purchase such bus or buses. (Acts 1953, No. 885, p. 1191, § 1.)

**Cross references.** — As to transportation of pupils generally, see § 16-27-1 et seq. Cited in In re Opinion of the Justices, 276 Ala. 239, 160 So. 2d 648 (1964). **Collateral references.** — 79 C.J.S., Schools & School Districts, §§ 475, 481.

### § 16-11-15. School buses — Operation; school board members not personally liable.

If such bus or buses are purchased, said city board of education is hereby authorized to expend funds for the operation and maintenance of such bus or buses and to provide for the necessary personnel to operate and maintain the same. The members of such board of education shall not be personally liable in damages for injury to riders or third persons or property resulting from the operation of such bus or buses. (Acts 1953, No. 885, p. 1191, § 2.)

### § 16-11-16. Kindergartens and playgrounds; eligibility for admission to public schools.

(a) The city board of education shall have power to establish and maintain a system of public schools including kindergartens and playgrounds for the benefit of children who are bona fide residents of and living within the corporate limits of such city.

(b) Such children who are six years of age and less than 19 years of age on the date school opens shall be entitled to admission to the elementary, junior and senior high schools.

(c) If a kindergarten is established and maintained, children from five to eight years of age may be admitted on such terms and conditions as the city board of education may prescribe. (School Code 1927, § 202; Code 1940, T. 52, § 162.)

### § 16-11-17. Establishment of salaries; dismissal of employees.

The city board of education shall fix the salaries of all employees and may suspend or dismiss any principal or teacher or supervisor or attendance officer or other regular employee so appointed on the written recommendation of the city superintendent of schools for immorality, misconduct in office, incompetency, willful neglect of duty or when, in the opinion of the board, the best interests of the schools may require, subject to the provisions of Chapter 24 of this title. (School Code 1927, § 205; Code 1940, T. 52, § 165.)

### § 16-11-18. Educational policy for city. Repealed by Acts 1995, No. 95-121, § 1, effective with the commencement of the 1995-96 scholastic year which is July 1, 1995.

## § 16-11-19. Bond issues.

If for any reason the current income of the city board of education is inadequate to provide ample, appropriate and suitable grounds, buildings and equipment for all the needed schools of the city, the city board of education, on the recommendation of the city superintendent of schools, shall petition the city council or commission to call an election for the issuance of bonds on the credit of the city in an amount sufficient to provide ample, appropriate and suitable grounds, buildings and equipment for all the needed schools of the city, subject to the limitations set out in the constitution of the state, and the city council or commission shall call the election at the time requested in said petition. (School Code 1927, § 209; Code 1940, T. 52, § 169.)

**Cited** in Armstrong v. Board of Educ., 430 F. Supp. 595 (N.D. Ala. 1977).     **Collateral references.** — 79 C.J.S., Schools & School Districts, §§ 359, 360.

## § 16-11-20. Grading and standardization of city schools; courses of study.

The city board of education, subject to the provisions of this title, shall grade and standardize all the schools under its jurisdiction, and shall also prescribe courses of study. Printed copies of the courses of study shall be supplied to every teacher and to every interested citizen in said city. (School Code 1927, § 210; Code 1940, T. 52, § 170.)

## § 16-11-21. Forms for reports.

The city board of education, subject to the provisions of this title, shall prescribe, on the recommendation of the city superintendent of schools, forms and blanks on which the superintendent, teachers, supervisors, attendance officers, janitors and other employees shall make such reports as may be required from them. (School Code 1927, § 211; Code 1940, T. 52, § 171.)

## § 16-11-22. Reports of city board to State Board of Education; audit of accounts.

The city board of education shall make all reports required by the State Board of Education at such time, and upon such items and in such form, and on such blanks as may be prescribed by the State Board of Education. The business and financial transactions of the city board of education and the records and accounts of its treasurer shall be kept in a manner approved by the State Superintendent of Education and shall be audited as early as possible after July first of each year, and may be published. (School Code 1927, § 214; Code 1940, T. 52, § 172.)

## § 16-11-23. Libraries and special schools established and maintained.

The city board of education shall have the right to establish and maintain, or aid in establishing and maintaining, public libraries, either separately or in connection with the public schools, and also special schools for backward, defective, truant or incorrigible children, day or night schools for adult illiterates and for the Americanization of foreigners and part-time continuation classes. (School Code 1927, § 215; Code 1940, T. 52, § 173.)

### § 16-11-24. Annual report published.

The city board of education shall publish annually in the month of October in a newspaper published in said city, if there is a newspaper published in said city, a full and complete statement of the receipts by source and disbursements by function of the city for the 12 months' period ending September 30, in such form as is required by the State Superintendent of Education at the same time it forwards said statement to the State Superintendent of Education. The city board of education shall also publish annually in a newspaper published in said city, if there is a newspaper published in said city, in the month of October, a statement of the outstanding indebtedness of the board of education on last September 30, which statement must show the schedule by years for retiring said indebtedness and shall separate funded indebtedness from unfunded indebtedness, and the statement shall show the resources available to pay such unfunded indebtedness. The city board of education may also cause to be prepared and published annually in sufficient quantities for distribution among the citizens of the county a report covering the condition, current accomplishments and needs for the improvement of the schools. The refusal or negligent failure of any member of the city board of education to comply with the provisions of this section shall constitute a misdemeanor, and the State Superintendent of Education shall withhold the payment of public school funds until the provisions of this section have been complied with. (School Code 1927, § 216; Code 1940, T. 52, § 174; Acts 1943, No. 313, p. 300; Acts 1953, No. 129, p. 177.)

### § 16-11-25. Allocation of revenue from licenses and taxes.

Where by any provisions of law any certain or definite percentage of the revenue of any city or town from licenses or taxes, either or both, is required to be used for the maintenance of its public schools, then such provisions shall be unaffected by this title and shall be and remain in full force and effect. (School Code 1927, § 217; Acts 1932, Ex. Sess., No. 144, p. 166; Code 1940, T. 52, § 175.)

Cited in Carson v. Rains, 237 Ala. 534, 187 So. 707 (1939).

### § 16-11-26. Incidental fees in city elementary schools.

No fees of any kind shall be collected from children attending any of the first six grades of the city schools during the school term supported by public taxation. (School Code 1927, § 218; Acts 1935, No. 507, p. 1090; Code 1940, T. 52, § 176.)

### § 16-11-27. Boards of education of certain cities may insure school buildings, property, etc., in fund.

Any city board of education of a city whose population does not exceed 60,000 according to the most recent federal census may insure against loss by fire or tornado all school buildings and property, equipment, furniture or supplies belonging to such buildings or stored therein which are used or held in trust by such board for school purposes in the State Insurance Fund under the same terms and upon the same conditions as properties of county school systems are insured. (Acts 1947, No. 672, p. 514.)

**STATUS OF PLAINTIFF PATRICIA HAWKINS AS A LONGTIME, FULLY TENURED TEACHER IN THE MUSCLE SHOALS CITY SCHOOL SYSTEM UNDER ALABAMA PUBLIC SCHOOL LAW IS AN IMPORTANT, RELEVANT, MATERIAL FACT IN THIS SUMMARY JUDGMENT PROCEEDING SUBSTANTIALLY FAVORING DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT**

Chapter 24 of Title 16, Code of Alabama 1975, as amended, comprised of § 16-24-1 through § 16-24-38, is entitled "TENURE OF EMPLOYMENT OF TEACHERS" and is commonly known as the "TEACHER TENURE ACT." Alabama's teacher tenure law evidences a clear legislative intent that it applies to all teachers employed in the public school systems of the State of Alabama who have achieved CONTINUING SERVICE STATUS as prescribed by § 16-24-2, Code of Alabama 1975, as amended, which provides:

## § 16-24-1.
### ["Teacher" defined.]

The term "teacher," s employed in this chapter, is deemed to mean and include all persons regularly certified by the teacher certificating authority of the State of Alabama who may be employed as instructors, principals or supervisors in the public elementary and high schools of the State of Alabama. . .

## § 16-24-2.
### [Criteria for continuing service status for teachers, principals and supervisors; list of persons recommended for continuing status;]

(a) Any teacher in the public schools who shall meet the following requirements shall attain continuing service status: Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive school years and shall thereafter be reemployed in such county or city school system the succeeding school year.

(b) An instructor who has attained continuing service status and who is promoted to principal or supervisor shall serve for three consecutive school years

72

as a principal or supervisor before attaining continuing service status as a principal or supervisor. Such promotion shall in no way jeopardize the continuing service status of the teacher as an instructor; and, should the promoted instructor not be retained as principal or supervisor, his salary would be reduced to the salary paid instructors in accordance with the prevailing salary schedule in the county or city school system.

(c)   The superintendent shall, by the end of each school term, submit to the employing board a list of teachers recommended for continuing service status.   A failure on the part of the superintendent to make such certification shall not in any way prejudice the continuing service status of the teacher.

(d)   Omitted.

## § 16-24-3.
### [Contract of employment effective until superseded or canceled.]

The contract of employment of any teacher who shall attain continuing service status shall remain in full force and effect unless superseded by a new contract signed by both parties, or canceled as provided in § 16-4-9 or § 16-24-10; provided, that the Legislature or, in the absence of legislation, the employing board of education may provide for the retirement of teachers at certain ages.

## § 16-24-4.
### [Change of compensation for succeeding year.]

The salary or compensation of any teacher on continuing service status may be changed for any succeeding year to accord with a general salary schedule adopted by the employment board of education; provided, that no salary schedule shall operate to compensate teachers in less sums than the sums contained in a minimum salary schedule, which may be adopted by the State Board of Education of Alabama for teachers in the public schools of the state.

## § 16-24-5.
### [Transfer of teacher -- Authorized; notice; conditions]

Any teacher on continuing service status, upon the recommendation of the superintendent and the approval of the employing board of education, may be transferred for any succeeding year from one position, school or grade to another by being given written notice of such intention to transfer by the employing

73

board; except that such transfer shall be without loss of status or violation of contract, and such transfer may not be for political or personal reasons.

### § 16-24-6.
### [Transfer of teacher -- Contesting; hearing.]

Omitted.

### § 16-24-7.
### [Transfer of teacher -- Appeal.]

Omitted.

### § 16-24-8.
### [Cancellation of contracts -- Grounds.]

Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons.

### § 16-24-9.
### [cancellation of contracts -- Procedure; hearings.]

§ 16-24-9, Code of Alabama 1975, as amended, is reproduced in the form and format of pp. 346 and 347 of chapter 24 [Tenure of Employment of Teachers] on which § 16-24-9 appears verbatim. Pages 346 and 347 above-referenced appear as succeeding pp. 76 and 77 of this MEMORANDUM OPINION.

whether tenure status was ever gained. A case in which a tenured teacher's contract has been cancelled will naturally carry with it a contention that tenure status has been lost by virtue of the cancellation, but in such a case, an administrative remedy certainly exists for the teacher. Alabama Ass'n of School Bds. v. Walker, 492 So. 2d 1013 (Ala. 1986).

**And must be followed.** — If it is uncontradicted that tenure status was originally gained, and the teacher's contract was thereafter cancelled, one disputing that cancellation must follow the administrative remedies set forth by the statutory scheme of the tenure act. Alabama Ass'n of School Bds. v. Walker, 492 So. 2d 1013 (Ala. 1986).

## § 16-24-9. Cancellation of contracts — Procedure; hearings.

An employment contract with a teacher on continuing service status may be cancelled only in the following manner:

The employing board of education shall give notice in writing to the teacher stating in detail the reasons for the proposed cancellation and naming the exact time and place at which the teacher may appear before the board to answer said notice, which date shall not be less than 20 nor more than 30 days after the service of such notice to the teacher by United States registered or certified mail with postage prepaid thereon to said teacher's last known address. Such notice shall also inform the teacher that in order to contest said cancellation the teacher must file with the board, at least five days prior to the date the matter is set for hearing, notice of an intention to contest. Nothing herein provided is intended to prevent the suspension of a teacher pending a hearing on such proposed cancellation and the final determination thereof. No teacher dismissed as the result of such hearing shall receive compensation for the period of such suspension. If the teacher does not file an intention to contest with the board at least five days prior to the date the matter is set for hearing, then the employing board may dismiss the teacher by a majority vote and such dismissal shall be final. At a contested hearing, which shall be public or private at the discretion of the teacher, each party shall have a right to appear with or without counsel and shall have a right to be heard and to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract and shall have a right to cross-examine the adverse witnesses. The board, or its authorized representative, shall have power to administer oaths, take depositions and issue subpoenas to compel the attendance of witnesses and production of papers necessary as evidence in connection with the dispute or claim. If requested, the board shall issue subpoenas for witnesses to testify either in support of the charges or on behalf of the teacher, and such witnesses shall be entitled to receive the same mileage and per diem as witnesses called in civil cases in the circuit court of the county where the hearing is held, the same to be paid out of school funds; provided, that the board shall not be accountable for the witness fees of more than 10 of the witnesses subpoenaed by the teacher. In case a person refuses to obey such subpoena the board, or its authorized representative, may invoke the aid of the circuit court in order that the testimony or evidence be produced; and, upon proper showing, such court shall issue a subpoena or order requiring such person to appear before the board or its representative and produce evidence and give testimony relating to the matter at issue; a person failing to obey the court's subpoena or order shall be

punishable by the court as for contempt. It shall be the duty of said board to employ a competent stenographer to keep and transcribe a record of the proceedings at such hearing. After each party has presented its case at said hearing, the employing board of education may determine the question of the cancellation of the contract by a majority vote, or it may defer action regarding the decision for a period not to exceed five days. Its action and vote, whether taken immediately following the hearing or within five days thereafter, shall be evidenced by the minute proceedings of the board and shall be only after full compliance with this section. (Acts 1939, No. 499, p. 759; Code 1940, T. 52, § 359; Acts 1951, No. 690, p. 1191; Acts 1953, No. 773, p. 1040.)

**PLAINTIFF'S PLEADING FACTS NO. 18, NO. 19 AND NO. 20 OF PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED JULY 12, 1996 AS AN AMENDMENT TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT SYLVIA COLEMAN'S AFFIDAVIT RESPONSE THERETO**

Paragraphs 18, 19 and 20 of Plaintiff's Stipulation of Pleading Facts offered in its entirety by Plaintiff as an amendment of her FIRST AMENDED COMPLAINT on July 12, 1996 read as follows:

18.      Plaintiff Patricia Hawkins, after being placed in a position under the supervision of Defendant Sylvia Coleman was moved to an office location that was distant from the administrative offices and further away than the offices of non-black employees under the supervision of Defendant Sylvia Coleman.

19.      The office where Plaintiff Patricia Hawkins was moved to did not have a rest room or water fountain.

20.      Non-black employees under the supervision of Ms. Coleman are not without direct access to both a rest room and a water fountain.[15]

## [AFFIDAVIT RESPONSE BY DEFENDANT SYLVIA COLEMAN]

Affidavit Response of Defendant Sylvia Coleman to Plaintiff's Pleading Facts No. 18, No. 19 and No. 20 Introduced In Support Of Summary Judgment By Defendants as Exhibit No. 33:

18, 19, 20. Patricia Hawkins was under my supervision during February, 1992 when I was requested by Dr. Martha Livingston, Superintendent of the Muscle Shoals Board of Education to move Mrs. Hawkins to a different location. I complied with the Superintendent's request and moved Mrs. Hawkins to her present location

---

[15] Plaintiff in ¶¶ 18, 19 and 20 of her Stipulation of Pleading Facts by inference is here seeking to assert against the individual Defendant Sylvia Coleman, her white female supervisor, purported practiced racially discriminatory practices against her Afro-American citizenship and person. However, if, in fact, the matters and things alleged in ¶¶ 18, 19 and 20 of Plaintiff's Pleading Facts occurred, Plaintiff is here complaining about matters and things which fall squarely within the duties and responsibilities and with the rights, powers and authority of the Muscle Shoals City Superintendent of Schools whom Plaintiff elected not to sue in this civil action. See Affidavit Response of Defendant Sylvia Coleman to Plaintiff's Pleading Facts No. 18, 29 and 20.

77

located on the Muscle Shoals Center for Technology campus. Prior to 1992, on May 9, 1989, Patricia Hawkins requested Dr. Martha Livingston to move her to another area, that her present location is not further away from the administrative offices to that of non-black employees, and that she also had access to bathroom facilities and a water fountain.

**ANALYSIS OF PLAINTIFF'S PLEADING FACTS ¶21, ¶22, ¶23, ¶24, ¶25, ¶26, ¶27, AND ¶28 [CONTAINED IN PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED JULY 12, 1996 AS AN AMENDMENT TO PLAINTIFF'S FIRST AMENDED COMPLAINT] AND OF DEFENDANT SYLVIA COLEMAN'S AFFIDAVIT RESPONSE THERETO**

### [Plaintiff's "Pleading Facts"]

**¶21:** On August 28, 1992, Plaintiff Patricia Hawkins was not advised by Ms. Coleman that a staff meeting which involved Plaintiff's work group was going to be held. All non-black employees were notified about the meeting by Ms. Coleman.

**¶22:** Beginning in September 1992, Ms. Coleman gave Plaintiff Patricia Hawkins various work assignments that had unrealistic completion dates. Non-black employees under the supervision of Ms. Coleman were not given similar assignments by Ms. Coleman.

**¶23:** During the 1994 school year, Plaintiff Patricia Hawkins complained to Superintendent Dr. Douglas about the assignments being given to her by Ms. Coleman.

**¶24:** During the 1992-1993 school year, Plaintiff Patricia Hawkins was not provided by Ms. Coleman with time for a lunch break and a planning period. Non-black employees under the supervision of Ms. Coleman were provided lunch breaks and planning periods.

**¶25:** Beginning on September 21, 1992, Ms. Coleman advised other school employees not to visit Plaintiff Patricia Hawkins' office. No similar directive was made by Ms. Coleman with respect to visiting the offices of staff members who were non-blacks.

**¶26:** On September 30, 1993, Ms. Coleman falsely accused Plaintiff Patricia Hawkins of not completing a work assignment. During this episode Ms. Coleman "got in Plaintiff's face" and used rude and insulting language toward Plaintiff. Ms. Coleman has not engaged in similar acts with non-black employees.

**¶27:** On October 1, 1992, Ms. Coleman made false criticisms of Plaintiff Patricia Hawkins' work in a general staff meeting. Ms. Coleman has not engaged in similar public criticisms of non-black employees.

**¶28:** On November 3, 1992, Ms. Coleman sent a letter to the State of Alabama Department of Education which falsely indicated that Plaintiff Patricia Hawkins was not doing her job. No similar criticisms were made of non-black employees.

## [Defendant Sylvia Coleman's Affidavit Response]

**¶21:** I have no personal knowledge of a staff meeting which involved Patricia Hawkins' work group being held on August 28, 1992.

**¶22:** On September 18, 1992, I instructed Patricia Hawkins to provide previously requested information (July 28, 1992). This assignment was not completed until November, 1992. The time frame for completion of this assignment is realistic. Non-black employees (teachers) under my supervision cannot provide counseling information (similar assignment).

**¶23:** I have personal knowledge that Patricia Hawkins complained to Dr. Jim Douglas, Superintendent, about her assignments during the 1994 school year.

**¶24:** During the 1992-93 school year Patricia Hawkins was provided time for a lunch break. The State Department of Education does not require a specific planning time be allotted for counselors during the school day.

**¶25:** Beginning on September 21, 1992, I did not advise school employees not to visit Patricia Hawkins' office.

**¶26:** I have no personal knowledge of the alleged incident on September 30, 1993. On September 30, 1992, I held an informal meeting with Patricia Hawkins regarding a work assignment. I did not "get in her face" or use rude and insulting language.

**¶27:** I did not make false criticisms of Patricia Hawkins' work in a faculty meeting on October 1, 1992.

**¶28:** My letter dated November 3, 1992, to Dr. Ann Wilson, State Department of Education apologizes for not meeting the State Department of Education's deadline for State Initial Enrollment information.

COURT COMMENT:

This Court is of the considered opinion and now holds that not one of the purported incidents alleged in ¶¶ 21-28, inclusive of Plaintiff's "Pleading Facts" alleged in her STIPULATION OF PLEADING FACTS filed on July 12, 1996 as an amendment of her FIRST AMENDED COMPLAINT, even if true, **rise to the level of a racially discriminatory act or a racially discriminatory employment practice by the individual Defendant Sylvia Coleman in her capacity as the VOCATIONAL DIRECTOR for the MUSCLE SHOALS CENTER for TECHNOLOGY**, a teaching facility of the Muscle Shoals City School System [to which the Plaintiff Patricia Coleman was assigned either as a counselor

or as a tenured teacher at all times relevant to Plaintiff's complaints referenced in her Pleading Facts No. 21-28, inclusive] or in her capacity as the SUPERVISOR of Patricia Hawkins.

And insofar as the "pleading fact" designated by Plaintiff in her Stipulation of Pleading Facts as "¶ 23" is concerned, this purported pleading fact references a purported complaint made by the Plaintiff Afro-American-fully-tenured-teacher in the Muscle Shoals City School System duly assigned by the Muscle Shoals Superintendent of Schools to the Muscle Shoals Center for Technology [undoubtedly at her request] that "at sometime during the 1994 school year" she complained to the Muscle Shoals Superintendent of Education [Dr. Jim Douglas] "about the assignments being given to her by Ms. Coleman" **without making any effort or attempt to show or explain why such assignments by Ms. Coleman to her were unfair or were racially discriminatory or in some way constituted a racial discriminatory employment practice against her Afro-American person and citizenship by Ms. Coleman, a white female who undeniably was then Ms. Hawkins' as the Vocational Director at the Center for Technology and her Supervisor.**

Plaintiff's "Pleading Fact" No. 24 constitutes nothing more than Plaintiff's abuse of her pleading privilege as a civil party litigant in this United States District Court. Plaintiff, for instance, "insinuates" but does not factually "allege" that Defendant Sylvia Coleman's "failure" to provide her with time for a lunch break and a planning period continued for a full school year. Interestingly enough, Plaintiff makes no attempt to identify in her

Pleading Fact No. 24  the "non black" employees under Ms. Coleman's supervision who were "provided" lunch breaks and planning periods. **It is indeed a sad state of pleading practice when black employees are properly called "Afro American" while white employees at the same work place are called "non-blacks."**

Ms.    Sylvia    Coleman's    Affidavit    filed    in    response    to Plaintiff's Stipulation of Pleading Facts in this summary judgment proceeding answering Plaintiff's Pleading Fact No. 24 alleges:

"24. During the 1992-93 school year Patricia Hawkins was provided time for a lunch break. The State Department of Education does not require a specific planning time be allotted for counselors during the school day."

*This    Court    expressly    declines    to    treat    and    consider Plaintiff's Pleading Fact No. 24 as being fact supportive of either Plaintiff's Count I, or of Count II or of Count III of her First Amended Complaint, as last amended.   Plaintiff's Pleading Fact No. 24 most certainly does not create a genuine issue of material fact with respect to Plaintiff's claims of racial discrimination and/or racially    discriminatory    practices    against    this    individual Defendant.*

## [Plaintiff's Fact Paragraphs 25, 26, 27 and 28 of her Stipulation of Pleading Facts]

As this section is being drafted, this Senior United States District Judge is literally shaking his head in disbelief with respect to these particular **"Pleading Facts"** which demeans federal pleading to be so characterized.  Paragraphs 25, 26, 27 and 28 are each violative of Rule 8(a)2 and Rule 10(b), Fed.R.Civ.P.  Not one of these paragraphs meaningfully apprises this individual Defendant

of what she is called upon to defend against.   This is indeed "shotgun" pleading at its very worst.

> **COURT ANALYSIS OF PLAINTIFF'S PLEADING FACT NO. 29 OF PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED ON JULY 12, 1996 AS AMENDED TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND OF DEFENDANT SYLVIA COLEMAN'S AFFIDAVIT RESPONSE THERETO**

**¶29:**   In December 1992, Ms. Coleman recommended that Plaintiff Patricia Hawkins' contract with the Muscle Shoals Board be terminated.  Ms. Coleman has made no such recommendations for non-black employees.

## Ms. Coleman's Response To ¶29

**¶29:**   In my letter dated December 4, 1992, to Dr. Martha Livingston, Superintendent, I recommended the dismissal of Patricia Hawkins based on insubordination, neglect of duty, unprofessional conduct, and an assessment of Mrs. Hawkins' performance as Counselor for the Muscle Shoals Center for Technology, not on the basis of her race.

COURT COMMENT:

Since Ms. Coleman admitted in her Affidavit response that as Vocational Director of the Muscle Shoals Center for Technology and as Ms. Patricia Hawkins' supervisor she recommended by her letter dated December 4, 1992, to the Muscle Shoals City Superintendent of City Schools [Dr. Martha Livingston] the dismissal of Patricia Hawkins based on **insubordination, unprofessional conduct** and an assessment of Ms. Hawkins' performance as COUNSELOR for the Muscle Shoals Center for Technology, but not on the basis of her race, this United States District Court is duty bound to here consider and analyze whatever other material facts appear in the summary judgment evidentiary record which have a relevant bearing on the materiality of Plaintiff's Pleading Fact ¶ 29 as a purported charge by Plaintiff against the individual Defendant of her commission of

82

a racially discriminatory act or practice against this Afro-American female Plaintiff-teacher in the Muscle Shoals City School System prohibited by federal law. And this federal district court is also duty bound to here recognize and consider what relevant, material facts meaningfully significant to Plaintiff's charge do not appear in this summary judgment evidentiary record.

In the first place, it is important and significant and meaningful to note that applicable federal law does not prohibit a teacher supervisor in the Muscle Shoals City School System from recommending to the Muscle Shoals City Superintendent of Schools the termination of a teacher-employee under his or her official supervision *for cause* even if the teacher-employee in question happens to be an Afro-American citizen. Thus, if the individual Defendant Sylvia Coleman did in fact in her December 4, 1992, letter to the then Muscle Shoals City Superintendent of Schools [Dr. Martha Livingston] recommend the termination of Plaintiff Patricia Coleman predicated on insubordination, neglect of duty, unprofessional conduct and a negative assessment of Ms. Hawkins' performance as a Counselor for the Muscle Shoals Center for Technology and in good faith then believed in the legitimacy of her charges against Ms. Hawkins, the individual Defendant committed no violation of any applicable federal law. Moreover, the fact that Plaintiff Patricia Hawkins at the time of her awareness of Ms. Coleman's recommendation to the City Superintendent of Schools and of Ms. Coleman's assigned reasons for her recommendation that Ms. Hawkins' employment be terminated was of the opinion that Ms.

Coleman's assigned reasons for her recommendation were unwarranted and were in actuality the product of Ms. Coleman's racial hostility against her because she was an Afro-American does not in this case adequately prove Ms. Hawkins to be correct nor in and of itself create or raise a genuine issue of material fact which requires this Court's denial of Defendants' joint Motion For Summary Judgment.

Since there is no factual proof in the summary judgment evidentiary submissions made by Plaintiff Patricia Hawkins in opposition to Defendants' Motion For Summary Judgment supportive of Plaintiff's claim that the individual Defendant Sylvia Coleman in recommending to the Muscle Shoals Superintendent of Education [Dr. Martha Livingston] on December 4, 1992 that Plaintiff be dismissed from her employment as a teacher in the Muscle Shoals City School System was motivated and prompted by her racial prejudice against Patricia Hawkins because she was and is an Afro-America citizen, this federal district court expressly declines to treat and consider Plaintiff's Pleading Fact No. 29 of her STIPULATION OF PLEADING FACTS as being supportive of either Plaintiff's Count I, of her Count II or of her Count III of her First Amended Complaint, as last amended. Applicable Eleventh Circuit law simply does not permit a federal district court in this Circuit to treat and consider a pleading fact to be proven either in a contested Rule 56 summary judgment proceeding or at the trial of the case by the mere pleading allegation of that fact in Plaintiff's Complaint.

84

**PLAINTIFF'S "PLEADING FACT" NO. 30 IN PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED ON JULY 12, 1996 AS AN AMENDMENT OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

### [Pleading Fact No. 30]

¶30:     On or about December 14, 1992, Plaintiff Patricia Hawkins applied for an administrative position which became open in the Muscle Shoals School System. Plaintiff Patricia Hawkins was not granted an interview for the position. A non-black person was selected for the position. Plaintiff Patricia Hawkins possessed all of the qualifications for the position and was equally qualified as the non-black person who was selected.

COURT COMMENT:

Plaintiff's Pleading Fact No. 30 in Plaintiff's Stipulation of Pleading Facts filed July 12, 1996 by Plaintiff as an amendment to her FIRST AMENDED COMPLAINT is found in ¶10, sub-paragraphs "m" and "n" [with more abbreviated word structure] in the FACTUAL ALLEGATIONS section of Plaintiff's FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES filed herein on May 15, 1995. Sub-paragraphs "m" and "n" respectively read as follows:

"(m.):   In December 1992, my supervisor recommended termination of my contract."

"(n.):   On or about 12-14-92 I applied for an administrative position which had become open. I was not even interviewed for the position."

On December 15, 1995, about seven months after Plaintiff had filed in this case her First Amended Complaint For Civil Damages [on May 15, 1995], the deposition of Plaintiff Patricia Hawkins was taken by the Defendants in this case by and through their counsel of record, Attorney Ken Hewlett, at his law offices in Tuscumbia, Alabama. Counsel of record for Plaintiff, Attorney John Benn, was present in this deposition proceeding representing his client, Patricia Hawkins throughout. The transcript of this December 15,

85

1995 deposition of Patricia Hawkins was duly later submitted in evidence by Defendants, along with other depositions of Patricia Hawkins taken by Defendants in this case, in support of Defendant's Rule 56 Motion For Summary Judgment.

Plaintiff's PLEADING FACT NO. 30 hereinabove set out verbatim *was blown out of the water* by certain under oath deposition testimony of Plaintiff Patricia Hawkins given by her in her December 12, 1995 DEPOSITION [taken by Defendants in this case] with respect to ¶10 of her FACTUAL ALLEGATIONS contained in her original FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES, sub-paragraphs "m" and "n" thereof, hereinabove set out verbatim, which obviously served as a pleading predicate for counsel of record for Plaintiff [Attorney John Benn] when Mr. Benn was drafting Pleading Fact No. 30 of Plaintiff's STIPULATION OF PLEADING FACTS filed on July 12, 1996 as an amendment of Plaintiff's FIRST AMENDED COMPLAINT which is here repeated for easy reference as well as for emphasis:

## PLEADING FACT NO. 30

¶30:   On or about December 14, 1992, Plaintiff Patricia Hawkins applied for an administrative position which became open in the Muscle Shoals School System. Plaintiff Patricia Hawkins was not granted an interview for the position. A non-black person was selected for the position. Plaintiff Patricia Hawkins possessed all of the qualifications for the position and was equally qualified as the non-black person who was selected.

Referring once again to Plaintiff Patricia Hawkins' December 12, 1995 DEPOSITION taken by Defendants in this case at p. 486, Lines 15-18, inclusive, Plaintiff Patricia Hawkins under oath testified: "I did not apply for that position," quite clearly and obviously referring to her FACT PARAGRAPH NO. 30 in her STIPULATION

OF PLEADING FACTS filed by her in this case on July 12, 1996 as an amendment of her FIRST AMENDED COMPLAINT and to Pleading Fact No. 10, sub-paragraphs (m) and (n) thereof, of her FACTUAL ALLEGATIONS in her original FIRST AMENDED COMPLAINT filed by her on May 15, 1995, both of which essentially alleged that on or about December 14, 1992 she applied for an administrative position which became open in the Muscle Shoals City School System; that she was not granted an interview for the position; that a non-black was selected for the position; and that she, Patricia Hawkins, possessed all of the qualifications for the position and was equally qualified as the non-black person who was selected. Moreover, Plaintiff Patricia Hawkins' deposition testimony given under oath seeking to explain how this false Pleading Fact No. 10 [sub-paragraphs (m) and (n) thereof] became included in Plaintiff's Factual Allegations of her original FIRST AMENDED COMPLAINT and then again were amazingly and falsely reasserted as Plaintiff's Fact Allegation No. 30 of Plaintiff's Stipulation of Pleading Facts filed on July 12, 1996, about six [6] months after Plaintiff had admitted under oath in her December 15, 1995 Deposition taken by Defendants that she did not apply for the administrative position which was the subject of both her Fact Paragraph No. 10 [sub-paragraphs (m) and (n) and her Fact Paragraph No. 30. Finally, the Court notes that both Plaintiff Patricia Hawkins and her counsel of record, Attorney John Benn, signed their respective signatures to Plaintiff's STIPULATION OF PLEADING FACTS when that pleading document was filed in this Court on July 12, 1996 as an amendment

87

to Plaintiff's FIRST AMENDED COMPLAINT.

> **PLAINTIFF'S PLEADING FACTS NO. 31 THROUGH 50, INCLUSIVE, OF PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED JULY 12, 1996 AS AN AMENDMENT OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

For ease of reference the Court here repeats its presentation

of Plaintiff's Pleading Facts No. 31 through No. 50, inclusive.

¶31:  On or about November 1992, Ms. Coleman initiated action which caused Plaintiff Patricia Hawkins to be singled out for site inspection of school counselors. No non-black counselors or other employees under Ms. Coleman's supervision were singled out for this inspection.

¶32:  During the 1992-93 school year Plaintiff Patricia Hawkins was given a program budget for her position by Ms. Coleman which was significantly less than what had previously been allowed for the non-black employees who held the same position.

¶33:  During the 1993-94 school year Ms. Coleman prohibited Plaintiff Patricia Hawkins from participating in discussions about program budget. No non-black employees were prohibited from participating.

¶34:  During the 1993-94 school year Ms. Coleman did not authorize any "instructional" funding for Plaintiff Patricia Hawkins' position. All non-black employees under Ms. Coleman's supervision were allowed "instructional" funding.

¶35:  During 1994 Ms. Coleman advised teachers with the school system who had information necessary to allow Plaintiff Patricia Hawkins to perform her job, not to supply the needed information to Plaintiff.

¶36:  On or about March 20, 1995, Ms. Coleman convened a meeting of the Scholarship Committee. At that time Plaintiff was the designated Chairperson for this Committee. Ms. Coleman did not inform Plaintiff Patricia Hawkins about the meeting. The Committee considered candidates for local scholarships. Ms. Coleman, in Plaintiff's absence, attempted to keep a minority candidate from being considered for the available scholarships.

¶37:  On or about April 7, 1995, Ms. Coleman attempted to conduct an "observation" of Plaintiff Patricia Hawkins' work. Ms. Coleman failed to follow School Board Policy in conducting this observation.

¶38:  On or about April 12, 1995, Ms. Coleman conducted an "observation" of Plaintiff Patricia Hawkins at a time in which Plaintiff Patricia Hawkins had no students or class. Ms. Coleman had been given opportunities to observe Plaintiff Patricia Hawkins in classroom settings.

¶39:  The "observations" conducted by Ms. Coleman singled out Plaintiff Patricia Hawkins for different treatment. All non-black employees had previously been scheduled for observations from administrators other than Ms. Coleman while Plaintiff Patricia Hawkins was the only employee subject that year to Ms. Coleman's observations.

¶40:  On or about April 18, 1995, Ms. Coleman physically struck Plaintiff Patricia Hawkins.

¶41:   In the summer of 1994 Ms. Coleman engaged in pointing a finger directly at Plaintiff Patricia Hawkins and acted rudely toward Plaintiff when Plaintiff questioned why her required office hours were being changed.

¶42:   On or about August 1994 Ms. Coleman failed to make requested adjustments in my assignments. Ms. Coleman did make adjustments to the assignments of non-black employees.

¶43:   On or about September 2, 1994, Ms. Coleman gave me an assignment to prepare and arrange for the mailing of invitation letters to parents. Although Ms. Coleman had a secretary who could handle such items, this assignment was given to Plaintiff Patricia Hawkins. The entire project had to be completed by Plaintiff Patricia Hawkins in an unreasonable time frame.

¶44:   During the summer of 1994 Plaintiff Patricia Hawkins was denied the opportunity to attend a meeting involving her job position. This meeting involved the position for which Plaintiff Patricia Hawkins is supposed to spend 22% of her time.

¶45:   In August 1994 Ms. Coleman did not allow Plaintiff Patricia Hawkins to attend a special workshop for JTPA school officials. JTPA school officials other than Plaintiff Patricia Hawkins were allowed to attend such workshops.

¶46:   On or about March 5, 1994, Plaintiff Patricia Hawkins learned that Ms. Coleman had instructed members of the Recruitment Committee of the Muscle Shoals School System not to work with Plaintiff Patricia Hawkins on her projects.

¶47:   During the 1994 school year Ms. Coleman failed to discuss with Plaintiff Patricia Hawkins changes in procedures for reporting of grades. The procedures for this activity were within the job authority of Plaintiff Patricia Hawkins. Ms. Coleman implemented a change in procedures with any input or consent of Plaintiff Patricia Hawkins.

¶48:   On or about May 18, 1994, Ms. Coleman distributed minutes of a meeting of the Recruitment Committee. Ms. Coleman did not provide any copy to Plaintiff Patricia Hawkins.

¶49:   On or about August 9, 1994, Ms. Coleman deprived Plaintiff of an opportunity to attend a workshop for counselors. All non-black counselors had been allowed to attend.

¶50:   On or about July 11, 1994, a workshop was held at Shoals Community College for school staff members. Ms. Coleman advised non-black employees of the workshop, but failed to notify Plaintiff Patricia Hawkins.


### ANALYSIS OF PLEADING FACTS NO. 31 THROUGH 50, INCLUSIVE

¶31: This "pleading fact" apparently directed toward Defendant Sylvia Coleman only is a bald conclusion bereft of meaningful fact. Moreover, this Court cannot and does not interpret Pleading Fact No. 31 to be factually supportive of a Title VII claim for relief nor a 42 U.S.C. § 1981 claim for relief nor a 42 U.S.C. § 1983

claim for relief. **It is the holding of this Court that Pleading Fact No. 31 is not supportive in any way of Plaintiff's Count I or of Plaintiff's Count II or of Plaintiff's Count III.**

¶32: It is of course quite possible and in fact reasonably possible that the school funds for the 1992-93 school year required a smaller budget for the position then held by Plaintiff Patricia Hawkins.    Moreover, it is also quite possible and in fact reasonably possible that other circumstances existed during the 1992-93 school year which reasonably dictated a smaller amount of school monies to fund the position then held by Ms. Hawkins.  And it is of course quite possible that Plaintiff's Pleading Fact No. 32 is not true, although the Court is not judging the credibility of Ms. Hawkins at this juncture.  Once again this Court strongly criticizes the use of the words **"non-black employees"** frequently used by this Plaintiff and her counsel of record in Plaintiff's STIPULATION OF PLEADING FACTS.  **It is the holding of this Court that Pleading Fact No. 32 cannot and will not be treated and considered by this Court as supportive of any claims for relief asserted by Plaintiff in her First Amended Complaint, as amended by Plaintiff's Stipulation of Pleading Facts.**

¶33: This Court knows of no federal statute or federal law otherwise which requires the Vocational Director of the Muscle Shoals Center for Technology [Sylvia Coleman] to permit Plaintiff Patricia Hawkins to participate in discussions about program budget during the 1993-94 school year even though "non-black" employees under Ms. Coleman allegedly were not prohibited from participating.

In Defendants' RELEVANT UNDISPUTED MATERIAL FACTS submitted in
support of their joint Rule 56 Motion For Summary Judgment filed
July 17, 1996, at p. 15 the Court finds the following informative
facts about Plaintiff's Pleading Facts No. 32-34, inclusive:

Allegation 32 through 34 of Plaintiff's FACTS insinuate that the Plaintiff was given a
program budget significantly less than her white predecessor. During the 1993-94 school year,
Ms. Coleman prohibited Plaintiff from participating in program budgets and that during the
1993-94 school year, Ms. Coleman did not authorize any instructional funding for Plaintiff's
position. As is usual in each of these allegations, Plaintiff contradicted herself by admitting that
she got more money in her budget than her white predecessor, based on state regulations. (p. 516,
lines 2-6, p. 539, lines 2-19, and p. 557, lines 2-18, of the deposition of Patricia Hawkins.

It is the holding of this Court that Plaintiff's Pleading
Facts 32-34, inclusive, contained in her STIPULATION OF PLEADING
FACTS filed July 12, 1996, as an amendment of Plaintiff's First
Amended Complaint cannot and will not be treated and considered by
this Court as facts pled by Plaintiff in support of her Count I or
Count II or Count III claims for relief.

¶34: This Court has previously ruled adversely to Plaintiff
Patricia Hawkins with respect to her Pleading Fact No. 34.

¶35: Plaintiff's PLEADING FACT NO. 35 cannot and will not be
treated and considered by this Court as being fact supportive of
any of Plaintiff's claims for relief purportedly asserted by her in
Count I, Count II and Count III of her First Amended Complaint, as
amended by her STIPULATION OF PLEADING FACTS.

In Defendants' RELEVANT, UNDISPUTED MATERIAL FACTS jointly
submitted by them on July 17, 1996, in support of their joint Rule
56 Motion For Summary Judgment in the above-entitled civil action
at p. 16 thereof, the following relevant, undisputed, material
facts with respect to Plaintiff's Pleading Fact No. 35 is

91

presented:

>    Allegation 35 of Plaintiff's FACTS states that Defendant Coleman advised teachers who
>    had information necessary to help Mrs. Hawkins to perform her job, not to supply the
>    information. Plaintiff admitted that she was told by her supervisor that she was supposed to do
>    this job, not the teachers. (p. 582, lines 17-21, of the deposition of Patricia Hawkins). Plaintiff
>    finally admitted that contrary to her allegations, Mrs. Coleman even wrote letters to these
>    teachers asking them to cooperate and help her. (p. 587, lines 21-23, p. 588, lines 1-7, of the
>    deposition of Patricia Hawkins).

This Court cannot and will not treat and consider
Plaintiff's Pleading Fact No. 35 as being fact supportive of
Plaintiff's Count I or of Plaintiff's Count II or of Plaintiff's
Count III.

¶36: Typically, Plaintiff uses a "shotgun" pleading technique in
Pleading Fact No. 36 which this Court expressly declines to treat
and consider as being fact supportive of either Count I or of Count
II or of Count III of Plaintiff's First Amended Complaint, as
amended by Plaintiff's STIPULATION OF PLEADING FACTS filed by
Plaintiff on July 12, 1996, as an amendment of and to her FIRST
AMENDED COMPLAINT.

At pp. 16 and 17 of Defendants' RELEVANT, UNDISPUTED MATERIAL
FACTS jointly submitted by Defendants in support of their joint
Rule 56 Motion For Summary Judgment on July 17, 1996, Defendants
present the following relevant, material facts with respect to
Plaintiff's Pleading Fact No. 36:

>    Allegation 36 states that on a certain date, Mrs. Coleman convened a meeting of the
>    scholarship committee, but did not inform the Plaintiff. However, Plaintiff testified at her
>    deposition that she actually attended the meeting (p. 611, lines 9-11, of the deposition of Patricia
>    Hawkins) and that she had no proof that she was not informed of said meeting by Mrs. Coleman
>    (p. 611, lines 12-19, of the deposition of Patricia Hawkins). Plaintiff also alleged in this allegation
>    that Mrs. Coleman in Plaintiff's absence attempted to keep a minority candidate from being
>    considered for a certain scholarship. As in all of these allegations, Plaintiff testified under oath
>    that, in fact, all five of the people that Plaintiff selected for a scholarship, including the minority
>    person, received their scholarship. (p. 640, lines 22-23; p. 641, lines 1-5, of the deposition of
>    Patricia Hawkins).

¶37: Pleading Fact No. 37 is extremely non-informative and replete with impermissible bald conclusions of the pleader which this Court cannot and will not treat and consider as being fact supportive of Count I or of Count II or of Count III of Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed by Plaintiff on July 12, 1996. And this Court so holds.

¶38: Pleading Fact No. 38 alleges nothing and says nothing which is fact supportive of either Count I or of Count II or of Count III in Plaintiff's FIRST AMENDED COMPLAINT, as last amended on July 12, 1996. This Fact No. 38 cannot and will not be considered by this Court as being fact supportive of either Plaintiff's Count I or Count II or of Count III of her First Amended Complaint, as last amended. And this Court so holds.

¶39: Pleading Fact No. 39 is a continuation of Pleading Fact No. 38 and is absolutely worthless as a pleading fact alleged by Plaintiff to be supportive of her Count I or her Count II or of her Count III. This Court expressly declines to treat and consider Pleading Fact No. 38 as supportive of any claim for relief asserted by Plaintiff in her First Amended Complaint, as last amended. And this Court so holds.

¶40: Pleading Fact No. 40 alleges: "On or about April 18, 1995, Ms. Coleman physically struck Plaintiff Patricia Hawkins." The Defendant Sylvia Coleman flatly denies Plaintiff's Pleading Fact No. 40 in her July 17, 1996 AFFIDAVIT on the third page thereof [Defendants' Exhibit No. 33 offered in support of their joint Rule 56 Motion For Summary Judgment: "40. I have never physically

struck Patricia Hawkins"].

The Court here notes that Plaintiff Patricia Hawkins in ¶40 of her STIPULATION OF PLEADING FACTS filed July 12, 1996 [as an amendment to and of her FIRST AMENDED COMPLAINT] does not allege or show if this purported physical striking of her person by Sylvia Coleman occurred during school hours or on the grounds of the Muscle Shoals City School System.

This Court treats and considers Plaintiff's Pleading Fact No. 40 as an isolated, denied purported fact which does not on the basis of the meager facts herein pled by Plaintiff Patricia Hawkins rise to the level of a racially prohibited practice violative of Title VII or of 42 U.S.C. § 1981 or of 42 U.S.C. § 1983 by this female Vocational Director for the Muscle Shoals Center for Technology, Sylvia Coleman, whose day by day enjoyment of her life from Monday through Friday of every work week as a high ranking, supervisory employee in the Muscle Shoals City School System has since August 1989 [the date that Defendant Sylvia Coleman became Plaintiff Patricia Hawkins' immediate supervisor] to the summer of 1996 been substantially and materially lessened by the Monday through Friday presence in the same workplace of this female Afro-American Plaintiff whom this summary judgment evidentiary record clearly depicts as a repetitive, chronic, less than reasonable complainer who obviously thoroughly resents and intensely dislikes her immediate Caucasian supervisor, Sylvia Coleman, and every other school official in the Muscle Shoals City School System who happens to be white and whose official school system duties require regular

94

professional contact with Patricia Hawkins from time to time during
school hours.  **While this Senior United States District Judge
presiding believes that Plaintiff Patricia Hawkins is undoubtedly
a very fine person during week nights, Saturdays and Sundays and
other non-working times, he is constrained to observe that the
summary judgment evidentiary record in this case clearly shows that
during her working hours as a tenured teacher in the Muscle Shoals
City School System when dealing with school superiors she has more
GAUL in her makeup than Julius Caesar ever did when he was Emperor
and is depicted by this court record as an extremely difficult and
stubborn person to work with if you happen to be white and have
higher school system ranking than she does.**

   **PLAINTIFF'S PLEADING FACTS NO. 41-53, INCLUSIVE, IN
   PLAINTIFF'S STIPULATION OF PLEADING FACTS FILED JULY 12,
   1996**

   **[COURT ANALYSIS OF PLAINTIFF'S
   PLEADING FACTS NO. 41-53, INCLUSIVE]**

¶41: This pleading fact is so thoroughly and completely without
merit that it deserves and receives no other court comment than the
one here made.  This Court holds that Pleading Fact No. 41 will not
be treated and considered as being supportive of Plaintiff's Count
I or of Count II or of Count III.

¶42: The Affidavit of Defendant Sylvia J. Coleman submitted by
Defendants in support of Defendants' Rule 56 Motion For Summary
Judgment responds to Plaintiff's Pleading Fact No. 42 as follows:

95

42.    I assigned In-Field Work Assignments during August 1994 to all certified vocational
       personnel.  I did not make "adjustments to the assignments of non-black employees" as
       alleged.

In the considered opinion of this Court Plaintiff's Pleading Fact
No. 42 is legal "nit-picking" in the true sense of that phrase.
Moreover, it does not rise to the legal level or legal dignity of
a pleading fact legally supportive of Count I or of Count II or of
Count III of Plaintiff's FIRST AMENDED COMPLAINT, as last amended.
This Court expressly declines to treat and consider "Plaintiff's
Pleading Fact No. 42" as pleading an alleged violation by Defendant
Sylvia Coleman of Plaintiff Patricia Hawkins' legal rights under
Title VII or under 42 U.S.C. 1981 or under 42 U.S.C. § 1983.  And
this Court so holds.

¶43: Plaintiff's Pleading Fact No. 42 has lesser legal merit than
Pleading Facts No. 41 and 42 above discussed.  While Pleading Fact
No. 43 may properly represent some professional or personal
resentment by Plaintiff Patricia Hawkins as a fully tenured teacher
at being asked by Ms. Coleman to perform a school administrative
task which Ms. Coleman's secretary could have handled, if asked,
this pleading fact cannot possibly be construed as alleging a
racially discriminatory act or practice by Ms. Coleman violative of
Title VII or 42 U.S.C. § 1981 or 42 U.S.C. § 1983.  And this Court
so holds.

¶44: This Court must candidly confess that it feels "put upon" by
Plaintiff Patricia Hawkins and her counsel of record in this case
by being called upon in this summary judgment proceeding to
consider and analyze so many purported "pleading facts" contained

96

in Plaintiff's STIPULATION OF PLEADING FACTS which have absolutely no legal merit as federal court pleading facts which are legally supportive of Plaintiff's Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims for relief against the Defendants in the above-entitled civil action. Most of these purported "pleading facts" in PLEADING FACTS 1-53, inclusive, in Plaintiff's STIPULATION OF PLEADING FACTS are obviously **wholly insufficient to be treated and considered by this federal district court** as legally supportive of either Plaintiff's Count I or of Plaintiff's Count II or of Plaintiff's Count III.  It thus follows that they have been improperly pled by Plaintiff and her counsel of record for the reason, among others, that each of them fails to allege viable facts with such clarity and precision that the Defendants here sued will be able to discern what the Plaintiff is claiming.  The Court repeats that what Plaintiff and her counsel of record have done in drafting and filing Pleading Facts No. 1-53, inclusive, in Plaintiff's STIPULATION OF PLEADING FACTS has to be labeled and characterized has "SHOTGUN PLEADING" which has been condemned by the Eleventh Circuit Court of Appeals in *Anderson v. District Board of Trustees of the Central Florida Community College*, 77 F.3d 364, 365 (11th Cir. 1996).

This Court expressly declines to treat and consider Plaintiff's Pleading Fact No. 44 as alleging relevant, material facts supportive of Plaintiff's Title VII claim or of her 42 U.S.C. § 1981 claim or of her 42 U.S.C. § 1983 claim.  And this Court so

97

holds.[16]

¶45: This purported pleading fact alleges that in August 1994 Ms. Coleman did not allow Plaintiff Patricia Hawkins to attend a special workshop for JTPA school officials and that JTPA school officials other than Plaintiff were allowed to attend such workshop. In ¶45 of her Affidavit dated July 17, 1996, and timely submitted by Defendants in support of Defendants' Motion For Summary Judgment the individual Defendant Sylvia Coleman in ¶45 thereof expressly denies this purported Pleading Fact.

Plaintiff's Pleading Fact No. 45 does not rise to the level of an allegation of racial discrimination or racial misconduct on the part of the Defendant Sylvia Coleman against Plaintiff Patricia Hawkins. Moreover, this Court expressly declines to rule that it does. And this Court so holds.

¶46 and ¶48:

Plaintiff's Pleading Fact No. 46 alleges:

46. On or about March 5, 1994, Plaintiff Patricia Hawkins learned that Ms. Coleman had instructed members of the Recruitment Committee of the Muscle Shoals School System not to work with Plaintiff Patricia Hawkins on her projects.

Plaintiff's Pleading Fact No. 48 alleges:

48. On or about May 18, 1994, Ms. Coleman distributed minutes of a meeting of the Recruitment Committee. Ms. Coleman did not provide any copy to Plaintiff Patricia Hawkins.

Paragraphs 46 and 48 of Defendant Sylvia Coleman's July 17, 1996, Affidavit timely submitted by Defendants in support of their joint Rule 56 Motion For Summary Judgment respectively allege:

[16] It is to be noted that the AFFIDAVIT of Sylvia J. Coleman dated July 17, 1996 submitted in support of the Defendants' Rule 56 Motion For Summary Judgment [¶44 hereof] flatly denies Plaintiff's Pleading Fact No. 44. This does not, however, create a genuine issue of material fact in this summary judgment proceeding.

46 & 48. On or about March 5, 1994, I did not instruct members of the Recruitment Committee of the Muscle Shoals School System not to work with Patricia Hawkins on her projects. On or about May 18, 1994, I provided Patricia Hawkins with minutes of the Recruitment Committee.

Neither Plaintiff's Pleading Facts No. 46 or 48 rise to the level of a factual allegation by this Plaintiff of racial discrimination and/or racial misconduct by the individual Defendant Sylvia Coleman against Plaintiff. For this reason, among others, this Court expressly declines to rule in this case that either one of these Fact paragraphs in Plaintiff's Stipulation of Pleading Facts alleges facts in support of Plaintiff's Count I or of Plaintiff's Count II or of Plaintiff's Count III. And this Court so holds.

¶47: Plaintiff's Pleading Fact No. 47 alleges:

47.     During the 1994 school year Ms. Coleman failed to discuss with Plaintiff Patricia Hawkins changes in procedures for reporting of grades. The procedures for this activity were within the job authority of Plaintiff Patricia Hawkins. Ms. Coleman implemented a change in procedures without any input or consent of Plaintiff Patricia Hawkins.

Paragraph 47 of the July 17, 1996, Affidavit of Sylvia J. Coleman timely submitted by Defendants in support of their joint Rule 56 Motion For Summary Judgment alleges:

47.     During 1994 I provided to the counseling department the changes in procedure for reporting of grades. Procedural changes are not within the job authority of Patricia Hawkins, but, are implemented at the discretion of the vocational director and do not require input or consent from the counselor.

In this Pleading Fact No. 47 neither the Plaintiff Patricia Hawkins nor her counsel of record understand the procedure for reporting of grades in the Muscle Shoals Center for Technology of which the individual Defendant Sylvia J. Coleman is the Vocational Director as well as being Patricia Hawkins immediate Supervisor.

Pleading Fact No. 47 deals with 1994 changes in procedure for

<u>reporting of grades</u>.  The last sentence of ¶47 of Sylvia Coleman's July 17, 1996 SJ Affidavit submitted in support of Defendants' Motion for Summary Judgment explains that procedural changes **are not within the job authority of Patricia Hawkins,** are implemented at the discretion of the vocational director and do not require input or consent from the counselor [Patricia Hawkins].

This Court expressly declines to treat and consider Plaintiff's Pleading Fact No. 47 as being fact supportive of Plaintiff's Count I or of her Count II or of her Count III [each such count being claims for relief asserted by Plaintiff in her First Amended Complaint, as amended by Plaintiff's Stipulation of Pleading Fact.  <u>And this Court so holds</u>.

¶49: Plaintiff's Pleading Fact No. 49 alleges:

> 49.   On or about August 9, 1994, Ms. Coleman deprived Plaintiff of an opportunity to attend a workshop for counselors.  All non-black counselors had been allowed to attend.

Paragraph 49 of Defendant Sylvia Coleman's July 17, 1996, Affidavit timely submitted by Defendants in support of their Rule 56 Motion For Summary Judgment reads:

> 49.   Vocational faculty members were not provided an opportunity to attend the Vocational Summer Conference from August 10-12, 1994.  Patricia Hawkins is a member of the vocational faculty.  I do not supervise any other non-black counselors, so their attendance at workshop is not under my authority.

Since vocational faculty members of the Muscle Shoals Center for Technology [which includes Plaintiff Patricia Hawkins] <u>were</u> <u>not</u> provided an opportunity to attend the Vocational Summer Conference from August 10-12, 1994, it is clear and obvious that Plaintiff's Pleading Fact No. 49 has no merit whatever as a pleading fact supportive of Plaintiff's Count I or Count II or Count III of her

Amended Complaint. The Court here adds that it would not consider Plaintiff's Fact No. 49 to be fact supportive of Plaintiff's Title VII claim for relief or of her 42 U.S.C. § 1981 claim for relief or of her 42 U.S.C. § 1983 claim for relief even if the Defendant Sylvia Coleman had not responded to Plaintiff's Pleading Fact No. 49.

This Court expressly declines to treat and consider Plaintiff's Pleading Fact No. 49 in this summary judgment proceeding as an allegation of meaningful fact supportive of Plaintiff's Count I or of Count II or of Count III of her First Amended Complaint, as last amended by Plaintiff's July 12, 1996 STIPULATION OF PLEADING FACT. And this Court so holds.

¶50: Plaintiff's Pleading Fact No. 50 alleges:

50. On or about July 11, 1994, a workshop was held at Shoals Community College for school staff members. Ms. Coleman advised non-black employees of the workshop, but failed to notify Plaintiff Patricia Hawkins.

Defendant Sylvia Coleman's Affidavit dated July 17, 1996, timely submitted by Defendants in support of their joint Rule 56 Motion For Summary Judgment, ¶50 thereof:

50. I have no personal knowledge of a workshop to be held at Shoals Community College on or about July 11, 1994. I provided information dated July 27, 1994, to Patricia Hawkins regarding the workshop to be held at Shoals Community College on August 8, 1994.

It is the considered opinion and holding of this Court that Plaintiff's Pleading Fact No. 50 in her Stipulation of Pleading Facts filed herein on July 12, 1996, cannot be used and utilized by Plaintiff in this civil action as a pleading fact supportive of Plaintiff's Title VII claim or of her 42 U.S.C. § 1981 claim or of her 42 U.S.C. § 1983 claim for the reason that this Pleading Fact

101

No. 50 <u>does</u> <u>not</u> rise to the level of being fact supportive of either of Plaintiff's three claims for relief above-identified and that Pleading Fact No. 50 fails to meaningfully apprise Defendants of facts which will enable them to discern what this Plaintiff is claiming in this civil lawsuit as violations of by Ms. Coleman of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

¶51 and ¶52:    Plaintiff's Pleading Fact Nos. 51 and 52 allege:

> **51.** Defendants have subjected Plaintiff to discriminatory terms and conditions of employment based upon her race. Defendant has created a racially hostile work place for Plaintiff.
>
> **52.** Defendants have subject Plaintiff to unfair treatment in retaliation for Plaintiff's previous EEOC activity.

Defendant Sylvia Coleman's Affidavit dated July 17, 1996, timely submitted by Defendants in support of their joint Rule 56 Motion For Summary Judgment, ¶¶51 and 52 thereof:

> **51.** I have never subjected Patricia Hawkins to any discriminatory terms or condition of employment based upon her race. Any hostile work place is the fault of Patricia Hawkins because of her constant insubordination to me and neglect of her duties. She will not accept authority from anyone.
>
> **52.** I have never subjected Patricia Hawkins to unfair treatment in retaliation for her previous EEOC activity. I have never been named in any of her previous EEOC activity and would have no reason to retaliate against her.

It is the considered opinion and holding of this Court that Plaintiff's Pleading Facts No. 51 and No. 52 are bald legal conclusions completely bereft of meaningful supportive fact and that such Pleading Facts cannot be and will not be legally considered by this Court as pleading facts supportive of Plaintiff's Count I or of her Count II or of her Count III [all in Plaintiff's Amended Complaint, as last amended on July 12, 1996].

¶53: Plaintiff's Pleading Fact No. 53 alleges:

    **53.** **The wrongful conduct of Sylvia Coleman was engaged in with malice or reckless indifference to Plaintiff's federally protected rights.**

Defendant Sylvia Coleman's Affidavit dated July 17, 1996, timely submitted by Defendants in support of their joint Rule 56 Motion For Summary Judgment, ¶53 thereof:

    **53.** **I have not engaged in any wrongful conduct concerning Patricia Hawkins, nor have any of my actions as her supervisor been malicious or with reckless indifference to her federally protected rights.**

Presumably Plaintiff and her counsel of record have included ¶53 in Plaintiff's STIPULATION OF PLEADING FACTS [although ¶53 does not allege facts, only Plaintiff's legal conclusions] in the belief that the inclusion of this pleading "fact" in Plaintiff's First Amended Complaint, as amended on July 12, 1996, was necessary to enable Plaintiff Patricia Hawkins to recover punitive and compensatory damages of Defendants under 42 U.S.C. § 1981(a) [Civil Rights Act of 1991]. Since this United States District Court has squarely held that Plaintiff Patricia Hawkins has failed to allege a single "pleading fact" out of the fifty-three [53] "pleading facts" pled by her in her July 12, 1996, STIPULATION OF PLEADING FACTS [as an amendment to and of her FIRST AMENDED COMPLAINT], this Court holds that Plaintiff's Pleading Fact No. 53 adds no viability whatsoever to Plaintiff's Count I or to her Count II or to her Count III which are now each baldly pled in Plaintiff's First Amended Complaint without a single supportive, meaningful fact alleged by Plaintiff in support thereof.

**SUCCINCT SUMMARY OF EMPLOYMENT HISTORY OF PLAINTIFF PATRICIA HAWKINS AND OF DEFENDANT SYLVIA COLEMAN IN THE MUSCLE SHOALS CITY SCHOOL SYSTEM AS OF AUGUST 1989 WHEN MS. COLEMAN BECAME PLAINTIFF'S SUPERVISOR**

Plaintiff Patricia Hawkins alleges in ¶5 of her Stipulation of Pleading Facts filed by Plaintiff and her counsel of record, Attorney John R. Benn, that Defendant Sylvia Coleman has been her immediate supervisor since approximately 1988.

Paragraph 2 of the July 17, 1996, AFFIDAVIT of Sylvia J. Coleman submitted by Defendants in support of their Rule 56 Motion For Summary Judgment in this case with respect to all claims for relief asserted by Plaintiff in this civil litigation alleges:

**2.** I am the Vocational Director for the Muscle Shoals Center for Technology and have held this position since August, 1989.

Paragraph 5 of Ms. Coleman's Affidavit hereinabove identified alleges:

**5.** I have been Patricia Hawkins' immediate supervisor since August 1989.

It is a finding of fact of this Court in this summary judgment proceeding that the individual Defendant Sylvia Coleman became the SUPERVISOR of Plaintiff Patricia Hawkins in August 1989 at or about the time Ms. Coleman commenced her employment in the Muscle Shoals City School System as the Vocational Director for the Muscle Shoals Center for Technology in August 1989.

Since Plaintiff Patricia Hawkins was first employed by the Muscle Shoals Board of Education in August 1976, the Court finds that Plaintiff Patricia Hawkins had been employed by the Defendant Muscle Shoals Board of Education in the Muscle Shoals City School System for approximately thirteen [13] years before the individual

Defendant Sylvia Coleman was first employed by the Defendant Muscle Shoals Board of Education in August 1989 as the Vocational Director of the Muscle Shoals Center for Technology and became the Supervisor of Plaintiff Patricia Hawkins who obviously was then a Muscle Shoals Center for Technology teacher-employee.

Since the above-entitled civil action was commenced in this Court by Plaintiff Patricia Hawkins against Defendants Muscle Shoals Board of Education and Sylvia Coleman, individually, on March 2, 1995, the Plaintiff Patricia Hawkins was a 9th-year veteran-tenured teacher in the Muscle Shoals City School System when the Defendant Sylvia Coleman became her Supervisor in August 1989 and is now serving her 21st year of employment in the Muscle Shoals City School System.

**CHARGES OF DISCRIMINATION FILED BY PLAINTIFF PATRICIA HAWKINS WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ["EEOC"], BIRMINGHAM, ALABAMA, AGAINST MUSCLE SHOALS BOARD OF EDUCATION AND ON ONE OCCASION ALSO AGAINST MUSCLE SHOALS CITY SUPERINTENDENT OF SCHOOLS [DR. MARTHA LIVINGSTON] DURING THE FOLLOWING TIME FRAMES: [1] PRIOR TO THE MARCH 2, 1995 COMMENCEMENT OF HER PRESENT CIVIL LAWSUIT AGAINST THE DEFENDANTS MUSCLE SHOALS BOARD OF EDUCATION AND SYLVIA COLEMAN; AND [2] ON ONE OCCASION SUBSEQUENT TO THE MARCH 2, 1995, COMMENCEMENT OF THIS CIVIL LAWSUIT AGAINST THE MUSCLE SHOALS BOARD OF EDUCATION ONLY**

105

**AND**

**EEOC DETERMINATIONS IN EACH INSTANCE ADVERSE TO PLAINTIFF'S PATRICIA HAWKINS AND FAVORABLE TO MUSCLE SHOALS BOARD OF EDUCATION AND FAVORABLE TO OTHER INDIVIDUAL RESPONDENT CHARGED IN THE ONE CHARGING INSTANCE WHERE MORE THAN ONE PARTY WAS NAMED AS AN ALLEGED DISCRIMINATING RESPONDENT BY PATRICIA HAWKINS**

## FIRST EEOC CHARGE FILED BY PATRICIA HAWKINS

EEOC Charge No. 130 90 0050 dated October 2, 1989.

Alleged discriminating parties:

(a) Muscle Shoals City Board of Education;

(b) Dr. Martha Livingston, Muscle Shoals City Superintendent of Education.

Received by EEOC October 4, 1989.

Cause of discrimination allegedly based on **race** and **sex**.

Date most recent on continuing discrimination took place: August 14, 1989

Particulars:

I.     I am a black female.  I have been employed by the Muscle Shoals City School System for 12 consecutive school years. During the 1988-89 school year, I was assigned as JTPA Counselor/Coordinator for the Area Vocational Center.

II.    In July, 1989, the notice of vacancy for the Principal position at Highland Park Elementary School for the 1988-89 school year was posted.  I applied for the position.

III.   In August, 1989, the Superintendent recommended and the members of the Board voted to promote Arthur Andrews, a white male, to the position of principal of Highland Park for the 1989-90 school year.

IV.    I was neither interviewed nor considered for the position.

V.     Upon information and belief, my education and experience are equal to that of Arthur Andrews.

106

VI.   But for my race and color, I would have been recommended and promoted to the position of principal of Highland Park. The school system has a pattern and practice of denying black females administrative positions.

**EEOC Determination of Charge No. 130 90 0050 dated July 31, 1990, adverse to Charging Party and favorable to Respondent Muscle Shoals Board of Education and Respondent Muscle Shoals Superintendent of City Schools.**

**U.S. Equal Employment Opportunity Commission, Washington, D.C. under date of June 13, 1991 issued "DETERMINATION ON REVIEW AND DISMISSAL OF TITLE VII CHARGE" [130 90 0050] reading as follows:**

> The Commission has reviewed the investigation of this charge of employment discrimination and all supplemental information furnished. Based upon this review, we agree with the determination issued by our field office and hereby issue a final determination that the evidence obtained during the investigation goes not establish a violation of the statute. Therefore, the Commission dismisses and terminates its administrative processing of this charge.

Photocopy of EEOC Charge of Discrimination in Charge No. 130 90 0050 signed by Patricia Hawkins and dated October 2, 1989 is included in the APPENDIX hereto and expressly made a part hereof.

Photocopy of EEOC DETERMINATION dated July 21, 1990 in Charge No. 130 90 0050 addressed to Patricia Hawkins, 1020 Hemlock Street, Tuscumbia, Alabama and Muscle Shoals City Schools, P.O. Box 2730, Muscle Shoals, Alabama 35662 is included in the APPENDIX hereto and expressly made a part hereof.

Photocopy of U.S. Equal Opportunity Commission, Washington, D.C., DETERMINATION ON REVIEW AND DISMISSAL OF TITLE VII CHARGE in Charge No. 130 90 0050, Patricia Hawkins - Charging Party, dated June 13, 1991, concurring with EEOC Field Office, Birmingham, Alabama Determination in Charge No. 130 90 0050 and dismissing and terminating its administrative processing of such CHARGE is included in the APPENDIX hereto and expressly made a part hereof.

## SECOND EEOC CHARGE FILED BY PATRICIA HAWKINS

EEOC Charge No. 130 92 1610 dated May 5, 1992.

Alleged discriminating party: Muscle Shoals Board of Education.

Received by EEOC: Date not ascertainable.

Cause of discrimination allegedly based on race and sex.

Date discrimination took place:

     Earliest: March 26, 1992    Latest:  March 26, 1992

### Particulars:

I have been employed by the above named employer since September 1976 as a Teacher/JTPA Coordinator.

During the month of February 1992 and March 1992 the positions of principal and assistant principal were posted.  On March 26, 1992, the positions were filled by white males.  The employer denied me an interview whereby white applicants were afforded an interview for the positions.

I believe the employer discriminated against me by refusing to promote me because of my race black and sex female in violation of Title VII of the Civil Rights Act of 1964, as amended.

**EEOC Determination dated March 5, 1993 adverse to charging Party and favorable to respondent Muscle Shoals Board of Education.**

Photocopy of EEOC Charge No. 130 92 1610 EEOC DETERMINATION dated March 5, 1993, addressed to Patricia Hawkins [address omitted] and Muscle Shoals Board of Education [address omitted] are included in the APPENDIX hereto and expressly made a part hereof.

## THIRD EEOC CHARGE FILED BY PATRICIA HAWKINS

EEOC Charge No. 130 93 1845

Dated:  April 25, 1993

Alleged discriminating party:  Muscle Shoals Board of Education

Received by EEOC:  May 4, 1993

Cause of discrimination allegedly based on **race and retaliation.**

Date discrimination took place:

     Earliest:  March 2, 1993      Latest:   March 2, 1993

Particulars:

On March 2, 1993, I was issued a written notice.   During my employment I have been harassed, disciplined and intimidated for my filing a previous charge.

No reason has been given for these actions.

I believe that I have been discriminated against in retaliation for protesting practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended.

**EEOC Determination dated December 6, 1994 adverse to charging Party and favorable to Repsondent Muscle Shoals Board of Education.**

     Photocopies of EEOC Charge No. 130 93 1845 and EEOC

DETERMINATION dated December 6, 1994 addressed to Patricia Hawkins

and Muscle Shoals Board of Education [address omitted] are included

in the APPENDIX hereto and expressly made a part hereof.


### FOURTH EEOC CHARGE FILED BY PATRICIA HAWKINS SUBSEQUENT TO COMMENCEMENT OF PRESENT CIVIL LAWSUIT

EEOC Charge No. 130 952 572 dated August 12, 1995.

Alleged discriminating parties:  Muscle Shoals Board of Education.

Received by EEOC:    date not ascertainable.

Cause of discrimination alleged based on **race** and **sex.**

Date discrimination took place:

     Earliest: June 22, 1995      Latest: June 22, 1995

Particulars:

I.   On June 22, 1995, I was denied a promotion/transfer to the position of Principal.   I have been employed with the Respondent since 1972.

II.   Jim Douglas, Superintendent, informed me by letter, that I was
      not selected for the vacant position.

III.  I believe that I have been discriminated against because of my
      race, black, in violation of Title VII of the Civil Rights Act
      of 1964, as amended.

      **[Inserted by Charging Party]**
**THE ORIGINAL CHARGE WAS FILED ON JULY 19, 1995.**

**EEOC DETERMINATION OF CHARGE NO. 130 95 2572 dated February 6,
1996, addressed to Patricia Hawkins [address omitted] adverse to
Charging Party and favorable to Muscle Shoals Board of Education.
Notice to Charging Party that EEOC has determined that her charge
is in Category (c)** *[Immediate dismissal when there is sufficient
information from which to conclude that it is not likely that
further investigation will result in a cause finding.]*

Photocopies of EEOC Charge No. 130 95 2572 and EEOC
Determination dated February 6, 1996 addressed to Patricia Hawkins
[address omitted] are included in the APPENDIX hereto and expressly
made a part hereof.

110

ALL OF PLAINTIFF PATRICIA HAWKINS' EEOC CHARGES OF
DISCRIMINATION AGAINST THE DEFENDANT MUSCLE SHOALS BOARD
OF EDUCATION UNDER TITLE VII, 42 U.S.C. § 2000e, et seq.,
CHARGING RACE DISCRIMINATION AND RETALIATION, AND/OR RACE
DISCRIMINATION ALONE AND/OR RACE AND SEX DISCRIMINATION,
TOGETHER WITH ALL EEOC DETERMINATIONS [WHETHER
BIRMINGHAM, ALABAMA EEOC DISTRICT OFFICE OR WASHINGTON,
D.C. EEOC NATIONAL OFFICE] AS TO MERITS OF EACH SUCH
CHARGE OF DISCRIMINATION FILED BY PLAINTIFF PATRICIA
HAWKINS WITH EEOC UNDER TITLE VII OF THE CIVIL RIGHTS ACT
OF 1964, AS AMENDED, ARE EACH ADMISSIBLE INTO EVIDENCE ON
BEHALF OF DEFENDANTS IN THIS RULE 56 SUMMARY JUDGMENT
PROCEEDING.

"The admissibility into evidence of the EEOC's final decision
of "cause" or "no cause," whether labeled a "decision" or
"determination" is usually left to the discretion of the trial
court.    A majority of the district courts, at least in recent
years, has allowed the determination to be received in evidence.
In two circuits, courts have held that the EEOC determination must
be admitted [*Bradshaw v. Zoological Soc'y*, 569 F.2d 1066, 1069 (9th
Cir. 1978); *Smith v. Universal Services, Inc.*, 454 F.2d 154, 158
and 160 (5th Cir. 1972).    The weight to be assigned the
determination is left to the trial court's discretion." EMPLOYMENT
DISCRIMINATION LAW, Second Edition, By Barbara Lindemann Schlei and
Paul Grossman, ch. 26, EEOC Administrative Process, p. 977
(footnotes omitted).

The former Fifth Circuit of Appeals in *Smith v. Universal
Services, Inc.*, 454 F.2d 154, 155-58 (5th Cir. 1972), through a
panel composed of J. Thornberry, J. Morgan and J. Clark[17] in a case

---

[17]Judges Clark and Morgan later became members of the Eleventh Circuit Court of Appeals upon its
creation about 8 or 9 years later.

111

of first impression [neither party was able to cite any district or appellate case directly in point],

held that where the decision of the EEOC in this employment

discrimination case contained findings of fact made from accounts

by different witnesses, subjective comment on credibility of

witnesses and reached conclusion that there was reasonable cause to

believe that the dismissal of the plaintiff-appellant employee

violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, et seq, the EEOC's investigation report and findings of

probable cause should have been admitted into evidence, since to

ignore manpower and resources expended on the investigation and

expertise acquired by Commission's field investigators in area of

discriminatory employment practices would be wasteful and

unnecessary; in such case the probative value of the report would

at least outweigh any possible prejudice to employer.

At p. 156 of 454 F.2d the former Fifth Circuit Court of

Appeals characterized the EEOC Report as follows:

> [2] It is not to be denied that under Title VII, the action of the EEOC is not agency action of a quasi judicial nature which determines the rights of the parties subject only to the possibility that the reviewing courts might conclude that the EEOC's actions are arbitrary, capricious or an abuse of discretion. Instead, the civil litigation at the district court level clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC. *United States v. H.K. Porter Company*, N.D.Ala. 1968, 296 F.Supp. 40; *King v. Georgia Power Co.*, *supra*. It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.

> This is not to say, however, that the report is inadmissible. A trial de novo is not to be considered a trial in a vacuum. To the contrary, the district court is obligated to hear evidence of whatever nature which tends to throw factual light on the controversy and ease its fact-finding burden.

> [3] The Commission's decision contains findings of fact made from accounts by different witnesses, subjective comment on the credibility of these witnesses, and reaches the conclusion that there is reasonable cause to believe that a violation of the Civil Rights Act has occurred. Certainly these are determinations that are to be made by the district court in a de novo proceeding. We think, however, that to ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of

discriminatory employment practices would be wasteful and unnecessary.

The *Smith v. Universal Service, Inc*. court at p. 157 of 454

F.2d supported its decision in these words:

> Universal argues that the report is hearsay evidence and inadmissible for this reason. Plaintiff, admitting its hearsay character, would have us admit the report as a business record pursuant to the Federal Business Records Act, 28 U.S.C.A. § 1732. See *Gillin v. Federal Paper Board Company*, 2 FEP 507, 62 L.C. 6663 (D.Conn.1970). We agree that the investigation report is admissible as an exception to the hearsay rule under the federal statute.

> We think that the EEOC report, consisting of a summary of the charges, a brief review of the facts developed in its investigation, and its finding of probable cause that violations exist, can be found to be analogous to accident reports admissible under the Federal Business Records Act. It is not denied that the report was prepared in the regular course of the Commission's business and in accordance with express statutory authority. 42 U.S.C.A. § 2000e-5(e). the regularity with which such reports are made does not, however, by itself, require admissibility. It must first appear that the reports are required 'for the systematic conduct of the business as a business.' *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

> The report involved in the instant case was prepared by an investigator for the EEOC, pursuant to its statutory mandate, and was not prepared in anticipation of litigation. The Commission is not a party to the litigation and can have no interest therein. The investigator had no personal involvement in the situation. There is no reason to suspect any lack of trustworthiness. All of the requirements for admissibility under Title 28, U.S.C.A., Section 1732 are, therefore, met. The district court erred when it chose to ignore the report for purposes of its factfinding function.

In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit Court of Appeals handed down by the close of business on September 30, 1981). The Eleventh Circuit in *Bonner* also decided that a prior decision of the former Fifth Circuit [panel or en banc] could not be overruled by an Eleventh Circuit panel, but only by the Eleventh Circuit sitting en banc. Thus the holding of *Smith v. Universal Service Inc*., 454 F.2d 154 (5th Cir. 1972), became binding precedent in the Eleventh Circuit Court of Appeals and remains so today for the legal proposition that where an employee or former employee commences suit in federal

113

district court against his employer or former employer alleging violation of his employee or former employee rights under Title VII of the Civil Rights Act of 1964, as amended, <u>after</u> the EEOC has rendered a favorable or unfavorable DETERMINATION respecting the charging party's Charge of Discrimination filed with the EEOC against the respondent employer or former employer the Commission's investigation report and findings of cause or no cause is due to be admitted in evidence by the federal district court at trial since the Eleventh Circuit considers EEOC determinations to be "highly probative" [*Smith*, 454 F.2d at 157], **but the district court is not bound by the order of findings of the EEOC.** Moreover, the district court has the power to thereafter independently determine the merit of each of the employee's or former employee's Title VII claims against his employer or former employer. The only caveat warning to the legal proposition above-enunciated is the one judicially created by the Eleventh Circuit in *Barfield v. Orange County, et al.,* 911 F.2d 644, 649 (11th Cir. 1990) which is:

> We are unwilling to say, as the Ninth Circuit seems to, that there can exist no EEOC determination in which "the sources of information or other circumstances indicate lack of trustworthiness" sufficient to justify exclusion for evidence. Although this circuit considers EEOC determinations to be "highly probative," *Smith,* 454 F.2d at 157, there may be circumstances in which that probative value, although properly considered by a trial judge in a bench trial, nonetheless is outweighed by the danger of creating unfair prejudice in the minds of a jury. See *Johnson,* 734 F.2d at 1308 & n.1 (EEOC determination allowed into evidence in Title VII bench trial, but excluded from jury trial on claim under 42 U.S.C. § 1981). Because the decision whether to admit such reports involves so many variables, we think it best to leave the decision in the sound discretion of the district court. In deciding whether and what parts of EEOC determinations and reports should be admitted, the district court may be guided by such considerations as whether the report contains legal conclusions in addition to its factual content, see *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 450 n. 13, 102 L.Ed.2d 445 (1988); *Hines v. Brandon Steel Decks,* 886 F.2d 299, 302-03 (11th Cir.1989), whether the report raises questions of trustworthiness under Rule 803(8)(C), see *Hines,* 886 F.2d at 303-04; Fed.R.Evid. 803(8)(C) advisory a committee's notes (suggested factors), and whether it presents problems cognizable under Rule 403, see Hines, 885 F.2d at 304.

114

<u>Court Note</u>: The above-quoted language from *Barfield* appears to this federal district court to deviate somewhat from the binding precedent of *Smith v. Universal Service, Inc.*

**HOLDING OF THIS COURT RE THE ADMISSIBILITY OF: [1] EACH TITLE VII CHARGE OF DISCRIMINATION FILED WITH THE EEOC AGAINST THE MUSCLE SHOALS BOARD OF EDUCATION WHICH HAVE BEEN HERETOFORE PRESENTED IN THIS MEMORANDUM OPINION; AND [2] EACH "NO REASONABLE CAUSE DETERMINATION" MADE BY THE EEOC [AND IN TWO IDENTIFIED INSTANCES CONFIRMED BY THE WASHINGTON, D.C. OFFICE OF EEOC] RESPECTING EACH SUCH TITLE VII CHARGE OF DISCRIMINATION MADE BY PLAINTIFF PATRICIA HAWKINS HEREINABOVE AND IN THE APPENDIX HERETO SPECIFICALLY IDENTIFIED.**

It is the holding of this United States District Court under the case authorities previously cited that each of the EEOC documents fully identified in the caption of this section of its MEMORANDUM OPINION [both EEOC <u>Charges of Discrimination</u> and EEOC's responsive "<u>No Reasonable Cause Determinations</u>" made by EEOC with respect to each such Charge of Discrimination], all offered in evidence by the Defendants  Muscle Shoals Board of Education <u>and</u> Sylvia Coleman in this Rule 56 summary judgment proceeding in support of Defendants' Rule 56 MOTION FOR FULL SUMMARY JUDGMENT in their favor and against Plaintiff Patricia Hawkins **are each hereby admitted into evidence on Defendants' behalf** and are each due to be and will be fully and carefully considered by this Court in connection with its finding and determination and holding whether Defendants' Rule 56 Motion For Summary Judgment in this civil litigation is due to be granted or denied.

115

**PLAINTIFF PATRICIA HAWKINS' TITLE VII, 42 U.S.C. § 2000e, et seq, 42 U.S.C. § 1981(a), CLAIM OR CLAIMS FOR RELIEF AGAINST THE NON-EMPLOYER DEFENDANT SYLVIA COLEMAN [INDIVIDUALLY] AND PLAINTIFF PATRICIA HAWKINS' TITLE VII, 42 U.S.C. § 2000e, et seq, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981(a), CLAIM OR CLAIMS FOR RELIEF AGAINST THE NON-EMPLOYER DEFENDANT SYLVIA COLEMAN [INDIVIDUALLY] IN THE ABOVE-ENTITLED CIVIL ACTION ARE EACH LEGALLY INAPPROPRIATE AND CANNOT BE MAINTAINED BY PLAINTIFF PATRICIA HAWKINS IN THIS CIVIL ACTION AGAINST THE NON-EMPLOYER, INDIVIDUAL DEFENDANT SYLVIA COLEMAN WHO IN HER INDIVIDUAL CAPACITY HAS MOVED FOR RULE 56 MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO EACH ABOVE-IDENTIFIED CLAIM FOR RELIEF**

On the basis of the 19 page research Memorandum prepared by and for this Court on the issue of whether a non-employer, individual defendant can be sued and held individually liable in his or her individual capacity under Title VII, 42 U.S.C. § 2000e, et seq, or under Title VII, 42 U.S.C. § 2000e, et seq, in conjunction with or amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), which in the form and format of fully legible photocopies of each research memorandum page is included in the **APPENDIX hereto in proper numerical order and expressly made a part hereof,** this United States District Court for the Northern District of Alabama in the Eleventh Judicial Circuit now holds that a non-employer, individual defendant cannot be sued in federal district court and held individually liable in his or her individual capacity under Title VII, 42 U.S.C. § 2000e, et seq, or under 42 U.S.C. § 1981(a), or under Title VII, 42 U.S.C. § 2000e, et seq, in conjunction with or amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). Given this fact and applicable law which is the law of this case stated in this Memorandum Opinion the Rule 56

MOTION FOR SUMMARY JUDGMENT of the Movant/Defendant Sylvia Coleman filed by her in her individual capacity and directed to each and every claim for relief herein asserted against her, individually, by Plaintiff Patricia Hawkins, whether as a part of Count I or Count II or Count III of Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed July 12, 1996 is due to be **GRANTED** with respect to each claim for relief herein asserted by Plaintiff against Defendant Sylvia Coleman, individually, and predicated on Title VII, 42 U.S.C. § 2000e, et seq, or predicated on the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), as separate, independent federal statutes, and/or predicated upon Title VII, 42 U.S.C. § 2000e, et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), whether alleged in Count I or in Count II or in Count III of Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed July 12, 1996. Moreover, such above-identified claim or claims for relief by Plaintiff against the Defendant Sylvia Coleman, individually are each due to be forthwith and will be **DISMISSED WITH PREJUDICE** by Order of this federal district court duly entered in the above-entitled civil action.

117

SINCE PLAINTIFF PATRICIA HAWKINS HAS NEVER IN FILING A
CHARGE OF DISCRIMINATION MADE BY HER WITH THE EEOC NAMED
OR DESIGNATED THE INDIVIDUAL DEFENDANT SYLVIA COLEMAN AS
A RESPONDENT OR CO-RESPONDENT DIRECTLY OR INDIRECTLY
CHARGED WITH DISCRIMINATION AGAINST HER, PROHIBITED BY
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
PRIOR TO NOVEMBER 21, 1991, 42 U.S.C. § 2000e, et seq, OR
BY TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
PRIOR TO NOVEMBER 21, 1991, 42 U.S.C. § 2000e, et seq,
AND AS FURTHER AMENDED BY THE CIVIL RIGHTS ACT OF 1991
EFFECTIVE NOVEMBER 21, 1991, 42 U.S.C. § 1981a, PLAINTIFF
PATRICIA COLEMAN IS NOW BARRED AND PRECLUDED BY 42 U.S.C.
2000e-5 [ENFORCEMENT PROVISIONS IN RE CHARGE OR CHARGES
OF DISCRIMINATION] FROM PROSECUTING THE ABOVE-ENTITLED
CIVIL ACTION AS AGAINST THE DEFENDANT SYLVIA COLEMAN,
INDIVIDUALLY IN THIS CIVIL SUIT AGAINST DEFENDANTS MUSCLE
SHOALS    BOARD    OF    EDUCATION    AND    SYLVIA    COLEMAN,
INDIVIDUALLY, INSOFAR AS HER TITLE VII AND 42 U.S.C. §
1981a CLAIM OR CLAIMS FOR RELIEF ASSERTED BY HER IN HER
FIRST AMENDED COMPLAINT, AS AMENDED BY HER STIPULATION OF
PLEADING FACTS, FILED JULY 12, 1996, AGAINST DEFENDANT
SYLVIA COLEMAN, INDIVIDUALLY, ARE EACH CONCERNED.

For the reasons hereinabove stated this United States District
Court is of the opinion and holds that the Rule 56 SUMMARY JUDGMENT
filed in this civil action by the Defendant Sylvia Coleman,
individually, and directed to all claims for relief asserted by
Plaintiff Patricia Hawkins against the Defendant Sylvia Coleman,
individually, predicated on Title VII of the Civil Rights Act of
1964, as amended prior to November 21, 1991, 42 U.S.C. § 2000e, et
seq, and on Title VII of the Civil Rights Act of 1964, as amended
prior to November 21, 1991, and as further amended on November 21,
1991 by the Civil Rights Act of 1991 effective November 26, 1991,
42 U.S.C. § 1981a, is due to be and will be forthwith GRANTED by
this Court with respect to all such above-identified claims for
relief.   See *Terrell v. United States Pipe and Foundry Co.*, 644
F.2d 1112, 1122-23 (11th Cir. 1981); and *Hamm v. Members of the*

*Board of Regents of the State of Florida*, 708 F.2d 647, 649-650 (Scope Note 2) (11th cir. 1983), reh'g denied, 715 F.2d 580. All of the EEOC Determinations of "NO CAUSE" clearly show that Defendant Sylvia Coleman <u>was</u> <u>not</u> included in the EEOC investigations. Moreover, all such above-identified claims for relief by Plaintiff Patricia Hawkins against the Defendant Sylvia Coleman, individually, in this civil action are each thereupon due to be and will be forth DISMISSED by this Court <u>with</u> <u>prejudice</u>.

> SINCE THIS UNITED STATES COURT HAS PREVIOUSLY HELD IN THIS MEMORANDUM OPINION THAT PLAINTIFF PATRICIA HAWKINS WHOLLY FAILED IN HER STIPULATION OF PLEADING FACTS FILED HEREIN ON JULY 12, 1996, AS AN AMENDMENT OF AND TO HER FIRST AMENDED COMPLAINT IN THE ABOVE-ENTITLED CIVIL ACTION TO ALLEGE IN HER "STIPULATION OF PLEADING FACTS" FACTS MEANING FULLY SUPPORTIVE OF EITHER PURPORTED ASPECT OF COUNT I OF HER FIRST AMENDED COMPLAINT [FACIALLY ALLEGING PURPORTED CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS UNDER 42 U.S.C. § 2000e-2(a) <u>AND</u> UNDER 42 U.S.C. § 1981] WHICH INFORM DEFENDANTS WITH REQUISITE CLARITY AND PRECISION THAT WOULD ENABLE DEFENDANTS TO DISCERN WHAT THE PLAINTIFF IS RESPECTIVELY CLAIMING AGAINST THEM IN EACH ASPECT OF COUNT I [42 U.S.C. § 2000e-2(a); AND 42 U.S.C. § 1981]. UNDER THIS HOLDING NOT A SINGLE PURPORTED `FACT' ALLEGED BY PLAINTIFF IN ¶¶ 1-53, INCLUSIVE, OF HER "STIPULATION OF PLEADING FACTS" FILED JULY 12, 1996, AS AN AMENDMENT OF AND TO PLAINTIFF'S FIRST AMENDED COMPLAINT CAN OR WILL BE CONSIDERED BY THIS COURT IN THIS RULE 56 SUMMARY JUDGMENT PROCEEDING AS A PLED SUPPORTIVE FACT OF COUNT I OF PLAINTIFF'S FIRST AMENDED FACT AS A WHOLE OR OF PLAINTIFF'S BALDLY ALLEGED COUNT I, 42 U.S.C. § 2000e-2(a) CLAIM FOR RELIEF OR OF PLAINTIFF'S BALDLY ALLEGED COUNT I, 42 U.S.C. § 1081 CLAIM FOR RELIEF. <u>AND THIS COURT NOW SO HOLDS</u> FOR THE REASONS HEREINABOVE STATED AND PREVIOUSLY OTHERWISE STATED IN THIS MEMORANDUM OPINION.

Given the above-described holding of this Court that not a single purported fact alleged by Plaintiff in ¶¶ 1-53, inclusive, of her "STIPULATION OF PLEADING FACTS" filed July 12, 1996 can or

119

will be considered by this Court in this Rule 56 summary judgment
proceeding as a pled supportive fact of Count I of Plaintiff's
FIRST AMENDED COMPLAINT as a whole or of Plaintiff's baldly alleged
Count I, 42 U.S.C. § 2000e-2(a) claim for relief or of Plaintiff's
baldly alleged Count I, 42 U.S.C. § 1981 claim for relief, the
result of such holding is that this Court in this Rule 56 summary
judgment proceeding will consider Plaintiff's Count I pleading in
Plaintiff's FIRST AMENDED COMPLAINT as comprised solely and only of
¶¶ 14 and 15 thereof which for ease of reference are hereby again
set out :

14.  That the wrongful actions of Defendants constitute an unlawful employment practice in that Defendants
     did discriminate against Plaintiff because of her race with respect to the terms, conditions and/or privileges
     with respect to her employment.

15.  That said actions constitute proscribed conduct under 42 U.S.C. § 2000e-2(a) and are further actionable
     under 42 U.S.C. § 1981.

Rule 56, Fed.R.Civ.P., provides in the third sentence thereof as
follows:

   The judgment sought shall be rendered forthwith if the pleadings [this is due to be distinctive],
   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
   show that there is no genuine issue as to any material fact and that the  moving party is entitled
   to a judgment as a matter of law.

   One thing is sure and certain.  Since Count I of Plaintiff's
First Amended Complaint, as amended by Plaintiff's STIPULATION OF
PLEADING FACTS filed by Plaintiff and her counsel of record under
their own respective signatures on July 12, 1996, and the two [2]
Count I baldly pled claims for relief which are fact identified
only by their respective federal statute nomenclature, i.e., 42
U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981, provides no notice
whatsoever to the two Defendants or to this Court in this Rule 56

120

summary judgment proceeding of the purported FACTS upon which each such purported claim for relief is based, the non-moving party, Plaintiff Patricia Hawkins, has no right under the Federal Rules of Civil procedure and particularly under the third sentence of Rule 56(c), Fed.R.Civ.P., hereinabove set out, to belatedly provide the purported facts supportive of her Count I, 42 U.S.C. § 2000e-2(a) claim for relief or her Count I, 42 U.S.C. § 1981 claim for relief which are MISSING in the form and format of pleaded FACTS from her Count I pleading by her evidentiary submissions in this Rule 56 summary judgment proceeding in opposition to summary judgment.[18] And this Court now so holds and further holds that Plaintiff's Count I pleading in the above-entitled civil action **standing alone in this civil action** show that there is no genuine issue as to any material fact with respect to Plaintiff's Count I, 42 U.S.C. 2000e-2(a), claim for relief against the Movant/ Defendants or to Plaintiff's Count I, 42 U.S.C. § 1981 claim for relief against the Movant/Defendants and that each such moving party above-identified is entitled to judgment as a matter of law with respect to each such above-identified Count I claim for relief.

----

[18]  The Court here expressly notes that it is not holding that Plaintiff's evidentiary submissions in opposition to summary judgment do in fact or by law supply the requisite supportive FACTS to Plaintiff's Count I, 42 U.S.C. § 2000e-2(a) claim for relief or to Plaintiff's Count, 42 U.S.C. § 1981 claim for relief.  As a matter of fact and law this Court now holds that Plaintiff's evidentiary submissions in opposition to summary judgment in this case DO NOT OR BY LAW supply such requisite supportive facts.  These FACTS are still MISSING both from Plaintiff's Count I pleading and from this Court record.

**[COURT'S SUMMARY JUDGMENT HOLDING WITH RESPECT TO PLAINTIFF'S COUNT ONE OF HER FIRST AMENDED COMPLAINT, AS AMENDED BY PLAINTIFF'S "STIPULATION OF PLEADING FACTS" FILED ON JULY 12, 1996]**

This Court has previously held in this MEMORANDUM OPINION that Plaintiff Patricia Hawkins abjectly failed in her STIPULATION OF PLEADING FACTS filed in this civil case on July 12, 1996, to allege in such "STIPULATION" relevant and material pleading facts meaningfully supportive of Count I of her FIRST AMENDED COMPLAINT, as last amended on July 12, 1996, and of the two purported claims for relief therein asserted by her against Defendants Muscle Shoals Board of Education and Sylvia Coleman, individually, and with such requisite clarity and precision that would enable Defendants to discern what the Plaintiff Patricia Hawkins is claiming against them in Count I of her FIRST AMENDED COMPLAINT, as last amended, i.e., that is respectively claimed by Plaintiff to be violations by each Defendant of Plaintiff's 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981 rights as an Afro-American citizen-teacher employed in the Muscle Shoals City School System.

Under the Court holding hereinabove identified with respect to Count I, not a single purported "fact" alleged by Plaintiff in ¶¶ 1-53, inclusive, of her "STIPULATION OF PLEADING FACTS" filed by her on July 12, 1996, as an amendment to and of her First Amended Complaint can or will be considered by this Court in this Rule 56 summary judgment proceeding as a pled supportive "FACT" of the 42 U.S.C. § 2000e-2(a) purported claim for relief by Plaintiff in Count I of her FIRST AMENDED COMPLAINT, as last amended, or of the

122

42 U.S.C. § 1981 purported claim for relief by Plaintiff also in
Count I of her FIRST AMENDED COMPLAINT, as last amended.

Given the above-identified previous holding of this Court with
respect to Count I, the result of such holding is that this Court
in this Rule 56 summary judgment proceeding will consider
Plaintiff's Count I pleading in Plaintiff's FIRST AMENDED
COMPLAINT, as last amended, as comprised solely and only of ¶¶ 14
and 15 thereof which for ease of reference are hereby again set
out:

14.    That the wrongful actions of Defendants constitute an unlawful employment practice in that Defendants
       did discriminate against Plaintiff because of her race with respect to the terms, conditions and/or privileges
       with respect to her employment.

15.    That said actions constitute proscribed conduct under 42 U.S.C. § 2000e-2(a) and are further actionable
       under 42 U.S.C. § 1981.

Rule 56, Fed.R.Civ.P., provides in the third sentence thereof as
follows:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to
    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
    genuine issue as to any material fact and that the moving party is entitled to a judgment as a
    matter of law.

One thing is sure and certain.  Since Count I of Plaintiff's
First Amended Complaint, as amended by Plaintiff's STIPULATION OF
PLEADING FACTS filed by Plaintiff and her counsel of record under
their own respective signatures on July 12, 1996, and the two [2]
Count I baldly pled claims for relief which are in fact identified
only by their respective federal statute nomenclature, i.e., 42
U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981, provides no notice
whatsoever to the two Defendants or to this Court in this Rule 56
summary judgment proceeding of the purported FACTS upon which each

such purported claim for relief is based, the non-moving party, Plaintiff Patricia Hawkins, has no right under the Federal Rules of Civil procedure and particularly under the third sentence of Rule 56(c), Fed.R.Civ.P., hereinabove set out, to belatedly provide the purported facts supportive of her Count I, 42 U.S.C. § 2000e-2(a) claim for relief or her Count I, 42 U.S.C. § 1981 claim for relief [which are now MISSING in the form and format of pleaded FACTS from her Count I pleading] by her evidentiary submissions in this Rule 56 summary judgment proceeding in opposition to summary judgment.[19] And this Court now so holds and further holds that Plaintiff's Count I pleading in the above-entitled civil action **standing alone in this civil action** shows that there is no genuine issue as to any material fact with respect to Plaintiff's Count I, 42 U.S.C. 2000e-2(a) claim for relief against the Movant/ Defendants or to Plaintiff's Count I, 42 U.S.C. § 1981 claim for relief against the Movant/Defendants and that each such moving party above-identified is entitled to judgment as a matter of law with respect to each such above-identified Count I claim for relief. And this Court so holds.

---

[19] The Court here expressly notes that it is not holding that Plaintiff's evidentiary submissions in opposition to summary judgment do in fact or by law supply the requisite supportive FACTS to Plaintiff's Count I, 42 U.S.C. § 2000e-2(a) claim for relief or to Plaintiff's Count I, 42 U.S.C. § 1981 claim for relief. As a matter of fact and law this Court now holds that Plaintiff's evidentiary submissions in opposition to summary judgment in this case DO NOT OR BY LAW supply such requisite supportive facts. These FACTS are still MISSING both from Plaintiff's Count I pleading and from this Court record.

124

**[COURT'S SUMMARY JUDGMENT HOLDING WITH RESPECT TO PLAINTIFF'S COUNT II OF HER FIRST AMENDED COMPLAINT AS AMENDED BY PLAINTIFF'S "STIPULATION OF PLEADING FACTS" FILED ON JULY 12, 1996]**

Plaintiff's Count II of her First Amended Complaint, as amended by her "STIPULATION OF PLEADING FACTS" filed by her on July 12, 1996, is due to be and will be treated and considered by this federal district court in the same manner and with the same result[20] as Plaintiff's Count I was treated and considered in the preceding sentence of this Memorandum Opinion. And IT IS SO ORDERED.

Under the Court holding hereinabove identified with respect to Count II not a single purported fact alleged by Plaintiff in ¶¶ 1 -53, inclusive, of her "STIPULATION OF PLEADING FACTS" filed by her as an amendment to and of her First Amended Complaint can or will be considered by this Court in this Rule 56 summary judgment proceeding as a pled, supportive "FACT" of the 42 U.S.C. § 2000e-3(a) purported claim for relief by Plaintiff in Count II of her FIRST AMENDED COMPLAINT, as last amended, or of any other purported claim for relief which Plaintiff claims to have additionally asserted in Count II of her First Amended Complaint, as last amended, against these Rule 56 Movant/Defendants.

Given the above identified holding of this Court with respect to Plaintiff's Count II, the result of such holding is that this Court in this Rule 56 summary judgment proceeding will consider Plaintiff's Count II pleading in Plaintiff's FIRST AMENDED

---

[20]  And for the same reasons.

125

COMPLAINT, as last amended, as comprised solely of ¶¶ 18-21, inclusive, thereof which for ease of reference are hereby again set out:

### COUNT II

### [Action for Retaliatory Conduct for Prior EEOC Activity]

18. That the wrongful actions of Defendants constitute discrimination against Plaintiff because she has previously opposed practices by Defendants made an unlawful employment practice or otherwise because Plaintiff has previously made a charge of racial discrimination.
19. That said actions constitute proscribed conduct under 42 U.S.C. 2000e-3(a).
20. That as a proximate result and consequence of said wrongful actions, Plaintiff has suffered emotional distress and has otherwise been damaged.
21. Plaintiff prays for the relief set forth at the conclusion of this Complaint.

Since Count II of Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed by Plaintiff and her counsel of record on July 12, 1996, and the 42 U.S.C. § 2000e-3(a) baldly pled claim for relief [which is in fact identified only by its federal statute nomenclature, i.e., 42 U.S.C. §2000e-3(a)] provides no notice whatsoever to the two Defendants or to this Court in this Rule 56 summary judgment proceeding of the purported FACTS upon which such purported claim for relief is based, the non-moving party, Plaintiff Patricia Hawkins, has no right under the Federal Rules of Civil Procedure and particularly under the third sentence of Rule 56(c), Fed.R.Civ.P., hereinabove set out, to belatedly provide or seek to provide the purported facts supportive of her Count II 42 U.S.C. § 2000e-3(a) claim for relief [which are now MISSING in the form and format of pleaded FACTS from her Count II pleading] by her evidentiary submissions in this Rule 56 summary judgment proceeding in opposition to summary judgment. And this Court now so holds and

126

further holds that Plaintiff's Count II pleading in the above-entitled civil action **standing alone in this civil action** show that there is no genuine issue as to any material fact with respect to Plaintiff's Count II 42 U.S.C. § 2000e-3(a) claim for relief against the Movant/Defendants and that each such moving party above-identified is entitled to judgment as a matter of law with respect to Plaintiff's Count II claim for relief. And this Court so holds. In event Plaintiff claims that she has alleged another claim for relief against Defendants in her Count II this holding is expressly intended to apply to such other purported claim. And this Court so holds.

**[COURT'S SUMMARY JUDGMENT HOLDING WITH RESPECT TO PLAINTIFF'S COUNT III OF HER FIRST AMENDED COMPLAINT AS AMENDED BY PLAINTIFF'S "STIPULATION OF PLEADING FACTS" FILED ON JULY 12, 1996]**

Plaintiff's Count III of her First Amended Complaint, as amended by her "STIPULATION OF PLEADING FACTS" filed by her on July 12, 1996, is due to be and will be treated and considered by this federal district court in the same manner and with the same result[21] as Plaintiff's Counts I and II were treated and considered in the preceding sections of this Memorandum Opinion. And IT IS SO ORDERED.

Under the Court holding hereinabove identified with respect to Count III not a single purported fact alleged by Plaintiff in ¶¶ 1

---

[21]  And for the same reasons.

127

-53, inclusive, of her "STIPULATION OF PLEADING FACTS" filed by her as an amendment to and of her First Amended Complaint can or will be considered by this Court in this Rule 56 summary judgment proceeding as a pled, supportive "FACT" of the 42 U.S.C. §  1981 purported claim for relief by Plaintiff in Count III of her FIRST AMENDED COMPLAINT, as last amended, or of any other purported claim for relief which Plaintiff claims to have additionally asserted in Count III of her First Amended Complaint, as last amended, against these Rule 56 Movant/Defendants.

Given the above identified holding of this Court with respect to Plaintiff's Count III, the result of such holding is that this Court in this Rule 56 summary judgment proceeding will consider Plaintiff's Count III pleading in Plaintiff's FIRST AMENDED COMPLAINT, as last amended, as comprised solely of ¶¶ 22-25, inclusive, thereof which for ease of reference are hereby again set out:

## COUNT III

### [Action Predicated on 42 U.S.C. § 1981]

22.  That the wrongful actions of Defendants constitute an abridgement of Plaintiff's rights and constitute discrimination on account of race.
23.  That said actions constitute a violation of 42 U.S.C. § 1981.
24.  That as a proximate result and consequence of said wrongful actions, Plaintiff has suffered emotional distress and has otherwise been damaged.
25.  Plaintiff prays for the relief set forth at the conclusion of this Complaint.

Since Count III of Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed by Plaintiff and her counsel of record on July 12, 1996, and the 42 U.S.C. § 1981 baldly pled claim for relief [which is in fact

128

identified only by its federal statute nomenclature, i.e., 42 U.S.C. § 1981] provides no notice whatsoever to the two Defendants or to this Court in this Rule 56 summary judgment proceeding of the purported FACTS upon which such purported claim for relief is based, the non-moving party, Plaintiff Patricia Hawkins, has no right under the Federal Rules of Civil Procedure and particularly under the third sentence of Rule 56(c), Fed.R.Civ.P., hereinabove set out, to belatedly provide or seek to provide the purported facts supportive of her Count III 42 U.S.C. § 1981 claim for relief [which are now MISSING in the form and format of pleaded FACTS from her Count III pleading] by her evidentiary submissions in this Rule 56 summary judgment proceeding in opposition to summary judgment. And this Court now so holds and further holds that Plaintiff's Count III pleading in the above-entitled civil action **standing alone in this civil action** show that there is no genuine issue as to any material fact with respect to Plaintiff's Count III 42 U.S.C. § 1981 claim for relief against the Movant/Defendants and that each such moving party above-identified is entitled to judgment as a matter of law with respect to Plaintiff's Count III claim for relief.  And this Court so holds.  In event Plaintiff claims that she has alleged another claim for relief against Defendants in her Count III [such as 42 U.S.C. § 1983 claim for relief] this holding is expressly intended to and does apply to such other purported 42 U.S.C. § 1983 claim.[22]  There are no other

---

[22] For instance, in her common prayer for relief, applicable to all counts except as hereinafter noted, Plaintiff alleges in her alphabetical paragraph "D": "D. Enter a judgment assessing punitive damages against Defendant Sylvia Coleman under 42 U.S.C. §§ 1981 and 1983 as determined by the jury." In her four line

allegations, "fact" or otherwise, concerning a 42 U.S.C. § 1983
purported claim for relief against Defendants. Moreover, there is
no meaningful fact alleged in Plaintiff's "STIPULATION OF PLEADING
FACTS" applicable to or concerning a 42 U.S.C. § 1983 claim for
relief against these Defendants. And this Court so holds.

**SECOND CONTEMPORANEOUS RULE 56 SUMMARY JUDGMENT RULING IN
FAVOR OF MOVANT/DEFENDANTS MUSCLE SHOALS BOARD OF
EDUCATION AND SYLVIA COLEMAN, INDIVIDUALLY, WITH RESPECT
TO ALL CLAIMS FOR RELIEF ASSERTED BY PLAINTIFF AGAINST
DEFENDANTS IN HER FIRST AMENDED COMPLAINT, AS AMENDED BY
HER STIPULATION OF PLEADING FACTS FILED JULY 12, 1996.**

It is clear and certain in this summary judgment proceeding
which is ripe for summary judgment final ruling that these
Defendants in this Rule 56 summary judgment proceeding have fully
met their initial burden in this summary judgment proceeding to
show this federal district court, by reference to materials on
file, that there are no genuine issues of material fact that should
be decided at trial, thus shifting the burden to the nonmoving
party to demonstrate that there is indeed a material issue of fact
which precludes summary judgment. Plaintiff has abjectly failed to
make any such demonstration or showing.  As a consequence,
Defendants' Motion for Rule 56 Summary Judgment is due to be
GRANTED with respect to Counts I, II and III of Plaintiff's First
Amended Complaint, as last amended by Plaintiff's Stipulation of

_____

"INTRODUCTION" section of her FIRST AMENDED COMPLAINT on p. 1 Plaintiff's concluding sentence
reads: "This is a Title VII proceeding as well as an action under 42 U.S.C. §§ 1981 and 1983." Plaintiff also
predicates jurisdiction of her civil action upon 42 U.S.C. § 1981 and § 1983 in the Jurisdiction section of her
First Amended Complaint.

Pleading Facts, and the above-entitled civil action is thereupon due to be **dismissed with prejudice.** And this Court so holds.

The Court's authority for this full summary judgment ruling in favor of Defendants and against Plaintiff, other than hereinabove set out, is the Eleventh Circuit Court of Appeals case of *Coats & Clark*, 929 F.2d 604 (11th cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1987); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Matusushita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

This federal district court has a right to consider and has carefully considered in making this second contemporaneous Rule 56 full summary judgment ruling in favor of the Movant/Defendants and against Plaintiff Patricia Hawkins: [1] Defendants' summary judgment evidentiary submissions in support of their motion for full summary judgment with respect to all claims for relief asserted by Plaintiff against Defendants in Plaintiff's First Amended Complaint, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed by her and by her counsel of record on July 12, 1996; and [2] all summary judgment evidentiary submissions submitted by Plaintiff in this Rule 56 summary judgment proceeding in opposition to summary judgment.

While Defendants' summary judgment evidentiary submissions in support of their motion for full summary judgment are sufficient in and of themselves [without Plaintiff's various CHARGES OF DISCRIMINATION filed by her with EEOC against the Defendant Muscle

131

Shoals Board of Education in every instance and in one instance also against the former Muscle Shoals City Superintendent of Schools Dr. Martha Livingston [last day of office May 2, 1994] and without the NO CAUSE Determination made in each instance by EEOC in response to Patricia Hawkins' Charges of Discrimination after investigation of such charge [see ante pp. 106-107], this United States District Court is of the opinion and now holds that this Court has the right, power and authority in this Rule 56 summary judgment proceeding in determining whether Defendants' Rule 56 Motion For Summary judgment should be fully granted or granted in part and denied in part to consider each such EEOC Charge of Discrimination filed by Plaintiff Patricia Hawkins against the designated parties who or which allegedly discriminated against her in her capacity as a tenured teacher-employee in the Muscle Shoals City School System and each such NO CAUSE DETERMINATION issued by EEOC thereafter in response thereto after investigation. And after careful consideration this Court is of the opinion and now holds that each such EEOC Charges of Discrimination made by Patricia Hawkins against the Muscle Shoals Board of Education and in the one instance also against the then Muscle Shoals City Superintendent of Schools, Dr. Martha Livingston, and each such NO CAUSE DETERMINATION issued by EEOC thereafter in response thereto after investigation [ante pp. 106-107] constitute admissible evidence in this summary judgment submission strongly in favor of this Court granting full summary judgment in this case to the Defendant Muscle Shoals Board of Education. And this Court so holds in this second,

132

contemporaneous summary judgment ruling fully in favor of the
Defendant Muscle Shoals Board of Education.

**MULTITUDINOUS INTERNAL WRITTEN GRIEVANCES ASSERTED BY
PLAINTIFF PATRICIA HAWKINS AGAINST DEFENDANT MUSCLE
SHOALS BOARD OF EDUCATION AND AT TIMES ALSO AGAINST
CERTAIN MUSCLE SHOALS BOARD OF EDUCATION EMPLOYEES,
INCLUDING DR. MARTHA LIVINGSTON, FORMER MUSCLE SHOALS
CITY SUPERINTENDENT OF SCHOOLS, DR. JIM DOUGLAS, PRESENT
MUSCLE SHOALS CITY SUPERINTENDENT OF SCHOOLS, AND
DEFENDANT SYLVIA COLEMAN, IN 1982, 1984, 1990, 1991,
1992, 1993, 1994 AND 1995 PURSUANT TO "GRIEVANCE
PROCEDURES" OFFICIALLY ADOPTED BY THE MUSCLE SHOALS BOARD
OF EDUCATION ON AUGUST 26, 1981 FOR ALL EMPLOYEES IN THE
MUSCLE SHOALS CITY SCHOOL SYSTEM AND OFFICIALLY PROCESSED
TO CONCLUSION EITHER BY THE MUSCLE SHOALS BOARD OF
EDUCATION OR BY THE MUSCLE SHOALS CITY SUPERINTENDENT OF
SCHOOLS.**

[Pages 1-4, inclusive, of such officially adopted
GRIEVANCE PROCEDURES can be found in the APPENDIX of this
MEMORANDUM OPINION.]

This summary judgment evidentiary record shows without
contradiction that for at least seven or eight years before
Plaintiff Patricia Hawkins filed her original Complaint in the
above-entitled civil action on March 2, 1995, she incessantly
bombarded the Defendant Muscle Shoals Board of Education and others
connected with and employed by the Muscle Shoals City School System
with written grievances filed by her pursuant to "GRIEVANCE
PROCEDURES" officially adopted by the Muscle Shoals Board of
Education on August 26, 1981. Filing these grievance seems to be:
[1] a fetish with her; and [2] a school employee activity to which
she appears to be irrationally devoted.

While it was not an enjoyable task to review all of the

133

Patricia Hawkins grievance documentation hereinabove described, this Court has done so which produces its fact finding here and now made **that not a single grievance filed by Plaintiff was found justified by the Muscle Shoals Board of Education or by the Muscle Shoals City Superintendent of Education holding office at the respective times these grievances were decided adversely to Plaintiff Patricia Hawkins** and all such grievances appear to have been decided in conformity with the officially adopted "GRIEVANCE PROCEDURES" which is to be found in the APPENDIX to this Memorandum Opinion.

While the summary judgment Movant/Defendants in this Rule 56 summary judgment proceeding have timely submitted all or substantially all of Plaintiff's official written grievances above-described, together with all or substantially all of the Muscle Shoals Board of Education grievance procedure documents developed by the Board pursuant to the required four step procedure which is available to all grievants if desired and timely chosen, as summary judgment evidentiary matters in support of their Rule 56 Motion for full summary judgment, since this Court has found, determined and held that the Defendants are without question entitled to full summary judgment with respect to all claims for relief purportedly asserted by Plaintiff Patricia Hawkins against the Movant/Defendants in this civil action and given the undisputed fact and law that nothing in the Patricia Hawkins grievance documentation can change or alter that finding, determination and holding this Court has chosen not to further burden this Memorandum

134

Opinion with an attempted summary of all of these above-described voluminous grievance documents **which have a raw weight of 13 pounds 3 ½ ounces by United States Post Service scales.**

## CONCLUSION

For the reasons hereinabove stated in this MEMORANDUM OPINION a Rule 56 Summary Judgment Order of this Court is due to be and will be forthwith entered in the above-entitled civil action contemporaneous with the entry of record of this Memorandum Opinion ordering and adjudging that Defendants' joint Rule 56 Motion For Summary Judgment in this civil action directed to Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed herein on July 12, 1996, and to each and every purported claim for relief therein purportedly asserted by Plaintiff against Defendants, specifically including Counts I, II and III thereof, is due to be and will be fully GRANTED with respect to each and every such purported claim for relief and that Plaintiff's FIRST AMENDED COMPLAINT, as amended by Plaintiff's STIPULATION OF PLEADING FACTS filed herein on July 12, 1996, is due to be and will be DISMISSED with prejudice, with all costs taxed against Plaintiff Patricia Hawkins, all by separate order in conformity with Rule 58, Fed.R.Civ.P.

Done this 28th day of April, 1997.

_EB Haltom Jr._

E.B. HALTOM, JR.
SENIOR UNITED STATES DISTRICT JUDGE

135

**FLORENCE, ALABAMA ADDRESS:**

U.S. District Court
Northern District of Alabama
U.S. Post Office & Courthouse
210 North Seminary Street
P.O. Box 1076
Florence, AL 35630
Telephone: (205) 760-8415

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

JUL 8 1996

· UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

E B Nelson

PATRICIA HAWKINS;                    )
                                     )
           Plaintiff                 )
                                     )
vs.                                  )    CV NO.   95-HM-0511-NW
                                     )
MUSCLE SHOALS BOARD OF EDUCATION     )    Entered  7/8/96
and SYLVIA COLEMAN                   )
                                     )
           Defendants                )

ORDER

Under date of July 3, 1996 in or immediately after the Pretrial Conference in this case this Court summarily denied Defendants' joint 12(b)(6), Fed.R.Civ.P., Motion To Dismiss directed to Plaintiff's First Amended complaint as a whole and to each purported claim for relief therein stated.[1]

On Friday, July 5, 1996 this Court further reviewed and endeavored to further analyze PLAINTIFF'S FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES, particularly the FACTUAL ALLEGATIONS on pp. 2-4, inclusive, thereof. **This July 5, 1996 review and analysis effort completely failed to edify[2] this Senior United States District Judge [who has the assigned responsibility to preside over this civil action] <u>with respect to the relevant and material pleading facts of the case on which Plaintiff's claims for relief in this civil action are based and predicated.</u>**

---

[1] Defendants sought dismissal of the entire case with prejudice.

[2] Enlighten.

41

Moreover, in the considered opinion of the Court the FACTUAL ALLEGATIONS section of Plaintiff's First Amended Complaint, i.e., ¶¶ 8 and 9, ¶ 10 which is comprised of subparagraphs a-z, inclusive, subparagraphs aa-ff, inclusive, and ¶¶ 11 and 12, actually 36 separate factual allegations in the form and format of 36 purported factual charges which are obviously prepared and drafted by Plaintiff's counsel of record to serve as the pleading basis for Plaintiff's Count I [Action for Racially Motivated Adverse Terms and Conditions of Employment], Count II [Action for Retaliatory Conduct for Prior EEOC Activity] and Count III [Action Predicated on 42 U.S.C. § 1981], **constitute a flagrant and recurring violation <u>collectively</u> of Rule 8(a) of the Federal Rules of Civil Procedure and insofar as ¶¶ 8 and 9, ¶ 10 and each of its above-identified subparagraphs and ¶¶ 11 and 12 <u>are each concerned</u> constitute 36 separate flagrant and recurring violations of Rule 8(a), Fed.R.Civ.P. The result of all of these above-identified flagrant and recurring federal pleading violations by Plaintiff in the Factual Allegations section of her FIRST AMENDED COMPLAINT is that these Defendants are not meaningfully apprised or given "fair notice" by Plaintiff of the purported racial discrimination, civil misconduct and acts of racial discriminatory civil misconduct against plaintiff which they [and each of them] are respectively called upon to defend against in the above-entitled civil action.**[3]

---

[3] Rule 8(a), Fed.R.Civ.P., provides in pertinent part:

> **Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends,

This Court here holds that although a civil plaintiff in federal district court need not plead all elements of his claims for relief, he or she must still plead the essential factual allegations of each claim to fulfill the "notice function" of Rule 8(a)(2) and to give "fair notice" of what the plaintiff's claim is and the grounds upon which it rests. *Leatherman v. Tarrant County N.I.C. Unit*, 507 U.S. 163, 167 (1993).

For the reasons above stated, this United States District Court is faced with the choice of: [1] *sua sponte* vacating and setting aside its July 3, 1996 Order overruling Defendants' Rule 12(b)(6), Fed.R.Civ.P., Motion To Dismiss and thereupon granting such 12(b)(6) motion and dismissing Plaintiff's First Amended Complaint in its entirety without prejudice with leave to further amend her First Amended Complaint herein within time certain so as to allege in her further Amended FACTS SECTION via her SECOND AMENDED COMPLAINT each and every relevant and material pleading fact upon which her claims for relief [hereinabove identified] in this case are predicated [which will immediately throw **the present ongoing summary judgment proceeding** out of its allocated set and scheduled time span and further possibly cause an undesirable continuance of the scheduled August 5, 1996 trial date [**OPTION NO. 1**]; OR [2] forthwith entering in the above-entitled civil action another type ORDER in this case which will DIRECT and REQUIRE

---

unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

3

Plaintiff Patricia Hawkins to file in the Office of this HM SENIOR UNITED STATES DISTRICT JUDGE in the United States Post Office and Courthouse in Florence, Alabama[4] [with simultaneous hand delivered copy to Defendants' counsel of record in Muscle Shoals, Alabama] PLAINTIFF'S STIPULATION OF PLEADING FACTS [signed both by the Plaintiff and her counsel of record] alleging succinctly each and every relevant and material pleading fact of Plaintiff's case upon which her claims for relief in this civil litigation are based in clear and precise, understandable factual form and format without the plethora of bald, principally self-serving conclusions and conclusory accusations which now appear in obfuscating abundance in the FACTUAL ALLEGATIONS section of Plaintiff's FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES, ¶¶ 8, 9 and 10 [subparagraphs a-z, inclusive, subparagraphs aa-ff, inclusive, and ¶¶ 11 - 12, inclusive, on pp. 2-4, inclusive], which such STIPULATION OF PLEADING FACTS will be offered and submitted by Plaintiff and her counsel of record in support and in lieu of the FACTUAL ALLEGATIONS section of Plaintiff's May 15, 1995 FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES in both the presently pending Summary Judgment proceeding as a part of Plaintiff's amended pleading in this case [and not as a part of Plaintiff's evidentiary matter in opposition to Defendants' pending Motion For Summary judgment but only as the revised FACTUAL ALLEGATIONS of Plaintiff's FIRST AMENDED COMPLAINT in the trial of the above-entitled civil action]. This alternative

---

[4] The Florence office of this Senior United States District Judge has the requisite power and authority to file such document.

4

procedure, if ordered by the Court, hereinafter referred to as mandated **"PROCEDURE NO. 2,"** will necessitate that Plaintiff's counsel of record [after much consideration and thought] carefully redraft only ¶¶ 8 and 9, ¶10 [and subparagraphs a-z, inclusive, and subparagraphs aa-ff, inclusive] and ¶¶ 11 and 12 of the FACTUAL ALLEGATIONS section of Plaintiff's FIRST AMENDED COMPLAINT so as to include in each of these 36 present, separate "factual allegations"[5] on which Counts I thru III are predicated the relevant and material pleading facts of Plaintiff's case insofar as each separate paragraph and subparagraph is concerned.

If upon further consideration of Plaintiff's present "FACTUAL ALLEGATIONS" in Plaintiff's First Amended Complaint [after his receipt of copy of this Order] Plaintiff's counsel of record determines and concludes that **a particular paragraph or subparagraph** of Plaintiff's present FACTUAL ALLEGATIONS section of Plaintiff's First Amended Complaint is due to be abandoned and withdrawn and not included in revised form and format in Plaintiff's "STIPULATION OF PLEADING FACTS," Plaintiff will have leave of Court to follow such procedure in the drafting of this required pleading document by her counsel of record but such withdrawn and abandoned paragraphs or subparagraphs in such required pleading document must be clearly identified therein by its or their original paragraph number or alphabetical designation in the FACTUAL ALLEGATIONS section of Plaintiff's First Amended Complaint and the pleading notice thereof must appear in the same chronologi-

---

[5] *A gross misnomer.*

5

cal order in the required STIPULATION OF PLEADING FACTS which will wholly and completely be substituted by operation of law under the directive of the within ORDER as an integral part of Plaintiff's First Amended Complaint in the place and stead of the present "FACTUAL ALLEGATIONS" section of Plaintiff's present First Amended Complaint.

Obviously, under the "STIPULATION OF PLEADING FACTS" procedure hereinabove set out, the Defendants will be entitled to ANSWER Plaintiff's FIRST AMENDED COMPLAINT [then containing Plaintiff's STIPULATION OF PLEADING FACTS" in the FACTUAL ALLEGATIONS section thereof in the place and stead of former ¶¶ 8 and 9, ¶ 10 [comprised of subparagraphs "a-z," inclusive, subparagraphs "aa-ff," inclusive] and ¶¶ 11 and 12 of the "FACTUAL ALLEGATIONS" in Plaintiff's First Amended Complaint filed herein on May 15, 1995] and to incorporate therein Defendants' joint Rule 12(b)(6) MOTION TO DISMISS, Fed.R.Civ.P.[6] directed to Plaintiff's Amended Complaint as a whole and to each and every purported claim for relief therein asserted then predicated on Plaintiff's "STIPULATION OF PLEADING FACTS."

Under Procedure No. 2 in event Plaintiff's case survives Defendants' Rule 56 MOTION FOR SUMMARY JUDGMENT in whole or in part Plaintiff's FIRST AMENDED COMPLAINT FOR CIVIL DAMAGES, then including Plaintiff's "STIPULATION OF PLEADING FACTS" in the "FACTUAL ALLEGATIONS" section of her First Amended Complaint, in lieu of the present "FACTUAL ALLEGATIONS" section thereof, will

---

[6] This Court will require this motion to be incorporated in Defendants' joint ANSWER.

6

constitute Plaintiff's pleading in this case on which Plaintiff will go to trial on August 5, 1996. This United States District Court will grant leave to Defendants to file such Answer in the Florence, Alabama Office of this Senior United States District Judge within forty-eight [48] hours from and following receipt by Defendants' counsel of record of copy of Plaintiff's "STIPULATION OF PLEADING FACTS" [with simultaneous copy thereof hand delivered to the Sheffield office of Plaintiff's counsel of record].

Under this "STIPULATION OF PLEADING FACTS" required by Procedure No. 2 and related pleading procedure, this United States District Court will within twenty-four [24] hours from and following its receipt of Defendants' joint ANSWER to Plaintiff's "redacted" FIRST AMENDED COMPLAINT dispositively decide all legal issues raised by Defendants' joint 12(b)(6) MOTION TO DISMISS, FED.R.CIV.P., incorporated in Defendants' joint Answer, directed to Plaintiff's FIRST AMENDED COMPLAINT then containing Plaintiff's "STIPULATION OF PLEADING FACTS" in lieu of and in the place and stead of the "FACTUAL ALLEGATIONS" section of Plaintiff's First Amended Complaint as originally filed herein.

Under PROCEDURE NO. 2 hereinabove set out, this Court proposes that the Rule 56, Fed.R.Civ.P., summary judgment procedure now in process will continue under the Summary Judgment Submission Order entered in this case on July 3, 1996 with the SJ directives contained therein to the SJ Movant and to the SJ Adverse Party and the SJ submission date therein provided to continue in force and effect; provided, however, this Court will require each party

7

litigant to consent in writing to this particular proposal [and to
expressly waive all Rule 56, Fed.R.Civ.P., rights to which the SJ
Movant and SJ Adverse Party may be otherwise invested] by and
through the signature of their respective counsel of record which
must be promptly filed in the Florence, Alabama Offices of this
Senior United States District Judge.

Furthermore, under Procedure No. 2 hereinabove set out, the
agreed-submitted Pretrial Order in the above-entitled civil action
will be appropriately amended by this federal district court to
reflect the provisions of this Order and the consent of the party
litigants and their respective counsel of record thereto.

Upon consideration of the above stated premises and the above
described pleading emergency in the above-entitled civil action, it
is hereby

ORDERED and ADJUDGED that the July 3, 1996 Order of this Court
in this case which summarily denied Defendants' joint Rule
12(b)(6), Fed.R.Civ.P., Motion To Dismiss Plaintiff's FIRST AMENDED
COMPLAINT as a whole and each purported claim for relief therein
asserted factually predicated upon Plaintiff's "Factual Allegations"
alleged therein on pp. 2 - 4, inclusive, thereof be and the same
hereby is *sua sponte* VACATED and SET ASIDE and restored to active,
pending, unresolved status and that PROCEDURE NO. 2 as hereinabove
set out and described with all of its ramifications enumerated
herein be and the same hereby is expressly ADOPTED in all of its
above described particulars in this case and that Plaintiff
Patricia Hawkins and Defendants Muscle Shoals Board of Education

8

and Sylvia Coleman are hereby ORDERED, REQUIRED and DIRECTED by this federal district court to full and faithfully and forthwith comply with all of its terms, conditions, provisions and pleading mandates hereinabove set out <u>as facially applicable to a particular, designated party litigant or litigants</u>.

DONE and ORDERED this 8th day of July, 1996.

E. B. HALTOM, JR.
SENIOR UNITED STATES DISTRICT JUDGE


FLORENCE, ALABAMA ADDRESS:

U.S. District Court
Northern District of Alabama
U.S. Post Office & Courthouse
210 North Seminary Street
P.O. Box 1076
Florence, AL  35630
Telephone: 205/760-8415

9

# United States Court of Appeals
## FOR THE ELEVENTH CIRCUIT

**FILED**

MAR 15 1982

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JAMES E. VANDEGRIFT, CLERK

No. 81-7247

D.C. Docket No. CA 77-M-1104

CHARLES L. CARTER,

Plaintiff-Appellant,

versus

MUSCLE SHOALS CITY
BOARD OF EDUCATION,
ET AL.,

Defendants-Appellees.

---------------------
Appeal  from the United States District Court for the
Northern District of Alabama
---------------------

Before  THORNBERRY*, FAY and HATCHETT, Circuit Judges.

### J U D G M E N T

This cause came on to be heard on the transcript of the record
from the United States District Court for the  Northern District of
Alabama, and was argued by counsel;

ON CONSIDERATION WHEREOF, it is now here ordered and adjudged
by this Court that the judgment of the said District Court in this
cause be and the same is hereby, affirmed in part and vacated in
part ;

It is further ordered that each party bear their own costs on
appeal to be taxed by the Clerk of this Court.

February 5, 1982

*The Honorable Homer Thornberry, Circuit Judge for the United States
Court of Appeals for the Fifth Circuit, sitting by designation.

A True Copy
Attested
Clerk, U.S. Court of Appeals, Eleventh Circuit

By
Deputy Clerk

ISSUED AS MANDATE: MAR 1 0 1982          APPENDIX

DO NOT PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 81-7247

CHARLES L. CARTER,

Plaintiff-Appellant,

versus

MUSCLE SHOALS CITY BOARD OF
EDUCATION, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court for the
Northern District of Alabama

( February 5, 1982 )

Before THORNBERRY*, FAY and HATCHETT, Circuit Judges.

PER CURIAM:

Charles L. Carter appeals the district court's exonera-
tion of the Muscle Shoals City Board of Education and various
individual defendants of due process and civil rights violations.
Carter complains that (1) the district court erred in holding
that his dismissal was not racially motivated and violative of
procedural due process, and that (2) the district court erred in
awarding attorney's fees to the prevailing defendants.

We affirm the district court's determination that
neither the Civil Rights Act nor Carter's due process rights were
violated, but because Carter's suit was not frivolous we reverse

---

*The Honorable Homer Thornberry, Circuit Judge for the United
States Court of Appeals for the Fifth Circuit, sitting by
designation.

the award of attorney's fees.

## BACKGROUND

On February 1, 1972, Charles Carter was appointed prin-
cipal of the Avalon Middle School pursuant to Lee v. Macon County
Board of Education (Muscle Shoals School System), 453 F.2d 1104
(5th Cir. 1971).[1]

Carter served as principal of Avalon Middle School until
May, 1977, when a dispute over a cheerleader's election led to a
confrontation with his immediate supervisor, Maudine Smith, admi-
nistrative principal of both Avalon Middle School and Muscle
Shoals High School which are on the same campus.

Carter had revised the cheerleader election procedure by
removing the balloting from the homerooms and centralizing it in
the library. Carter tallied the ballots and announced that two
black youngsters were elected cheerleaders. A protest was lodged
by disappointed white candidates. Smith requested the ballots
from Carter so she could check the tabulation. Carter refused to
permit Smith to remove the ballots from his office. Because it
was late in the day, Smith agreed to return the following morning
and review the ballots. The next morning, Carter again refused
to permit Smith to remove the ballots from his office. Smith,
Carter's superior, then ordered Carter to surrender the ballots.
After Carter again refused, Smith called the superintendent of
schools, Don Heidorn, and informed him of the incident. Heidorn
instructed Smith to have Carter sign a statement setting out his
refusal to release the ballots. Smith instructed Carter to come
to her office and sign the form. Carter refused to go to Smith's
office, refused to read the statement, and refused to sign it.
Smith then requested students to witness a notation on the state-
ment saying Carter refused to sign it. Carter took the statement
from the students and tore it up. He then physically struggled
with Smith, preventing her from telephoning Heidorn.

Smith retreated to her office and called Heidorn.
Heidorn came to the school and took oral statements from

2

witnesses, including Carter, and ordered Carter to turn over the
ballots.  Carter complied with this order.

The school board met that night and voted to suspend
Carter, and it informed Carter of the suspension by letter the
next day.  By letter dated May 18, 1977, the board informed
Carter of its proposal to cancel his contract.  A public hearing
was held from June 4, 1977, to August 4, 1977.  The board voted
to dismiss Carter on August 9, 1977.

Carter attended the public hearing and was repre-
sented by counsel.  He cross-examined witnesses, but was not per-
mitted to cross-examine board members.  The board rejected
Carter's argument that two board members were biased because they
had been defendants in the earlier Lee case.  Carter appealed his
dismissal to the Alabama Teacher Tenure Commission which held his
dismissal was procedurally consistent with the Alabama Teacher
Tenure law, and was neither the product of personal nor political
bias, or unjust or arbitrary.  Carter did not appeal this
decision.[2]

We must decide whether the trial court erred in deter-
mining that the Muscle Shoals City Board of Education was not
racially motivated in dismissing Carter, and that Carter's due
process rights were not violated.

1.                          DISCUSSION

Due Process Issue

Carter contends that the board violated his due process
rights, its own policy, and state law when it suspended him on the
oral recommendation of the superintendent.  Carter contends that
a written recommendation is required and that he was entitled to
a hearing before suspension.  The defendants denied that Alabama
law or local policy requires a written recommendation before a
tenured employee can be dismissed.  The board insisted that
because the superintendent individually had the power to suspend
Carter, Carter's rights were not violated by the initial ex parte
hearings held by the board.

3

## Discussion

A tenured employee's interest in his job is a property interest protected by the due process clause of the fourteenth amendment. Glenn v. Newman, 614 F.2d 467 (5th Cir. 1980). The sufficiency of a due process claim of a property interest in employment must be decided by reference to the state law which created the interest. 614 F.2d at 471. Carter's interest in his job was one undisputably protected by the due process provision.

Carter's first due process claim is an assertion that his federal due process rights were violated by the board's failure to adhere to its requirements and state law requirements. Carter contends that a written recommendation by the superintendent is required before a tenured teacher may be suspended. The district court rejected this contention based on its analysis of state law. It is our practice to accord great weight to the state law expertise of district judges.

On appeal, Carter has failed to convince us that the district court erred in its state law interpretation. Because the appellant has failed to demonstrate error in the district court's reading of state law, we affirm.

Carter's second contention, that he was entitled to a pretermination hearing, is more complex because it is predicated on both a state law claim, and a separate federal due process claim. The district court rejected Carter's state law claim which had also been adversely decided by the tenure commission. We respect the district court's expertise on state law. On appeal Carter has failed to show error. On the federal questions, Carter asserts that his due process interest in his job was sufficient to require a pretermination hearing prior to his suspension or dismissal. See Glenn v. Newman, 614 F.2d 467 (5th Cir. 1980); Thurston v. Dekle, 531 F.2d 1264 (5th Cir. 1976), vacated on other grounds, 438 U.S. 901 (1978).

Whatever the merits of this claim, Carter's post-termination Thurston hearing was sufficient to cure any defect

4

which may have occurred in the suspension of Carter after the ex
parte hearing.  Wilson v. Taylor, 658 F.2d 1021 (5th Cir. 1981);
Glenn v. Newman, 614 F.2d 467 (5th Cir. 1980).  Under Wilson v.
Taylor, Carter is not entitled to back pay and benefits from the
time of his initial suspension until the time of the Thurston
hearing.  658 F.2d at 1032.  To collect damages for a violation
of procedural due process, the plaintiff must demonstrate some
injury which would not have been occasioned solely by his
dismissal.  658 F.2d at 1031-32.  Carter did not plead separate
and distinct injury.

As a final due process challenge, Carter asserts that he
should have been permitted to call board members to testify
before their own hearing.  Carter separately realleges bias by
two board members.  The district court rejected Carter's conten-
tion that Alabama law required the board members to testify.  On
appeal, Carter has failed to demonstrate error by the district
court on this state law question.  On the question of whether
federal principles of due process require such examinations, we
hold that federal due process considerations do not require such
examinations.  Board members can not be expected to serve as both
witnesses and jurors.  The district court found that the board
had not acted out of prejudice and that its action was supported
by the evidence.  Carter has not demonstrated that the trial
court was erroneous in concluding that the board members were not
biased.[3]

### Equal Protection

Carter asserts that he was denied equal protection of
the law because he was discharged under circumstances in which
a white employee would not have been discharged.  The trial court
did not agree.

Our review does not reveal that the trial court was
clearly erroneous.   The record reveals an incident of insubor-
dination which was aggravated by Carter's physical abuse of his
superior.  This was ample grounds for discharge.  The record does

5

not demonstrate that similarly situated whites were treated
differently.

### Attorney's Fees

Carter appeals the pending award of attorney's fees to
the prevailing defendants.  The trial court erred in its deter-
mination that Carter's action was unreasonable, groundless, and
frivolous.  Carter's action was vigorously prosecuted, and sur-
vived motions for summary judgment, as well as post trial motions
by the defendants.

### CONCLUSION

Because we find that the trial court was not clearly
erroneous in its determination that Carter was dismissed for
cause, and that Carter's due process rights were not violated, we
affirm.

Because we find that Carter's claim was not frivolous,
or groundless, we vacate the award of attorney's fees.

AFFIRMED IN PART, VACATED IN PART

6

## FOOTNOTES

1. Carter, who is black, was suspended from his principalship
   of an all-black school when it was closed pursuant to a
   desegregation order in 1967. Between 1967 and 1971,
   principalships in three of Muscle Shoals four schools
   became vacant. Each was filled by a white person. Carter
   sued in 1971 after the Avalon Middle School principalship
   became vacant and was filled by a white. Carter alleged
   he was denied the appointment because of race. Lee held
   that the school board had violated the court's holding
   in Singleton v. Jackson Municipal Separate School District,
   419 F.2d 1211 (5th Cir. 1970), cert. denied, 396 U.S.
   1032 (1970).

2. This action alleging fourteenth amendment due process
   violation was brought under 28 U.S.C. §§ 1331 and 1343, and
   42 U.S.C. §§ 1981, 1983, 1985, and 1986.

   The individual defendants included Donald R. Heidorn;
   Superintendent of Education for Muscle Shoals, Maudin Smith;
   principal of the Muscle Shoals High School - Avalon Middle
   School Complex, and Don Pendergras, James Hampton, James
   McCarthy, Levi Phillips, Dwight Spearman; members of the
   board, and former board member; Wilner Maddox. Maddox was
   sued in his individual capacity. Spearman was sued in his
   official capacity only. All others were sued in individual
   and official capacities.

3. Fed.R.Civ.P. 52(a) provides, in pertinent part:

   Findings of fact shall not be set aside unless clearly
   erroneous, and due regard shall be given to the
   opportunity of the trial court to judge of the credibility
   of the witnesses.

7

A True Copy
Attested:
Deputy Clerk
Atlanta Ga

CHARGE OF DISCRIMINATION

|  | FEPA |
|---|---|
|  | EEOC 130 90 0050 |

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

_____ and EEOC
(State or local Agency, if any)

| NAME (Indicate Mr., Ms., or Mrs.) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Patricia C. Hawkins | (205) 381-1899 |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
| 1020 Hemlock Street    Tuscumbia, AL   35674 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NO. OF EMPLOYEES/MEMBERS | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| Muscle Shoals City Board of Ed. | more than 15 | (205) 383-7129 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | |
| Wilson Dam Highway, P. O. Box 2730 | Muscle Shoals, AL   35662 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Dr. Martha Livingston | (205) 383-7129 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE |
| Wilson Dam Highway, P.O. Box 2730 | Muscle Shoals, AL   35662 |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] RETALIATION  [ ] OTHER(Specify) | (Month, day, year)   8/14/89. |

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

   I.   I am a black female.  I have been employed by the Muscle Shoals City School System for 12 consecutive school years.  During the 1988-89 school year, I was assigned as JTPA Counselor/Coordinator for the Area Vocational Center.

   II.  In July, 1989, the notice of vacancy for the Principal position at Highland Park Elementary School for the 1988-89 school year was posted. I applied for the position.

   III.  In August, 1989, the Superintendent recommended and the members of the Board voted to promote Arthur Andrews, a white male, to the position of principal of Highland Park for the 1989-90 school year.

   IV.  I was neither interviewed nor considered for the position.

   V.   Upon information and belief, my education and experience are equal to that of Arthur Andrews.

   VI.  But for my race and color, I would have been recommended and promoted to the position of principal of Highland Park.  The school system has a pattern and practice of denying black females  administrative positions.

RECEIVED

| [ ] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) OCT 5 4 1989 |
|---|---|
|  | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. BIRMINGHAM DISTRICT |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 10-2-89        Patricia Hawkins | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date        Charging Party (Signature) | |

EEOC FORM 5   PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1900 3RD AVENUE NORTH
BIRMINGHAM, ALABAMA 35203-2397

IN

THE                          Charge No: 130 90 0050

MUSCLE SHOALS
BD. OF ED.

Patricia C. Hawkins
1020 Hemlock Street
Tuscumbia, AL  35674                            Charging Party

Muscle Shoals City Schools
P. O. Box 2730
Muscle Shoals, AL  35662                            Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the
following determination as to the merits of the subject charge
filed under Title VII of the Civil Rights Act of 1964, as
amended.

All requirements for coverage have been met.  Charging Party
alleged that she was discriminated against in violation of Title
VII in that she was not promoted because of her race, Black and
her sex, female.

Charging Party further contends that Respondent has a pattern and
practice of denying Black females administrative positions.

Respondent denies the Charging Party's allegations.  Respondent
contends that the position the Charging Party sought was not an
entry level position and required an AA degree or higher with
previous administrative experience in elementary education
(principal/assistant principal or supervisor).  Respondent
further contends that the Charging Party did not have an AA
degree and lacked the requisite experience.  Respondent also
contends that the White male selectee met these requirements and
had more classroom teaching experience than Charging Party.

Examination of the evidence reveals that the Charging Party was
hired as a teacher in August 1976, earned a B. S. degree in
Physical Education, earned a M. A. Degree in Guidance and
Counseling and a Class A Certificate in Principalship K-12 in
1989.  The records reveals that the Charging Party currently is a
JTPA Counselor and has no experience as an Assistant Principal
and holds no AA Certificate.  The White male who was promoted to

the Principal position was hired by the Respondent on October 1988 as an Assistant Principal. He has also earned a B. S. Degree in Physical Education, a M. A. Degree in Physical Education, a M. A. Degree in School Administration, and an AA Certificate in Secondary Education.

The evidence also reveals that 24 applicants applied for the Principal position. Of these, 23 are Whites and one is Black, the Charging Party. Seventeen are males and three are females, including the Charging Party. The applicants' educational background list 24 with B. A. or B. S. Degrees, 24 with M. A. Degrees, 14 with M. A. plus Degrees, including the Charging Party, 16 with Ed.S/AA Degrees, including the White male who was promoted, and three with Doctoral degrees.

Examination of the evidence also reveals 15 applicants had experience as Assistant Principal or Principal, including the White male promoted to the Principal position, and 9, including the Charging Party, did not have any experience that was required for the position. Currently, the Respondent employs 11 Principals within the school system. Of these, 10 are Whites and one is Black, 8 are males and 3 are females.

Based upon the analysis above, I have determined that there is no reasonable cause to believe that the charge is true.

This determination does not conclude the processing of this charge. If the Charging Party wishes to have this determination reviewed, she must submit a signed letter to the Determination Review Program which clearly sets forth the reasons for requesting the review and which lists the Charge Number and Respondent's name. Charging Party must also attach a copy of this Determination to the letter. These documents must be personally delivered or mailed (postmarked) on or before _____ 8·20⁻90 _____ to the Determination Review Program, Office of Program Operations, EEOC, 1801 L Street, N.W., Washington, D.C. 20507. It is recommended that some proof of mailing, such as a certified mail receipt, be secured.

If the Charging Party submits a request by the date shown above the Commission will review the determination. Upon completion of the review, the Charging Party and Respondent will be issued a final determination which will contain the results of the review and what further action, if any, the Commission may take. The final determination will also give notice, as appropriate, of the Charging Party's right to sue.

If the Charging Party does not request a review of this determination by _____ 8 2c ', ( _____, this determination will become final the following day, the processing of this

charge will be complete and the charge will be dismissed. (This letter will be the only notice of dismissal and the only notice of the Charging Party's right to sue which will be sent by the Commission). FOLLOWING DISMISSAL, THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER FURTHER BY FILING SUIT AGAINST THE RESPONDENT(S) NAMED IN THE CHARGE IN FEDERAL DISTRICT COURT WITHIN (90) DAYS OF THE EFFECTIVE DATE OF DISMISSAL. Therefore, in the event a request for review is not made, if a suit is not filed by _____ *//- /8 -9 O* _____ the Charging Party's right to sue will be lost. The Commission's regulations governing no cause determinations are printed in Title 29, Code of Federal Regulations, Section 1601.19.

On Behalf the Commission:

*7-31-90*
Date

Warren A. Bullock
District Director

Enclosures:
    Information Sheet on Filing Suit in Federal Court

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington, D.C. 20507

TO:  Muscle Shoals City Schools         June 13, 1991
     P.O. Box 2730
     Muscle Shoals AL 35662    **IN**     Charge Number : 130900050

                          **JUN 2 5 1991**

                          **MUSCLE SHOALS**
Patricia C. Hawkins       **ED. OF ED.**    Muscle Shoals City Schools
   Charging Party                              Respondent

      DETERMINATION ON REVIEW AND DISMISSAL OF TITLE VII CHARGE

The Commission has reviewed the investigation of this charge of
employment discrimination and all supplemental information
furnished.  Based upon this review, we agree with the determina-
tion issued by our field office and hereby issue a final determina-
tion that the evidence obtained during the investigation does not
establish a violation of the statute.  Therefore, the Commission
dismisses and terminates its administrative processing of this
charge.

As the charge alleged a Title VII violation, this is notice that
if the Charging Party wishes to pursue this matter further, (s)he
may do so by filing a private action in Federal District Court
against the Respondent(s) named above within 90 days of receipt
of this Determination.

IF CHARGING PARTY DECIDES TO SUE, CHARGING PARTY MUST DO SO WITH-
IN 90 DAYS FROM THE RECEIPT OF THIS DETERMINATION; OTHERWISE THE
RIGHT TO SUE IS LOST.

                          On Behalf of the Commission:

                          _____

                          Michael Dougherty
                          Director
                          Determinations Review Program

Enclosure:  Information Sheet on Filing
            Suit in Federal District Court

cc:  Warren Bullock
     District Director
     Birmingham District Office

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Birmingham District Office

1900 3rd Avenue, North, Suite 101
Birmingham, AL 35203-2397
PH: (205) 731-0082
TDD: (205) 731-0095
FAX: (205) 731-2101

Charge No 130 92 1610

MAR 08 '93

MUSCLE SHOALS
BD. OF ED.

Patricia Hawkins
1020 Hemlock Street
Muscle Shoal, AL 35662

Charging Party

Muscle Shoals Board of Education
Post Office Box 2730
Muscle Shoals, AL 35662

Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met. Charging Party alleges that Respondent discriminated against her by refusing to promote her because of her sex, female and race, Black. Charging Party avers that during the month of February, 1992, the positions of principal and assistant principal were posted. On March 26, the positions were filled by White males. Charging Party alleges that Respondent denied her an interview while White applicants were afforded interviews for the position.

Respondent denies the allegations and contends that the best qualified candidates received the positions. Respondent further states that Charging Party's education and administrative experience were not as extensive as the selectees. Respondent states that Charging Party as well as other White applicants were not interviewed.

Respondent's personnel policy states that the Code of Alabama holds the superintendent of each local education agency responsible for making employment recommendations to the board of education who, inturn, votes to employ the recommended candidate or rejects the superintendent's recommendation.

The superintendent seeks to involve personnel at various levels in the decision-making process for personnel as well as other management decisions. After input, a recommendation is made to the board of education. This process was followed in the selection of the principal and assistant principal positions in question.

·     The school faculty elected three teacher representatives to serve
on the interview/screening committee. Input was solicited from the
school faculty regarding qualifications and skills they felt should
be included on the vacancy announcement.  The interview/screening
committee received and evaluated all applications and then ranked
the applicants by educational background and experience.  The
interview/screening committee determined the top applicants,
selected the candidates to interview, structured interview
questions, and held interviews.  All data for the persons
interviewed were evaluated after the interviews and the
interviews/screening committee recommended to the superintendent
the best candidate to fill the vacancy.   The superintendent
recommended the successful candidate to the board of education who
again reviewed the credentials of the candidate before voting to
employ the recommended candidate.

Evidence indicates that the administrative vacancies/principal &
assistant principal announcements stated that applicants must
possess a principal certificate issued by the Alabama State
Department of Education covering grades 5 through 8.  A class AA
certificate or higher is preferred as well as previous
administrative experience including . principal/assistant,
principal/supervisor and classroom teaching experience, etc.

Examination of evidence indicates that Charging Party was hired on
or about September 20, 1976 as a guidance counselor.  Since that
time she has also served as teacher and JTPA counselor/
coordinator.   Charging Party applied for the assistant principal
and principal positions during the months of February , 1992 and
March, 1992.   Charging Party educational and work experience
entailed bachelor of science degree in health and physical
education, master of art degree in guidance and counseling, a
certificate in secondary education and 19 years as a classroom
teacher, counselor coordinator.

Evidence indicates that 2 White males selectees were selected for
the principal and assistant principal positions.  They have served
13 or more years as principal and assistant principal as well as
classroom teachers.  Both selectees educational background have
bachelor of science degree in physical education and education,
master of art degree in elementary education & secondary education,
AA certificate in elementary, secondary education and a doctorate
of education.    Both selectees have far more administrative
experience than the Charging Party.

Page 3

Evidence indicates that similarly situated White males that applied for principal/assistant principal positions were not selected with far more education and administrative experience than the Charging Party. Some of the applicants are presently employed by other schools as principals and assistant principals.

Respondent employs 8 principals and assistant principals in the city schools. Of the 8 employed 3 (37%) are females, 5 (63%) are males, 1 (%14) is Black and 7 (86%) are White.

Based upon the analysis above, I have determined that the evidence obtained during the investigation does not establish a violation of Title VII.

This determination and dismissal concludes the processing of this charge. This letter will be the only notice of dismissal and the only notice of the Charging Party's right to sue sent by the Commission. THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER FURTHER BY FILING SUIT AGAINST THE RESPONDENT(S) NAMED IN THE CHARGE IN FEDERAL DISTRICT COURT WITHIN 90 DAYS OF THE CHARGING PARTY'S RECEIPT OF THIS LETTER. Therefore, if a suit is not filed within this 90 day period, the Charging Party's right to sue will be lost.

On Behalf of the Commission:

3-5-93

Date

Warren A. Bullock
District Director

Enclosure:
  Information Sheet on Filing Suit in Federal Court

This form is affected by the Privacy Act of 1974; See Privacy act statement before [X] EEOC  _133f901 1845_
completing this form.

_____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Patricia Hawkins | (205) 381-1899 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1020 HEMLOCK STREET, TUSCUMBIA, AL 35674 | | / / |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| MUSCLE SHOALS BOARD OF EDUCATION | Cat A (15-100) | (205) 389-2600 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| POST OFFICE BOX 2730, MUSCLE SHOALS, AL 35662 | | 033 |

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST        LATEST
03/02/93       03/02/93
[X] CONTINUING ACTION

THE PARTICULARS ARE  *(If additional space is needed, attach extra sheet(s)):*

AWₓ

On March 2, 1993, I was issued a written notice.  During my employment
I have been harassed, disciplined and intimidated for my filing a
previous charge.

No reason has been given for these actions.

I believe that I have been discriminated against in retaliation for
protesting practices made unlawful under Title VII of the Civil Rights
Act of 1964, as amended.

RECEIVED

MAY 0 4 1993
E.E.O.C.
BIRMINGHAM DISTRICT

EXHIBIT 3

| [ ] I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Day, month, and year)*

Date  4 25 93        Charging Party *(Signature)*

EEOC FORM 5 (Rev. 06/92)                                    **FILE COPY**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Birmingham District Office

1900 3rd Avenue, North, Suite 101
Birmingham, AL 35203-2397
PH: (205) 731-0082
TDD: (205) 731-0095
FAX: (205) 731-2101

Charge No: 130 93 1845

Patricia Hawkins
1020 Hemlock Street
Tuscumbia, AL  35674

Charging Party

Muscle Shoals City Schools
P. O. Box 2730
Muscle Shoals, AL  35662

**F I L E**

Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met. Charging Party alleged that she was discriminated against in violation of Title VII in that she was issued a written warning, harassed, disciplined and intimated in retaliation for filing previous charges of employment discrimination on October 4, 1989, and in May 1992.

Charging Party contends the following. She was required to sign in and out when leaving campus or for lunch; she was moved to a building without a water fountain, or rest room. The grading procedure was changed without her knowledge, and teachers did not help her with orientation. In addition, the Charging Party contends that she was threatened with termination, given unrealistic time frames and issued a written warning.



Respondent denies the Charging Party's allegation. Respondent contends that there is a standard procedure for off campus check in and out that has been followed for several years. Respondent contends that the Charging Party requested the change in buildings. Respondent contends with regards to the water fountain and rest room, that some employees have closer access to rest rooms and water fountains than others. Respondent contends that a request has been made for a water fountain for the Charging Party's office. Respondent contends the grading procedure was changed so that it coincided with the schools report card dates. Respondent contends that the Charging Party was off work due to illness when the change was implemented. Respondent contends with regard to orientation, that other faculty members previously helped the Charging Party but were unavailable at the instant orientation. Respondent contends that the Charging Party received a reprimand for failing to meet established time frames. Respondent denies that the time frame were unrealistic. Respondent contends that there is no evidence that the Charging Party was threatened.

The evidence reveals the following. The Charging Party was hired with the Respondent in 1976. Since her date of hire she held the positions of Counselor from 08/76 to 07/79, Teacher from 08/79 to 07/88 and JTPA Counselor from 08/88 to the present. The Charging Party filed two previous charges with the EEOC against the Respondent.

In April 1979, the Charging Party was informed that her contract would not be renewed because of budgetary reasons, however, the Respondent reconsidered its decision.

The evidence also reveals that the Charging Party complained about unfair evaluations in 1980 and 1982. Charging Party became JTPA counselor in the 1988-89 school year under her present supervisor.

On May 9, 1989, the Charging Party requested in writing that she be moved from the Board of Education building into new portable buildings where the Vocational business offices were moving. Since November 3, 1989, the Charging Party has complained in writing about problems between her and her supervisor.

2

On April 24, 1992, the Charging Party was informed by the Superintendent that she was insubordinate. This memo also recommends that the Charging Party be terminated, but because of her longevity with the Respondent, she was retained. Another memo dated December 7, 1992, recommends the Charging Party for termination because of insubordination. The Respondent reconsidered its decision, because of the Charging Party's longevity with the Respondent.

The evidence also reveals that the due dates for the grading procedures were changed to meet with the schools grading periods. In addition, the evidence reveals that teachers have previously assisted the Charging Party with recruitment programs but were unavailable recently.

The testimony of witnesses reveals that all employees are required to sign in and out when leaving the campus for lunch. One white female witness stated that she has to go outside of the building where her class room is located to use the ladies rest room and the water fountain. In addition, with regards to the teachers not helping the Charging Party with the orientation or recruitment, the witnesses stated during the March 1994, orientation, they had classes and had no substitute so they could not assist the Charging Party. The witnesses also stated that they have assisted the Charging Party on other occasions in recruitment programs.

The work force for the Vocational Department reveals that during the 1993-94 school year, there were 22 employees. Of these, five or 24% are black and 16 or 76% are white. In the 1994-95 school year, there were a total 23 employees. Of these, five or 22% are black and 18 or 78% are white.

Based upon this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

This determination and dismissal concludes the processing of this charge. This letter will be the only notice of dismissal and the only notice of the Charging Party's right to sue sent by the Commission. THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER FURTHER BY FILING SUIT AGAINST THE RESPONDENT NAMED IN THE CHARGE IN FEDERAL DISTRICT COURT WITHIN 90 DAYS OF THE CHARGING PARTY'S

3

RECEIPT OF THIS LETTER.  Therefore, if a suit is not filed within this 90 day period, the Charging Party's right to sue will be lost.

On Behalf the Commission:

_12-6-94_
Date

Warren A. Bullock
District Director

Enclosures:
  Information Sheet on Filing Suit in Federal Court

4

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA ☒ EEOC | 130952572 |

_____ and EEOC
*State or local Agency, if any*

| E *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Patricia Hawkins | (205) 381-1899 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1020 Hemlock Street, ~~Muscle Shoals, AL 35660~~ Tuscumbia, AL 35674 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Muscle Shoals Board Of Education | | (205) 389-2600 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| P. O. Box 2730, Muscle Shoals, AL 35660 | | 033 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify)* | EARLIEST 06/22/95   LATEST 06/22/95 ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I.   On June 22, 1995, I was denied a promotion/transfer to the position of Principal. I have been employed with the Respondent since 1972.

I.   Jim Douglas, Superintendent, informed me by letter, that I was not selected for the vacant position.

III. I believe that I have been discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

THE ORIGINAL CHARGE WAS FILED ON JULY 19, 1995.

RECEIVE
9
E.E.O.C.
BIRMINGHAM DISTRICT

| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| eclare under penalty of perjury that the foregoing is true correct. | SIGNATURE OF COMPLAINANT |
| X 9/25/95   X *Patricia Hawkens* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* |
| Date    Charging Party *(Signature)* | |

EEOC FORM 5 (Rev. 06/92)

RESPONDENT'S COPY

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Birmingham District Office

1900 3rd Avenue, North, Suite 101
Birmingham, AL 35203-2397
PH: (205) 731-0082
TDD: (205) 731-0095
FAX: (205) 731-2101

IN

FEB 09 1996

MUSCLE SHOALS
BD. OF ED.

FEB 12 1996

HEWLETT,

Our reference:
Charge No. 130 95 2572
Respondent:
Muscle Shoals Board
    of Education

Ms. Patricia Hawkins
1020 Hemlock Street
Muscle Shoals, AL  35660

CV 95-HM-511-NW
DATE

DEFT EXHIBIT NO.   4

Dear Ms. Hawkins:

On May 15, 1995, the Equal Employment Opportunity Commission
implemented new procedures nationwide to improve the effectiveness
of the services we provided to the public.  In order to better
serve the public and to ensure that the Commission's law
enforcement goals are being met, the Commission is implementing
procedures to prioritize charges of discrimination and redress
instances of discrimination through investigation, alternative
dispute resolution, conciliation and litigation.

With the framework of the above-referenced general guidance,
Priority Charge Handling Procedures have been established for
prioritizing charges into three categories.  The three categories
are Category A (charges that fall within the national or local
enforcement plans as well as other charges in which it appears
"more likely than not" that discrimination has occurred), Category
B (further evidence is required to determine whether the charge
should be reclassified in Category A or C), and Category C
(immediate dismissal when there is sufficient information from
which to conclude that it is not likely that further investigation
will result in a cause finding).

Your charge of discrimination has been reviewed, and it has been
determined that your charge is in Category (C).  Additionally, we
have concluded that it is not likely that any further investigation
of your charge is likely to result in finding a violation of the
statute in question.  Accordingly, enclosed is a Notice of Right to
Sue and fact sheet which explains your options should you desire to
pursue your charge further by the filing of a lawsuit in Federal
District Court.

You may request reconsideration of the dismissal of your charge. The Director may decline to review such request unless substantial new and relevant evidence or a persuasive argument that the EEOC's decision was contrary to law or the facts utilized by EEOC.

Sincerely,

'FEB 0 6 1996

Date

Donald Burris
Deputy Director

Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

| To: Patricia Hawkins<br>1020 Hemlock Street<br>Muscle Shoals, AL 35660 | From: EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>1900 - 3rd Avenue, North<br>Birmingham, AL 35203-2397 |
|---|---|

[  ]  *On behalf of a person aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130 95 2572 | Donald Burris, Deputy District Director | 205/731-2174 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[  ]  The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ]  Respondent employs less than the required number of employees.

[  ]  Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[  ]  The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]  The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]  The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -

[ X ]  **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[  ]  **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[  ]  **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

I certify that this notice was mailed on the date set out below.

On behalf of the Commission

**FEB 0 6 1996**

*(Date Mailed)*

Warren A. Bullock, District Director

Enclosures
  Information Sheet
  Copy of Charge
cc: Respondent(s)

INTERGRAPH CORPORATION

EEOC Form 161 (Test 5/95)

[Individual Capacity Suits Under Title VII Are Inappropriate]

Since May 17, 1991 when *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991), was decided by the Eleventh Circuit Court of Appeals the law of this Circuit has been and still is that individual capacity suits under Title VII are inappropriate. In *Busby* at p. 772 of 931 F.2d the Eleventh Circuit held:

> The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. See *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1099 & n. 19 (5th Cir. 1981) in n. 7]; *see also* 42 U.S.C. § 2000e-2(1988) *(violation for "employee to discriminate ")*; 42 U.S.C. § 2000e-5(g) (1988) (relief for violation of § 2000e-2). We think the proper method for plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

*Busby v. City of Orlando* was cited with approval by a panel of the Eleventh Circuit in *Smith v. Lomax*, 45 F.3rd. 402, 403 n. 4, 404 (11th Cir. 1995). In this case a white female clerk of the Board of Commissioners of Fulton County, Georgia brought an action against Fulton County and the African-American members of the board of county commissioners alleging violations of civil rights statutes, constitutional provisions, Title VII and the Age Discrimination in Employment Act [ADEA] when the African-American members of the board of commissioners of Fulton County [Lomax and Hightower] voted to replace her with an African American clerk allegedly on account of race. Having been denied reappointment, Smith [a Caucasian] brought suit against Lomax and Hightower [African Americans] and Fulton County seeking reappointment as Board Clerk, back pay, compensatory and punitive damages under various antidiscrimination provisions of federal law. Count One of Smith's complaint brought under 42 U.S.C. § 1983 demanded such relief (1) against Lomax and Hightower, in their individual

capacities, on the ground that their action denied Smith equal protection of the laws under the Fourteenth Amendment, and (2) against Fulton County, on the ground that the county was responsible for the action of the two African American Commissioners. Count One sought the same relief under 42 U.S.C. § 1981 (1988). *Counts Two and Three of the complaint sought the same relief against Fulton County under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1988 & Supp. II 1990) (the "ADEA") and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 (1988). In n. 4 commencing at the bottom of p. 403 of 45 F.3rd. and continuing on p. 404, the Smith v. Lomax panel made the following observation:*

> 4. Read literally, counts two and three seek the same relief against Lomax and Hightower in their individual capacities. They could not, however, be considered her employer; Fulton County is her employer. Accordingly, they cannot be held liable under the ADEA or Title VII. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."); *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits civil liability to the employer."), *cert denied,* ___ U.S. __, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). We therefore construe counts two and three as applying only to Fulton County.

<u>Court Note</u>: This Court here notes that in *Smith v. Lomax* the 11th Circuit in effect extended the *Busby c. City of Orlando* rule that the relief granted under Title VII is against the *employer*, not *individual employees*, to actions under ADEA, citing the 4th Circuit ADEA case of *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.), *cert denied,* __ U.S. __, 115 S.Ct. 666 (1994) and the 9th Cir. ADEA case of *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583 (9th Cir. 1993), *cert denied* ___ U.S. ___, 114 S.Ct. 1049 (1994), with approval.

*Busby v. City of Orlando* was again cited with approval by

another panel of the Eleventh Circuit Court of Appeals in *Cross v. State of Alabama, et al.*, 49 F.3d 1490, 1492, 1504, 159 (11th cir. 1995), a hostile environment sexual harassment lawsuit, for the proposition of law that individual capacity suits under Title VII are inappropriate and that the relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. In this case female employees of Alabama's state mental health facility brought a sexual harassment suit under Title VII and § 1983 against the State of Alabama, the State Department of Mental health and Mental Retardation and state officials in their respective individual and official capacities. The Eleventh Circuit panel in *Cross* reversed the district court's final judgment making awards of back pay to appellees against appellants Horsley, Poundstone and Stricklin in their individual capacities pursuant to Title VII. 49 F.3d at 1509.[1] *[State official, in his individual capacity was not "employer" within meaning of Title VII. Civil Rights Act of 1964, § 701, et seq. Scope Note 16, Civil Rights Key No. 146, 49 F.3d 1492.]*

In *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) the Eleventh Circuit held: [1] that the American with Disabilities Act [ADA] does not provide for individual liability, only for employer liability; and [2] that the county commissioner defendants could not be held liable in their individual capacities for any violation

---

[1] Defendants J. Michael Horsley and R. Emmet Poundstone, III were respectively sued individually and as Associate Commissioners for the State Department of Mental Health & Mental Retardation. Defendant Larry Stricklin was sued individually and as Facility Director of the Taylor Hardin Secure Medical Facility.

3

of the ADA.  The relevant portion of the *Mason* opinion reads as

follows:

## 82 F.3d 1009

[1]  We hold that the Disabilities Act does not
provide for individual liability, only for employer
liability.  The Seventh Circuit appears to be the only
Circuit thus far to rule directly that only the employer,
not individual employees, can be liable under the
Americans with Disabilities Act.  *EEOC v. AIC Sec. Inv.*,
55 F.3d 1276, 1279-82 (7th Cir. 1995).  We follow that
holding and the reasoning of Jude Michael S. Kanne's
thorough opinion for that court.

The definition of "employer" in the Disabilities Act
is like the definitions in Title VII of the 1964 Civil
Rights Act, 42 U.S.C. § 2000e(b), and in the Age
Discrimination in Employment Act, 29 U.S.C. § 630(b).
This Circuit has previously held that there is no
individual responsibility under either of those Acts.
*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.
1991) ("The relief granted under Title VII is against the
*employer*, not individual employees whose actions would
constitute a violation of the Act.").  *Smith v. Lomax*, 45
F.3d 402, 403 n. 4 (11th Cir. 1995) (Individuals "cannot
be held liable under the ADEA or Title VII.").  The *Smith*
Court relied on *Busby,* Title VII, and Fourth and Ninth
Circuit decisions for ADEA.  *Birkbeck v. Marvel Lighting
Corp.,* 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits
civil liability to the employer. . . ."), *cert. denied*,
___ U.S. ___, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller
v. Maxwell's Int'l Inc.,* 991 F.2d 583 (9th Cir. 1993)
(Title VII and ADEA), *cert. denied*, ___ U.S. ___, 114 S.Ct.
1049, 127 L.Ed.2d 372 (1994).

[2] . . . the "agent" language was included to
ensure *respondeat superior* liability of the employer for
the acts of its agents, a theory of liability not
available for 42 U.S.C. § 1983 claims.

[3]  As to individual liability, there is no sound
reason to read the Disabilities Act any differently from
this Court's reading of Title VII and the Age
Discrimination Act.  The County Commissioners could not
be held liable in their individual capacities for any
violation of the Disabilities Act.

\* \* \* \* \* \* \* \* \* \*
The research conducted by and for this Court on the issue of

whether there is employee individual liability for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ADEA, 29 U.S.C. § 621, et seq., ADA, 42 U.S.C. § 12101, et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981a causes this HM Senior United States District Judge to conclude that while the issue of individual capacity suits under 42 U.S.C. § 1981a has not been directly addressed nor decided by the Eleventh Circuit Court of Appeals, the reasoning of the Eleventh Circuit Court of Appeals in its reported cases holding that neither Title VII nor ADEA nor ADA provides a basis for individual liability for supervisory employees is a strong and powerful indication and thoroughly persuasive that the Eleventh Circuit, when faced with such issue, will also hold that the Civil Rights Act of 1991, 42 U.S.C. § 1981a likewise provides no basis for such individual liability. **And this United States District Court in the Eleventh Judicial Circuit now holds that 42 U.S.C. § 1981a provides no legal basis for non-employer, individual liability whether the 1981a claim or claims is [are] pled as a Title VII, 42 U.S.C. 2000e, et seq, as amended by 42 U.S.C. § 1981a claim or claims, or is [are] pled as a separate or conjunctive 42 U.S.C. § 1981a claim or claims. See** *EEOC v. AIC Security Investigations Ltd.,* **55 F.3d 1276, 1281-82 (7th Cir. 1995);** *Tomka v. Seiler Corp.,* **66 F.3d 1295, 1314-16 (2nd Cir. 1995);** *Haynes v. Williams,* **88 F.3d 898, 900-901 (10th Cir. 1996);** *Williams V. Bannon,* **72 F.3d 552, 553-55, (7th Cir. 1995). This federal district court finds these last cited cased to be thoroughly persuasive on the issue whether a** *supervisor defendant*

5

in his or her individual capacity can be held liable under Title VII, 42 U.S.C. 2000e, **et seq**, or under Title VII, as amended by or in conjunction with the Civil Rights Act of 1991 and chooses to follow the rationale of the above-entitled civil action on this stated issue by the Seventh, Second and Tenth Circuit cases above-cited.

\* \* \* \* \* \* \* \* \* \*

The following cases decided by other circuit courts of appeal holding that there is no employee individual liability for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., or for violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, or for violations of ADEA or for violations of ADA are as follows:

\* \* \* \* \* \* \* \* \* \*

1st Circuit: No ruling found.

\* \* \* \* \* \* \* \* \* \*

2nd Circuit: *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314-15 (2nd Cir. 1995) (No employee individual liability for violations of Title VII or for violations of 42 U.S.C. § 1981a). [Employer's "agent" may not be held individually liable under Title VII, including individual defendants with supervisory control over a plaintiff. Scope Note 26, Civil Rights Key No. 143, 66 F.3d at 1298.] See the "Statutory Scheme" section, 66 F.3d at 1314, and the section captioned "Title VII's Remedial Provisions" at 66 F.3d, pp. 1314 and 1315]; ["The CRA of 1991 adds compensatory and punitive damages to the remedies available to a victim of intentional

6

discrimination although money damages are of the type that an individual can normally be expected to pay, Congress calibrated the maximum allowable damage award to the size of the employer and failed to repeal the exemption for defendants with less than fifteen employees. In addition, the CRA of 1991 does not contain similar limits on damage awards against agents of an employer, or even address the subject of individual liability.

*Cook v. Arrowsmith Shelburne, Inc., KDT*, 69 F.3d 1235, 1231 n.2 (2nd Cir. 1995).  [Employee filed action against former employer, its parent corporation and against Clifton Lind, general manager of the ASI employer, alleging a Title VII claim for relief for sexual discrimination, 42 U.S.C. § 2000e, et seq., and other claims.  The court's case review of this 2nd circuit case is limited to the Title VII claim of the former employee against the defendant general manager in his individual capacity.  In n.2 at p. 1251 of 69 F.3d the 2nd Circuit addressed and decided the issue of whether the former employee could maintain her Title VII claim for relief against the defendant general manager Clifton Lind, individually, in the following language [after earlier noting that plaintiff's VFEPA state law claim was patterned on Title VII, that the standards and burden of proof under state law were identical to those under state law and that it accordingly analyzed plaintiff's VFEPA and Title VII claims together:

> FN2.  The Title VII and VFEPA actions against Lind must be dismissed in light of our decision in *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995), which held that supervisory personnel may not be held individually liable under Title VII.  *Id.* at 1312-13.  The issue of whether such an individual may be made a party defendant solely

7

in the person's corporate capacity as an agent of the employer - not subject to individual liability but a party for the purpose of discovery - as suggested by Judge Mukasey in *Coraggio v. Time Inc. Magazine Co.*, No. 94 Civ. 5429, 1995 WL 242047, at *8 (S.D.N.Y. Apr. 26, 1995), was neither argued to, nor addressed by, the *Tomka* court. We also do not address the issue because it has not been argued in the instant matter. The VFEPA claim against *Lind* must be dismissed for the same reasons. See *McHugh v. University of Vermont*, 758 F.Supp. 945, 949 (D.Vt.1991), aff'd, 966 F.2d 67 (2d Cir. 1992). Indeed, the case for joining *Lind* is weaker under the VFEPA than under Title VII because the VFEPA does not include in its definition of employer the "and any agent" language that has troubled the federal courts under Title VII. See *Tomka*, 66 F.3d at 1312-17.

\* \* \* \* \* \* \* \* \* \*

3rd Circuit: *Dici v. Commonwealth of Penn.*, 91 F.3d 542, 552 (3rd Cir. 1996) (Individual employees cannot be held liable under Title VII).

\* \* \* \* \* \* \* \* \* \*

4th Circuit: *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994) (ADEA limits civil liability for discharge decisions to employer and thus employee with authority to make discharge decision for employer is not individually liable as employer's agent; ADEA provision stating that "employer" also means "agent" of employer is merely expression of respondeat superior; Fennessey, as a Marvel employee, is not a proper defendant in this case).

\* \* \* \* \* \* \* \* \* \*

5th Circuit: *Grant v. Lone Star Co.*, 21 F.3d 649, 652-53 (5th Cir. 1994). (District court improperly held private sector employee's superior individually liable for sexually harassing her, as he was not "employer" under Title VII, citing *Busby v. City of*

8

*Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) at p. 652, with approval, **and noting at pp. 652-53 that** *Miller v. Maxwell's Int'l Inc.*, **991 F.2d 583 (9th Cir. 1993),** *cert. denied,* __ U.S. __ , **114 S.Ct. 1049 (1994),** <u>**suggested at p. 587 n. 2 that had Congress**</u> <u>**envisioned liability for non-employer natural persons, it would**</u> <u>**have included it in its recent amendments to Title VII under the**</u> <u>**Civil Rights Act of 1991**</u>).

*Stilts v. Wallace,* 76 F.3d 651, 665 (5th Cir. 1996)(ADEA provides no basis for individual liability for supervisory employees).

\* \* \* \* \* \* \* \* \* \*

<u>6th Circuit</u>: (No valid ruling found re Title VII, *Jones v. Continental Corp.*, 789 F.2d 1225, 1331 notwithstanding, since n.1 at 1227 of 789 F.2d evidences that the two defendant individual supervisory employees were earlier dismissed by the district court, expressing its opinion that the only defendant with potential liability was the employer insurance company.  This decision was affirmed in another appeal without published opinion in *Jones v. Continental Corp.*, on January 27, 1986, *see* 785 F.2d 308 (6th Cir. 1986).  Other circuit courts of appeal have declined to ascribe persuasiveness to *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986) with respect to the 6th Circuit panel "observation at p. 1231: ". . . we think it obvious that Jones's counsel were intentionally and properly seeking recovery against the individuals under both statutes" (referring to 1981a and Title VII); no ruling found re 42 U.S.C. § 1981a; no ruling found re ADEA; no ruling

9

found re ADA).

\* \* \* \* \* \* \* \* \* \*

7th Circuit: *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) (Supervisor, in his individual capacity, did not fall within Title VII's definition of employer; thus employee could not recover under Title VII for supervisor's alleged actions in sexually harassing employee).  (Noting that in *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995) it held that the ADA's definition of "employer" which [like Title VII] includes an employer's agents, is simply a statutory expression of traditional respondeat superior liability and imposes no individual liability on agents). (<u>Also noting at p. 553 of 72 F.3d: "The original statute limited liability to entities employing more than fifteen workers.  Similarly, the 1991 Amendments to the Civil Rights Act imposed limits on damages according to the size of the employing entity.  We stated in *AIC Security* that this statutory approach demonstrates that Congress did not intend to impose individual liability against an employer's agents</u>.  Id.; *Accord Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993))."  ("If Congress decided to protect small entitles with limited resources for liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees").  (72 F.3d at 553: "We noted that the holding in *AIC Security* only applied directly to the ADA.  But we nonetheless recognized that Title VII, the ADA and the Age Discrimination In Employment ("ADEA") use virtually the same definition of "employer"

10

and that "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably." *AIC Security*, 55 F.3d at 1279-80 (citing cases)). "Indeed in *AIC Security* we drew support for our holding from cases rejecting individual liability under Title VII. 55 F.3d at 1279-80."

*EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279-1281 (7th Cir. 1995) Sole shareholder of employer being sued under American with Disability Act was not subject to individual liability; definition of employer to include "person, and any agent of such person" was to ensure that respondeat superior liability would be imposed upon employers for acts of their agents, and sliding scale of caps on liability for number of employees was not enacted for individuals, implying that individuals were not considered subject to liability. Americans with Disability Act of 1990, §§ 101(2), 102(a), 42 U.S.C.A. §§ 12111(2), 12112(a)]. ["While no Circuit has directly confronted the question of individual liability under the ADA, five Circuits have explicitly addressed individual liability under Title VII and the ADEA.  Four have rejected individual liability. *Smith v. Lomax*, 45 F.3d 402, 403-04 & n.4 (11th Cir. 1995) (Title VII and ADEA); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir.) (ADEA), *cert. denied*, __ U.S. __, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir.) (Title VII), *cert. denied*, __U.S.__, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Miller*, 991 F.2d at 587-88 (Title VII and ADEA); *see also Lenhardt v. Basic Inst. of Tech.*, 55 F.3d 377 (8th Cir. 1995) (holding that no

11

individual liability exists under Missouri statute similar to the ADA). One Circuit as recognized individual liability ·by an observation. *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986) (recognizing in passing individual liability under Title VII). "As we detail below, we find the more recent and more detailed decisions persuasive." 55 F.3d 1280-1281.

\* \* \* \* \* \* \* \* \* \*

8th Circuit: *Lenhardt v. Basic Inst. of Tech.*, 55 F.3d 337 (8th Cir. 1995) holding that no individual liability exists under Missouri statute similar to the ADA. [Definition of "employer" in Title VII and the ADA in analogous to Missouri Human Rights Act's (MHRA) definition of "employer." Civil Rights Act of 1964, § 701(b), 42 U.S.C.A. § 2000e(b); Age Discrimination in Employment Act of 1967, § 11(b), 29 U.S.C.A. § 630(b); V.A.M.S. § 213.010(6). Scope Note 5 Civil Rights, Key No. 143).

\* \* \* \* \* \* \* \* \* \*

9th Circuit: *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). [Civil liability for employment discrimination under Title VII and the Age Discrimination in Employment Act [ADEA] was limited to employers and, thus, did not extend to individual agents of employer who committed violations. Civil Rights Act of 1964, §§ 701-18, as amended, 42 U.S.C.A. §§ 2000e to 2000e-17; Age Discrimination in Employment Act of 1967, §§ 2-17 as amended, 29 U.S.C.A. §§ 681-634. Scope Note 5. Civil Rights, Key No. 143,

12

169.]

> "The statutory scheme itself indicates that Congress did
> not intend to impose individual liability on employees.
> Title VII limits liability to employers with fifteen or
> more employees, 42 U.S.C. § 2000e(b), and the ADEA limits
> liability to employers with twenty or more employees, 29
> U.S.C. § 630(b), in part because Congress did not want to
> burden small entities with the costs associated with
> litigating discrimination claims. If Congress decided to
> protect small entitles with limited resources from
> liability, it is inconceivable that Congress intended to
> allow civil liability to run against individual
> employees.

991 F.2d at 587.

> At the time *Padway* was decided, damages were not
> available under Title VII. Since that time, Congress
> enacted the Civil Rights Act of 1991, which permits
> compensatory and punitive damages for intentional
> discrimination. *See* 42 U.S.C. § 1981a (1992 Supp.).
> However, in drafting that section, Congress specifically
> limited the damages available depending upon the size of
> the respondent *employer*. *See id.* at § 1981a(b)(3)(A)-
> (D). Because we think that if Congress has envisioned
> individual liability under Title VII for compensatory or
> punitive damages, it would have included *individuals* in
> this litany of limitations and would have discontinued
> the exemption for small employers, we resist Judge
> Fletcher's urging specifically to limit *Padway* to back
> pay."

991 F.2d at pp. 587-588 n.2:

*Ortez v. Washington County, State of Or.*, 88 F.3d 804, 808
(9th Cir. 1996). [Former employee brought action against county
and several county officials under § 1983 and Title VII. Although
district court erred in dismissing claims against individual
defendants on ground that they were not named in Equal Employment
Opportunity Commission [EEOC] complaint, it did not err in
dismissing claims against those individual defendants on ground
that employees could not be held liable in their individual
capacities under Title VII. Civil Rights Act of 1964, § 701 et

13

seq., 42 U.S.C.A. § 2000e, et seq. Scope Note 6. Civil Rights Key No. 207(1); 88 F.3d at 808, citing as authority *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583 (9th Cir. 1993) *cert. denied*, __U.S.__, 114 S.Ct. 1049 (1994).]

\* \* \* \* \* \* \* \* \* \*

10th Circuit: *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993). [Former secretary with county attorney's office brought action against county and county attorney alleging sexual harassment and retaliation under Title VII and violation of equal protection clause.] [Cannon, the county attorney was named as a defendant in the original complaint. Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate. "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (citations omitted). Therefore, because the suit against Cannon could proceed only in his official capacity, it operated as a suit against Salt Lake County itself, *see Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), and the County was timely named as a defendant.

*Haynes v. Williams*, 88 F.3d 898, 899, 900-901 (10th Cir. 1996)

14

[Title VII liability is appropriately borne by employers, not individual supervisors; personal capacity suits against individual supervisors are inappropriate under Title II Civil Rights Act of 1964, § 701 et seq. Scope Note 4. Civil Rights Key No. 143, p. 898 of 88 F.3d.] ["There is one consideration raised by plaintiffs in this case that *Sauers* does not obviate or foreclose, because it involves remedial changes to Title VII made by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which were not retroactively applicable to the events in this case. See generally *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) (discussing retroactivity of 1991 Act)]. Under the law controlling in *Sauers*, "a successful Title VII plaintiff was typically limited to reinstatement and back pay as potential remedies." i.e., to "equitable remedies which are most appropriately provided by employers, defined in the traditional sense of the word." *Tomka*, 66 F.3d at 1314. The 1991 Act, however, "adds compensatory and punitive damages to the remedies available to a victim of intentional discrimination," i.e., "the type [of award] that an individual can normally be expected to pay." *Id.* at 1315. Plaintiffs argue this particular augmentation of Title VII remedies clarifies Congress' intent that individual supervisors be held personally liable for their discriminatory actions.

While this argument, considered in isolation, has some appeal, we agree with the majority view that taken as a whole the language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately

15

borne by employers, not individual supervisors. The following
excerpts explain the reasoning behind this conclusion:

    [T]he Civil Rights Act of 1991 further shows that
Congress never intended individual liability. First, .
. . [i]t is a long stretch to conclude that Congress
silently intended to abruptly change its earlier vision
[of exclusive employer liability] through an amendment to
the remedial portions of the statute alone.

    Second, although it allowed new types of damages,
the Civil Rights Act of 1991 limited the amount of
monetary recovery under Title VII . . . by placing caps
on the total amount of compensatory and punitive damages
that could be awarded to any complaining party. Congress
enacted a sliding scale of caps, increasing the possible
award as the number of employees of a liable party
increased. The lowest cap is $50,000, "in the case of a
respondent who has more than 14 but fewer than 101
employees." 42 U.S.C. §1981a(b)(3)(A). Congress enacted
no cap for individuals. That omission implies it did not
consider individuals liable. [Emphasis supplied].

United States EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d
1276, 1281 ((7th Cir. 1995); accord Tomka, 66 F.3d at 1315 ("In
addition [to the above concerns], the CRA of 1991 does not . . .
even address the subject of individual liability.").

    Congress did not want to burden small entities with the

16

costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

[If] Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in [the amended statute's] litany of limitations and would have discontinued the exemption for small employers. . .

*Miller*, 991 F.2d at 587-88 & n.2.

Accordingly, we continue to adhere to this court's established, pre-amendment rule that personal capacity suits against individual supervisors are inappropriate under Title VII. *Sauers*, 1 F.3d at 1125. "[T]he employment discrimination statutes have broad remedial purposes and should be interpreted liberally, but that cannot trump the narrow, focused conclusion we draw from the structure and logic of the statutes." *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282. "Congress has struck a balance between deterrence and societal cost, and we will not upset that balance." *Id.*

\* \* \* \* \* \* \* \* \* \*

District of Columbia Circuit: *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir. 1995). Female employee brought action against employer and supervisor, alleging violation of Title VII and common law torts by subjecting her to sexual harassment. The Court of

17

Appeals held, *inter alia*, that the employee could not maintain Title VII action against supervisor in his individual capacity. [Employee's Title VII claims against supervisor in individual capacity: ". . .Gary argues that the "plain and unambiguous language" of section 2000e(b) can only mean that Long, as an "agent" of WMATA, is an "employer" liable under section 2000e-2(a)(1) for discriminating against her on the basis of her sex.

While a construction of the statute to impose individual liability on an agent is facially plausible, we agree with the Ninth Circuit that "[t]he obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute." *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993) (brackets and internal quotation marks omitted). Thus, while a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (holding that "relief granted under Title VII is against the *employer*; not individual employees whose actions constituted a violation of [Title VII]" (emphasis in original)).

Considering the evidence in the light most favorable to *Gary*, we find that *Long* qualifies as an "employer" under Title VII because he served in a supervisory position. Because *Long* cannot be held liable in his personal capacity, however, *Gary's* claim against him essentially merges with her claim against WMATA. *See Sauers*, 1 F.3d at 1125 (claim against supervisor "is a claim against Salt

18

Lake County itself"); *Busby*, 931 F.2d at 772.    Accordingly, we conclude that the magistrate judge did not err in dismissing *Gary's* Title VII claim against *Long*.

DESCRIPTOR TERM: GRIEVANCE PROCEDURES                MSC FILE: GAE

The Board of Education recognizes that harmonious relations with its employees can be enhanced through effective communications. All parties can best be served by sincere mutual efforts to promote understanding and cooperation. The Board, therefore, has adopted the following grievance procedure to examine and resolve possible problems relating to administration of personnel policies of the school district.

I. Definitions

    A. "Grievance" is a claim or dispute concerning the interpretation, application, or claimed violation of the personnel policies of the school district. Other matters for which other means of resolution are provided or foreclosed by statute or administrative procedures shall not be considered grievances. A grievance does not include matters involving the Board of Education's right to establish educational policy and prescribe rules and regulations for the conduct and management of schools.

    B. Employees covered by this procedure shall mean permanent employees of the Board of Education.

    C. Immediate supervisor is that employee possessing administrative authority to direct the activities of the grievant.

Page 1 of 4

APPENDIX

DESCRIPTOR TERM:  GRIEVANCE PROCEDURES                    MSC FILE:  GAE

II. Procedure.  All grievances shall be handled in accordance with the
    following procedure:

    A.  Step 1.  Any employee shall promptly present to the employee's
        immediate supervisor the grievance in writing on Board of
        Education prescribed forms.  Such notice shall be presented not
        later than five (5) working days after the date on which the
        alleged grievance occurred.  The employee and his immediate
        supervisor shall attempt to resolve the grievance.  The immediate
        supervisor shall make a proper disposition of the grievance and
        shall reply to the employee in writing on Board of Education
        prescribed forms within ten (10) working days following the date
        of submission.  If the grievance is not submitted within the time
        prescribed, the employee shall be deemed not to have any further
        right with respect to said grievance.

    B.  Step 2.  In the event the employee wishes to appeal the decision
        at Step 1, the appeal must be presented in writing on forms
        prescribed by the Board of Education, to an administrative officer
        of higher rank than the employee's immediate supervisor.  Such
        appeal shall be presented with five (5) working days of the
        receipt of the Step 1 decision.  Such appeal shall contain a
        statement of the grievance and specific references to the section
        of the district's personnel policies which the employee claims to
        have been violated.  The administrative officer shall schedule a

meeting with the employee as promptly as is reasonably possible to attempt to resolve the grievance. At this conference, the employee may appear alone or may be accompanied by any fellow employee of his choice. Notice of the conference shall also be given to all parties involved in the alleged grievance. The administrative officer shall issue a written decision to the employee within ten (10) working days after the conference. Unless the grievance shall be so appealed, it shall be deemed to have been settled and the employee shall have no further right with respect to said grievance.

C. Step 3. In the event the employee wishes to appeal the decision at Step 2, the appeal must be presented to the Superintendent in writing on forms prescribed by the Board of Education with five (5) working days of the receipt of the Step 2 decision. If the Superintendent rendered the Step 2 decision, the grievant shall move to Step 4. A copy of the Step 3 appeal, together with Step 1 and Step 2 decisions and the name of the accompanying fellow employee, if any, must simultaneously be submitted to the Superintendent. The Superintendent shall schedule a meeting with the employee within ten (10) working days to attempt to resolve the grievance. Notice of the Step 3 conference shall be given to the employee, as well as to the individuals who rendered the Step 1 and Step 2 decisions. The Superintendent shall issue a written decision within ten (10) working days after the conference with the employee. Unless the grievance

DESCRIPTOR TERM:   GRIEVANCE PROCEDURES                MSC FILE:   GAE

shall be so appealed, it shall be deemed to have been settled and the employee shall have no further right with respect to said grievance.

D. Step 4.   In the event the employee wishes to appeal the decision at Step 3, the appeal must be presented to the Superintendent as secretary of the Board of Education within five (5) working days of the receipt of the Step 3 decision.   A copy of the Step 4 appeal, together with copies of the grievance, the Step 1, Step 2, Step 3 decisions, and the name of the representative of the employee, if any, must simultaneously be submitted to the Superintendent.   The Board of Education, within a reasonable time, shall review all written decisions and transcripts or previous meetings and issue a decision to all parties or conduct a conference with those parties who participated at the previous level.   The Board shall issue a decision to all parties within thirty (30) days of such conference.   The employee may appear alone at such conference or be accompanied by a representative of his choice.   Decisions rendered by the Board of Education shall be final.

APPROVAL DATE: _____ AUG 26 1981

BOARD PRESIDENT: _____

BOARD SECRETARY: _____